**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| CHARLES GRIGSON and ROBERT VALE, Individually and on behalf of all putative class members, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 1:17-cv-00088-LY |
| FARMERS GROUP, INC., a Nevada corporation, | § § § | |
| Defendant. | § § § | |

**<u>DEFENDANT'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... ii

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL AND LEGAL BACKGROUND .......................................................... 2

    A.    The Parties ................................................................................................ 2

    B.    Plaintiffs' Factual Allegations and Sole Cause of Action Against FGI................. 2

    C.    Legal and Regulatory Framework ............................................................... 4

        1.    TDI and the Insurance Commissioner's Authority.................................... 4

        2.    Form Filings............................................................................................ 4

        3.    Rate Filings and Policyholder Grievances ................................................. 5

    D.    The Rates for the FA2 and FSPA Policies Were Reviewed and Allowed By TDI ................................................................................................ 7

III. ARGUMENT AND AUTHORITIES ..................................................................... 7

    A.    Legal Standard for Dismissal Under Rule 12(b)(6) ............................................. 7

    B.    Plaintiffs Have Not Stated a Claim For Unfair Discrimination Under Texas Law ................................................................................................ 8

        1.    Section 544.052 Concerns Classifications Within the Same Policy.......... 8

        2.    Plaintiffs' Conclusory Allegation that the Policies Are "Identical or Virtually Identical" Does Not Preclude Dismissal ................................. 13

    C.    The Filed Rate Doctrine Bars Plaintiffs' Lawsuit.............................................. 15

        1.    The Filed Rate Doctrine Renders Any Filed Rate "Unassailable" .......... 15

        2.    The Filed Rate Doctrine Applies to Plaintiffs' Claim ............................ 18

IV. CONCLUSION ................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*AG of Tex. v. Farmers Ins. Exch.*,
   411 S.W.3d 139 (Tex. App.—Austin 2013) ..............................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................7

*Cortez v. Progressive County Mut. Ins. Co.*,
   61 S.W.3d 68 (Tex. App.—Austin 2001) ........................................................10, 11

*Destec Energy, Inc. v. S. Cal. Gas Co.*,
   5 F. Supp. 2d 433 (S.D. Tex. 1997) ......................................................................17

*Hamaker v. Am. States Ins. Co.*,
   493 S.W.2d 893 (Tex. Civ. App.—Houston [1st Dist.] 1973) .................................4

*Kanuco Tech. Corp. v. Worldcom Network Serv., Inc.*,
   979 S.W.2d 368 (Tex. App.—Houston [14th Dist.] 1998)....................................17

*Korte v. Allstate Ins. Co.*,
   48 F. Supp. 2d 647 (E.D. Tex. 1999).................................................8, 15, 16, 17, 18

*Kroger Co. v. Keng*,
   23 S.W.3d 347 (Tex. 2000).....................................................................................9

*Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*,
   966 S.W.2d 482 (Tex. 1998)...............................................................................8, 10

*Maislin Indus. v. Primary Steel, Inc.*,
   497 U.S. 116 (1990)..............................................................................................17

*Marcus v. AT&T Corp.*,
   138 F.3d 46 (2d Cir. 1998).................................................................................17, 18

*McCray v. Fid. Nat'l Title Ins. Co.*,
   682 F.3d 229 (3d Cir. 2012)...........................................................................17, 19, 20

*In re N.J. Title Ins. Litig.*,
   683 F.3d 451 (3d Cir. 2012)...............................................................................16, 19

*Oncor Elec. Delivery Co. LLC v. Chaparral Energy, L.L.C.*,
   No. 08-13-00159-CV, 2016 WL 156054 (Tex. App.—El Paso Jan. 13, 2016).......................18

*Patel v. Specialized Loan Servicing LLC*,
   183 F. Supp. 3d 1238 (S.D. Fla. 2016) ..................................................................8

*SC & E Admin. Servs., Inc. v. Deloitte*,
  No. A-05-CA-929-SS, 2006 WL 6747974 (W.D. Tex. July 25, 2006) ..................................14

*Schafer v. Exelon Corp.*,
  619 F. Supp. 2d 507 (N.D. Ill. 2007) ......................................................................................8

*Sorokolit v. Rhodes*,
  889 S.W.2d 239 (Tex. 1994)......................................................................................................8

*Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*,
  476 U.S. 409 (1986)................................................................................................................15

*St. Luke's Episcopal Hosp. v. Agbor*,
  952 S.W.2d 503 (Tex. 1997).....................................................................................................8

*Sw. Bell Tel. Co. v. Metro-Link Telecom, Inc.*,
  919 S.W.2d 687 (Tex. App.—Houston [14th Dist.] 1996)..........................................15, 16, 19

*Sw. Elec. Power Co. v. Grant*,
  73 S.W.3d 211 (Tex. 2002)......................................................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..................................................................................................................7

*Tex. Commercial Energy v. TXU Energy, Inc.*,
  413 F.3d 503 (5th Cir. 2004) ......................................................................................15, 16, 18

*Town of Norwood v. New Eng. Power Co.*,
  202 F.3d 408 (1st Cir. 2000)...................................................................................................16

*Util. Choice, L.P. v. TXU Corp.*,
  No. H-05-573, 2005 WL 3307524 (S.D. Tex. Dec. 6, 2005) ..................................................19

*Wegoland, Ltd. v. NYNEX Corp.*,
  27 F.3d 17 (2d Cir. 1994).............................................................................................15, 17, 20

*Winn v. Alamo Title Ins. Co.*,
  Case No. A-09-CA-214-SS, 2009 WL 7099484 (W.D. Tex. May 13, 2009),
  *aff'd*, 372 Fed. Appx. 461 (5th Cir. 2010) ....................................................15, 16, 17, 18, 19

**Rules and Statutes**

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 7, 8

28 Tex. Admin. Code § 5.9320............................................................................................4, 5

28 Tex. Admin. Code § 5.9331..................................................................................................5

28 Tex. Admin. Code § 5.9334........................................................................................5, 6, 18

Tex. Govt. Code § 2001.001......................................................................................................6

Tex. Ins. Code § 23.006 .................................................................................................11

Tex. Ins. Code § 31.002 ..................................................................................................4

Tex. Ins. Code § 31.021 ..................................................................................................4

Tex. Ins. Code § 37.001 ..................................................................................................4

Tex. Ins. Code § 81.004 ..................................................................................................4

Tex. Ins. Code § 82.002 ..................................................................................................4

Tex. Ins. Code § 83.002 ..................................................................................................4

Tex. Ins. Code § 84.001 ..................................................................................................4

Tex. Ins. Code § 84.021 ..................................................................................................4

Tex. Ins. Code § 544.052 ................................................................................3, 8, 9, 13

Tex. Ins. Code § 544.053 ..................................................................................3, 9, 14

Tex. Ins. Code § 912.001 ..................................................................................................2

Tex. Ins. Code § 912.002 ..................................................................................................5

Tex. Ins. Code § 912.152 ..................................................................................................4

Tex. Ins. Code § 912.201 ..................................................................................................5

Tex. Ins. Code § 2251.001 ..................................................................................................5

Tex. Ins. Code § 2251.007 ..................................................................................................6

Tex. Ins. Code § 2251.051 ................................................................................11, 12, 14, 18

Tex. Ins. Code § 2251.052 ....................................................................................6, 14, 18

Tex. Ins. Code § 2251.101 ..................................................................................................5

Tex. Ins. Code § 2251.103 ......................................................................................6, 18

Tex. Ins. Code § 2251.105 ......................................................................................6, 17

Tex. Ins. Code § 2251.1031 ..................................................................................................5

Tex. Ins. Code § 2301.006 ..................................................................................................4

Tex. Ins. Code § 2301.007 ..................................................................................................4

**Other Authorities**

D.B. Houston, "Risk, Insurance, and Sampling," *The Journal of Risk and Insurance*, Vol. XXXI No.4 (1964) ...................................................................................12

Emmet J. Vaughn, *Fundamentals of Risk and Insurance* (6th Ed. 1992).....................................10

*Glossary of Insurance Terms*, National Association of Insurance Commissioners, http://www.naic.org/consumer_glossary.htm (last visited March 23, 2017)............................9

*Hall of Claims: UFH:20*, Farmers Insurance, https://www.youtube.com/watch?v=oTjNhQcCHls (last visited April 3, 2017)....................12

*Model Regulation on Unfair Discrimination in Life and Health Insurance on the Basis of Physical or Mental Impairment*, National Association of Insurance Commissioners, June 1979, www.naic.org/store/free/MDL-887.pdf (last visited March 23, 2017) .........................................................................................12

*Model Unfair Trade Practices Act*, National Association of Insurance Commissioners, January 2004, www.naic.org/store/free/MDL-880.pdf (last visited March 23, 2017) .........................................................................................10

*Texas Insurance Market*, Texas Department of Insurance, http://www.tdi.texas.gov/business/txwide.html (last visited March 23, 2017).........................5

*Understanding Rates vs. Premiums,* HelpInsure.com, http://www.helpinsure.com/home/horatespremiums.html (last visited March 23, 2017) ..........................................................................................................12

Defendant Farmers Group, Inc. hereby moves to dismiss Plaintiffs' Class Action Complaint (the "Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and would respectfully show the Court as follows:

## I. INTRODUCTION

Plaintiffs contend they overpaid for their automobile policies because their insurer, Farmers Texas County Mutual Insurance Company ("Farmers Texas"), offered a cheaper policy that was not immediately disclosed to them. Plaintiffs further assert that Farmers Group, Inc. ("FGI"), the management company for Farmers Texas, attempted to conceal the new policy from existing policyholders.

Plaintiffs (one of whom is an Austin attorney who previously litigated against FGI[1]) have filed a single cause of action for violation of the Texas Insurance Code's unfair discrimination statute, a claim they seek to prosecute on a class-wide basis.[2] But Plaintiffs' sole cause of action fails as a matter of law because the statute only applies to discrimination, without actuarial basis, in the rates charged policyholders under a particular contract of insurance. The statute does not apply to alleged discrimination between the rates charged policyholders under different policies of insurance, and no case has held otherwise. Moreover, the insurance policies and rates at issue were all filed, reviewed, and allowed by the Texas Department of Insurance ("TDI"), which considered whether the rates were excessive or unfairly discriminatory. Accordingly, the claim is also barred by the filed rate doctrine. The Court should dismiss this case with prejudice.[3]

---

[1] *See Charles O. "Chuck" Grigson v. The State of Texas et al. v. Farmers Group, Inc. et al.*, No. D-1-GV-02-002501 in the 261st Judicial District of Travis County, Texas.

[2] There are numerous reasons this Texas Insurance Code claim would be improper to certify, an issue Defendant will address at the appropriate time if needed.

[3] In the event the Court does not dismiss Plaintiffs' cause of action, FGI is also filing concurrently herewith a motion to stay this proceeding while Plaintiffs pursue an administrative remedy at the TDI, which has jurisdiction over policyholder rate.

## II. FACTUAL AND LEGAL BACKGROUND[4]

### A.    The Parties

Plaintiffs Charles Grigson ("Grigson") and Robert Vale ("Vale") are Texas residents who for many years have owned automobile insurance policies issued by Farmers Texas.  Compl., ¶¶ 1, 66, 79.  Both Plaintiffs purchased their insurance policies through insurance agents appointed by Farmers Texas and other affiliated companies ("Farmers Agents") to sell various types of insurance policies.  *Id.*, ¶¶ 12–13.

FGI is a Nevada corporation with its principal place of business in California.  *Id.*, ¶ 14.  FGI is not an insurance company.[5]  *Id.*, ¶ 27.  Rather, it provides certain services to Farmers Texas, a county mutual insurer, and other insurance companies in exchange for fees.[6]  *Id.*, ¶¶ 27, 30–31.  Plaintiffs allege FGI is in complete control of Farmers Texas and "conducts all or nearly all functions" of Farmers Texas relevant to this case.  *Id.*, ¶¶ 19–27.

### B.    Plaintiffs' Factual Allegations and Sole Cause of Action Against FGI

As of January 4, 2016, Plaintiffs were both insured by Farmers Texas under an automobile insurance policy known as the Farmers Auto 2.0 policy ("FA2").  *Id.*, ¶¶ 67, 80.  In early 2016, Farmers Texas introduced a new automobile insurance policy called the Farmers Smart Plan Auto policy ("FSPA").  *Id.*, ¶ 2.  At that time, Farmers Texas stopped selling new

---

[4] All citations to "Compl., ¶ __" are to Plaintiffs' Class Action Complaint (ECF No. 1) (the "Complaint"), filed February 8, 2017.  All citations to "Ex. __" are to the exhibits attached to the Declaration of Doi Tran in Support of Defendant's Motion to Dismiss.

[5] Plaintiffs have not sued their actual insurer, Texas Farmers, which issued the policy and collected the premium they allege was excessive and should be partially refunded.  Instead, they only sue FGI, a service provider.  But if they prevailed, the relief Plaintiffs seek would substantially impact Farmers Texas, including a refund (restitution) of premiums paid to Texas Farmers and a decrease of future premium revenue from its FA2 policyholders.

[6] A county mutual insurance company is a form of insurance company governed by the Texas Non-Profit Corporation Act whereby policyholders elect from among themselves board members.  *See* Tex. Ins. Code § 912.001 *et seq.*

FA2 policies (i.e., "closed the book"), but continued to offer renewals to existing FA2 customers. *Id.*, ¶ 69; Ex. 3.  Grigson and Vale switched from FA2 policies to FSPA policies in June 2016 and January 2017, respectively.  Compl., ¶¶ 77, 92.[7]

The Complaint's core allegation is that Farmers Texas is charging FA2 policyholders more for "identical or nearly identical" coverage they can get through FSPA policies, which Plaintiffs contend is unfair rate discrimination.  Plaintiffs allege that FGI conceals the availability of FSPA policies from existing FA2 policyholders, and disincentivizes FA2 policyholders from switching to FSPA policies.  *Id.*, ¶¶ 2–6, 35.  As a result, Plaintiffs allege, FA2 customers unaware of FSPA policies are paying higher premiums, effectively subsidizing the lower rates being offered to FSPA customers.  *Id.*  Plaintiffs further allege this scheme is effectuated through "intimidating" Farmers agents, imposing artificial limits on the number of rewrites from FA2 into FSPA, and making renewal offers to FA2 customers without "affirmatively appris[ing]" them of the lower premiums available under the FSPA program.  *Id.*, ¶¶ 3–4, 39–45, 75.

Plaintiffs assert a <u>single</u> cause of action for unfair discrimination under Section 544.052 of the Texas Insurance Code (the "Code").  *Id.*, ¶¶ 104–16.  Section 544.052 prohibits persons engaged in the business of insurance from engaging in or permitting "unfair discrimination between individuals of the same class and of essentially the same hazard, including unfair discrimination in . . . rates charged for a policy or contract of insurance" unless the rate differences "are based on sound actuarial principles."  Tex. Ins. Code §§ 544.052, 544.053(a).

Plaintiffs seek to represent a putative class comprising all Farmers Texas FA2 customers with active policies on or after January 4, 2016, and demand economic damages, restitution, injunctive relief, and civil penalties, among other relief.  Compl., ¶¶ 10, 94.

---

[7] Plaintiffs also reference the Farmers Auto 2.5 policies in their Complaint.  *See* Compl., ¶ 2. The Farmers Auto 2.5 policy was never used by Texas Farmers.

C.     **Legal and Regulatory Framework**

1.     *TDI and the Insurance Commissioner's Authority*

The Code provides a comprehensive scheme for the regulation of insurance in Texas.[8] TDI is the agency charged with implementing the Code and ensuring consumers are treated fairly.  Tex. Ins. Code § 31.002.  The Commissioner of Insurance ("Commissioner") is charged with administering and enforcing the Code and adopting rules for proceedings to promulgate or approve rates, policy forms, and endorsements.  *Id.* §§ 31.021(a), 37.001(a).  The Commissioner and TDI monitor the industry for violations and are required to report violations "promptly and in detail" to the state attorney general.  *Id.* § 81.004.[9]  TDI's authority extends to any individual or entity who is "engaged in the business of insurance" and/or is regulated under the Code, among others.  *Id.* §§ 82.002(b)(2)(A), 83.002(b)(2)(A), 84.001, 84.021.

2.     *Form Filings*

Just like other insurers in Texas, county mutual insurance companies are required to file policy forms, which are reviewed by the Commissioner for compliance with all Texas insurance laws and regulations.  *Id.* §§ 912.152(a)(3), 2301.006, 2301.007; 28 Tex. Admin. Code § 5.9320. The insurer is required to submit detailed information with the form filing, including information about the reasons for the filing and a description of the policy forms or endorsements and their use.  28 Tex. Admin. Code § 5.9320(c)(1).  For new policy forms or endorsements for use with new products, TDI may request additional information, including "a coverage comparison to a similar policy form or endorsement that the commissioner has previously approved or adopted containing a detailed explanation of all the differences including any restrictions in coverage,

---

[8] *See Hamaker v. Am. States Ins. Co.*, 493 S.W.2d 893, 895 (Tex. Civ. App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.) (internal citation omitted) ("'The business of insurance is of public concern and therefore subject to strict regulation and control by the state.'").

[9] *See also* Chapter 84 of the Code.

enhancements in coverage, or clarifications to the previously approved policy forms or endorsements." *Id.* § 5.9320(c)(2)(A).

        3.     *Rate Filings and Policyholder Grievances*

Texas' comprehensive regulatory scheme includes "promot[ing] the public welfare by ***regulating insurance rates to prohibit excessive, inadequate, or unfairly discriminatory rates***[.]" Tex. Ins. Code. § 2251.001(1) (emphasis added). County mutual insurers, like other insurers, are required to file their rates, rating manuals, supplementary rating information, and any other information required or requested by the Commissioner or TDI. *Id.* §§ 912.002(c), 2251.101(a), 2251.1031(a); *AG of Tex. v. Farmers Ins. Exch.*, 411 S.W.3d 139, 140 (Tex. App.—Austin 2013, no pet.) ("Under the [ ] Code's ratemaking provisions, each insurer must file its rates and other supporting information with TDI . . . .").[10] Insurers may use rates as soon as they are filed. Tex. Ins. Code § 2251.101(a). This is known as a "file-and-use" system.[11]

The Code tasks the Commissioner with "deciding what additional information TDI requires for insurers' rate filings." *AG of Tex.*, 411 S.W.3d at 145–46 (citing Tex. Ins. Code § 2251.101). The Texas Administrative Code outlines what must be included in the supporting information accompanying a rate filing. *See* 28 Tex. Admin. Code § 5.9334; *see also id.* § 5.9331(b)(3). In addition to requiring insurers to submit a detailed filing memorandum, an actuarial memorandum, and "actuarial support appropriate to the rating information being filed," among other things, Section 5.9334(f) states, in pertinent part:

---

[10] Section 912.201 of the Code also requires county mutual insurers to file with TDI "a schedule of the amounts the company charges a policyholder or an applicant for a policy, regardless of the term the company uses to refer to those charges" and "premium, expense, and loss experience data with the department in the manner prescribed by the commissioner."

[11] *See Texas Insurance Market*, Texas Department of Insurance, http://www.tdi.texas.gov/business/txwide.html.

Sufficient supporting information is necessary for ***TDI to establish that a filing produces rates that are not excessive,*** inadequate, unreasonable, ***or unfairly discriminatory for the risks to which they apply***. Insurers must provide sufficient documentation to justify specific rates or revisions they are proposing. . . .

*Id.* § 5.9334(f) (emphasis added).

Shortly after the rates and supporting materials are filed, the Commissioner is required to undertake a review of the filed materials and "***shall disapprove*** the rate if the commissioner determines that the rate does not comply with the requirements of [Chapter 2251]." Tex. Ins. Code § 2251.103(a). Chapter 2251 mandates that "[a] ***rate may not be excessive,*** inadequate, unreasonable, ***or unfairly discriminatory for the risks to which the rate applies***." *Id.* § 2251.052(b). Thus, the Commissioner is <u>required</u> by statute to analyze rate filings and disapprove any rate that is excessive (i.e., premium is too high) or unfairly discriminatory, including rates that are not based on sound actuarial principles.

Chapter 2251 also contains a grievance procedure whereby any insured "who is aggrieved with respect to any filing under this chapter that is in effect" can apply to the Commissioner for a hearing on the filing. *Id.* § 2251.105(a). *There is no time limit by which an insured must raise a grievance.* Section 2251.105 provides procedures by which the Commissioner holds a hearing and rules on the grievance. For example, if the Commissioner were to agree with Plaintiffs that Farmers Texas is charging FA2 policyholders an excessive and unfairly discriminatory rate, he can require Farmers Texas to stop using the rate. *See id.* The Commissioner's decisions are subject to judicial review under the Texas Administrative Procedure Act, Tex. Govt. Code § 2001.001 *et seq.* Tex. Ins. Code § 2251.007.

Thus, the Code provides a comprehensive, robust scheme for rate regulation, including a process for policyholders to contest rates that the Commissioner has allowed as neither excessive, inadequate, unreasonable, nor unfairly discriminatory.

**D.**     **The Rates for the FA2 and FSPA Policies Were Reviewed and Allowed By TDI**

Consistent with the above legal framework, Farmers Texas made all of the required filings with TDI and obtained all requisite approvals with respect to both of the policies at issue.

In 2010, Farmers Texas made its original rate and policy filings with TDI for the FA2 program.  The rates were filed on or about February 12, and TDI allowed the rates.  Ex. 1.

In 2015, Farmers Texas made its rate and policy form filings with TDI for the FSPA program.  The policy forms were filed on or about March 3rd and the rates were filed on or about July 24th.  Exs. 2 & 5.  TDI allowed the forms and rates for the FSPA program.  *Id.*  Farmers Texas began offering FSPA policies to customers in Texas in early 2016.  Compl., ¶ 31.

The filings made by Farmers Texas with TDI included detailed actuarial support for the FSPA rates, *see* Ex. 2, and also specifically disclosed, among other things: (1) that the FA2 policies would no longer be offered to new customers; (2) the existence and extent of rate differentials between FA2 and FSPA policies by coverage; and (3) the differences in coverage between FA2 and FSPA policies.  *See* Exs. 3 & 4.

## III. ARGUMENT AND AUTHORITIES

**A.**     **Legal Standard for Dismissal Under Rule 12(b)(6)**

A plaintiff must plead facts sufficient to state a claim for relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In ruling on a motion to dismiss for failure to state a claim, courts may consider not only the allegations in a complaint, but also any documents referenced in a complaint as well as matters subject to judicial notice.  *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").  Insurance rate and form filings that are a

matter of public record are properly subject to judicial notice and may be considered in deciding a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Patel v. Specialized Loan Servicing LLC*, 183 F. Supp. 3d 1238, 1241 (S.D. Fla. 2016); *Schafer v. Exelon Corp.*, 619 F. Supp. 2d 507, 512 (N.D. Ill. 2007). The filed rate doctrine is properly raised in a motion to dismiss. *See, e.g., Korte v. Allstate Ins. Co.*, 48 F. Supp. 2d 647, 649, 653 (E.D. Tex. 1999).

## B.   Plaintiffs Have Not Stated a Claim For Unfair Discrimination Under Texas Law

Plaintiffs have failed to state a claim upon which relief can be granted under Section 544.052 of the Code because the statute applies only to discrimination against individuals in the amount of premiums, policy fees, or rates charged for the same policy. Here, Plaintiffs' claim is premised on different rates being charged for two different policies, each of which was separately approved by TDI.

### 1.   *Section 544.052 Concerns Classifications Within the Same Policy*

Under Texas law, the objective of statutory construction is to give effect to the legislature's intent. *See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998). A court construing a statute should first ascertain the legislature's intent in enacting the statute as expressed in its plain language. *See St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). If the disputed statute is clear and unambiguous, extrinsic aids and rules of construction are inappropriate, and the statute should be given its common meaning. *Id.* at 505. Courts may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning. *Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex. 1994).

Texas' unfair discrimination statute is found at Section 544.052 of the Code and states:

Sec. 544.052.  UNFAIR DISCRIMINATION.  A person may not in any manner engage in unfair discrimination or permit unfair discrimination **between individuals of the same class and of essentially the same hazard**, including unfair discrimination in:

(1)   the amount of **premium, policy fees, or rates charged <u>for a policy or contract</u>** of insurance;

(2)   the **benefits payable <u>under a policy or contract</u>** of insurance;  or

(3)   any of the **terms or conditions <u>of a policy or contract</u>** of insurance.

The very next section lists specific permitted practices:

> Sec. 544.053.  EXCEPTIONS.  (a)  A person **does not violate Section 544.052 if** the refusal to insure or to continue to insure, the limiting of the amount, extent, or kind of coverage, or the charging of an individual a rate that is different from the rate charged another individual **for the same coverage is based on sound actuarial principles.** [. . .]

As the underlined language above reflects, the unfair discrimination statute compares how policyholders of the "same class and essentially the same hazard" are being treated under "a" policy or contract of insurance.[12]  Stated differently, Section 544.052 only applies to discrimination, without actuarial basis, in the amount of premiums, fees, or rates charged policyholders under a particular contract of insurance.  It is focused on the fair and actuarially sound allocation of risk between policyholders with the same insurance contract.

In addition to ascertaining the legislature's intent from the plain and common meaning of the words used, courts may also consider, among other things, "the circumstances under which a statute was enacted, former statutory provisions, including laws on the same or similar subjects, and the consequences of a particular construction."  *See Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000).  The Texas statute is similar to the model unfair discrimination law adopted by the National Association of Insurance Commissioners ("NAIC") for accident and health policies. The model law defines unfair trade practices to include:

> Making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees or rates charged **<u>for any accident or health insurance policy</u>** or in the benefits

---

[12] "Hazard" means a "circumstance which tends to increase the probability or severity of a loss." *See Glossary of Insurance Terms*, *available at* http://www.naic.org/consumer_glossary.htm.

payable **thereunder**, or in any of the terms or conditions **of such policy**, or in any other manner."

*See* Model Unfair Trade Practices Act, Section 4(g)(2).[13]  The model statute likewise restricts its analysis and application to how policyholders are treated within the same policy.

Importantly, the Texas Act originally only applied to accident and health policies until it was extended to all lines of insurance in 1995.  *See Cortez v. Progressive County Mut. Ins. Co.,* 61 S.W.3d 68, 73 & n.6 (Tex. App.—Austin 2001, pet. granted, judgm't vacated pursuant to settlement).  The predecessor statute tracked the NAIC model act nearly verbatim, including its focus on rates charged for a particular policy of insurance.  The former Texas statute stated:

> any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premiums, policy fees, or rates charged **for any policy or contract of accident or health insurance** or in the benefits payable **thereunder**, or in any of the terms or conditions **of such contract**, or in any other manner whatsoever.

*Cortez*, 61 S.W.3d at 73.

Texas law requires courts to "view a statute's terms ***in context*** and give them full effect." *Liberty Mut.*, 966 S.W.2d at 484 (emphasis added).  The statute precludes unfair discrimination in insurance rates.  "The emphasis is on unfairly, since the very nature of insurance rates requires some degree of discrimination."  *See* Emmet J. Vaughn, *Fundamentals of Risk and Insurance,* 93 (6th Ed. 1992).  Good drivers with no traffic ticket history typically receive better rates than poor drivers with a long history of traffic tickets.  It is not unfair discrimination as a matter of law when based upon "sound actuarial principles," such as poor drivers having more insured losses.

Not a single Texas case has held that a policyholder can assert a claim for unfair discrimination by comparing his rates to those charged for ***another policy***.  The cases instead focus on allocation of risk among customers sharing the same contract of insurance, as the statute

---

[13] A copy of the Model Act is available to the public at www.naic.org/store/free/MDL-880.pdf.

requires.  For example, in *Cortez*, plaintiff sued for violation of the statute because customers "[p]aying a 10% commission rate for the ***same coverage, same policy, same company*** that can be obtained at a 7% commission rate is unfair."  *Cortez*, 61 S.W.3d at 65 (emphasis added).

Importantly, the Commissioner approves policy forms and rates as part of his statutory duties.  He considers whether a proposed rate "is unfairly discriminatory" or "based on sound actuarial principles."  *See* Tex. Ins. Code § 2251.051(d).  This rate review is conducted by TDI for each policy form that is filed.  *See id.* at §§ 23.006, 2251.101 (requiring approval of each policy form and rate used).  In other words, the focus of both TDI's rate review process in Chapter 2210 and the private right of action for unfair discrimination in Chapter 544 is how risk "for the same coverage," "for a policy or contract of insurance," or "under a policy or contract of insurance" is being allocated and whether that allocation is fair and based on sound actuarial principles.  As a matter of law, that inquiry must be focused on the same contract of insurance.

One reason unfair discrimination law is limited to the treatment of customers sharing the same policy is because insurance contracts and coverages are complex.  A seemingly minor change in coverage can have a large impact on potential loss payments and thus the rate paid.[14] In automobile insurance, there are different types of risks you can insure against including collision, bodily injury, uninsured motorist, underinsured motorist, and a number of others.  And each coverage part is subject to varying terms, conditions, and exclusions.  For example, one policy might treat damage to a rental car as property damage liability (i.e., damage to the property of others) while another might treat it as collision liability (i.e., damage to your

---

[14] For example, personal automobile policies historically excluded damage or injuries incurred while transporting people or goods for money, in large part because the liability and property damage risks are too great.  With the rise of Uber and Lyft, demand has increased for "rideshare" coverage, which some personal policies now make available through endorsement.

property).[15]   These coverage differences drive not only the rates charged, but actuarially sound reasons to discriminate between different classes of individuals.[16]

As NAIC drafting notes explain, unfair discrimination statutes focus on how individuals are categorized with respect to the coverage actually being offered under a particular insurance policy, with its particular mix of coverages, limitations, and terms and conditions.  *See* Model Regulation on Unfair Discrimination in Life and Health Insurance on the Basis of Physical or Mental Impairment ("Model Regulation"), Section 2.[17]   These laws ***do not*** require particular coverages, address what limitations or exclusions may or may not be applied, or mandate permissible underwriting criteria.  *Id.*   They ***do not*** implicate how many rate classifications a particular policy may have over another (e.g., two rate classifications versus one hundred).[18]   *Id.* These statutes are simply not designed to get into comparisons across different policies—they are limited to proper classifications within each policy actually offered.

---

[15]   The importance of knowing the scope of your coverage is the basis for the series of "Farmers University" commercials focused on unusual auto claims.  *See, e.g.,*  "Hall of Claims: UFH:20" available   at   https://www.youtube.com/watch?v=oTjNhQcCHls   (discussing   an   auto   claim involving an "airborne water-heater-rocket").

[16] When discussing particular policyholders such as Plaintiffs, the terms "rate" and "premium" can be used interchangeably.  However, the terms have distinct meanings in the ratemaking context.  A rate is essentially the number that an insurance company sets as its price for a particular coverage, much in the same way that a gas stations sets its price per gallon.  The premium is what you pay as a result of the rate. *See, e.g.*, *Understanding Rates vs. Premiums*, HelpInsure.com (website provided by the Texas Department of Insurance and Office of Public Insurance Counsel), *available at* http://www.helpinsure.com/home/horatespremiums.html.

[17] A copy of the regulation is available to the public at www.naic.org/store/free/MDL-887.pdf.

[18] Rate classification is the grouping of similar risks based on expected loss.  Common characteristics used in auto rate classifications include how a car is used, how often it is operated, and a driver's history of traffic violations.  *See, e.g.,* D.B. Houston, "Risk, Insurance, and Sampling," *The Journal of Risk and Insurance*, Vol. XXXI No.4 p. 534.  Policy pricing for a particular person can vary greatly depending on the type and number of rate classifications used for a particular policy.

The fallacy of Plaintiffs' claim is further demonstrated by the fact that Section 544.052(2) prohibits unfair discrimination  in the "benefits payable under a policy or contract of insurance." In determining whether there has been unfair discrimination in benefit payments between two classes of persons for essentially the same risk, the analysis must begin with two classes sharing "a policy or contract of insurance."  If two people from the same class suffer $1,000 in damage from an auto collision and one receives $500 from his insurer and the other receives $750, does that constitute unfair discrimination?  These facts are of course meaningless unless the two people share "a policy or contract of insurance."  This is precisely what the statute requires.

Plaintiffs' allegations, even if true, demonstrate only that FA2 and FSPA policyholders and prospective policyholders were charged different rates for different policies.  Thus, Plaintiffs have not stated a viable claim under Chapter 544.  The Court should dismiss this case.

2.     *Plaintiffs' Conclusory Allegation that the Policies Are "Identical or Virtually Identical" Does Not Preclude Dismissal*

Plaintiffs appear to agree with FGI's interpretation of the unfair discrimination statute as only applying to persons who share the same policy, which is why they attempt to overcome this hurdle by asserting that FA2 and FSPA polies are "identical or virtually identical."  *See id.*, ¶¶ 2–7, 56, 108.[19]  However, this conclusory allegation does not preclude dismissal, particularly in light of TDI's approval of the different policies and rates, which are a matter of public record.

Plaintiffs' allegation that the two policies are virtually or substantially identical is conclusory and need not be accepted by this Court for purposes of deciding the motion to dismiss.  The Complaint contains no factual allegations of any kind to support any plausible inference that the FA2 and FSPA policies are the same.  Rather, it merely alleges (repeatedly)

---

[19] It is important to note that Plaintiffs admit that rewriting an FA2 policyholder into FSPA does not necessarily result in the customer paying lower premiums.  *See* Compl., ¶ 3.

they are "substantially" or "virtually" identical without pleading any supporting facts.  *See, e.g.*, *id.*,  ¶¶ 4, 6, 32, 34, 56 and 60.  Plaintiffs have made no factual allegations about the coverages available, applicable exclusions, or the type or number of rating classifications for either policy. Conclusory allegations are insufficient to satisfy the pleading requirements with respect to an element of a plaintiffs' cause of action, and need not be accepted as true for purposes of deciding a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 684 (2009) ("more than labels and conclusions" are required, threadbare or formulaic recitations of the elements will not suffice, and a court is "not bound to accept as true a legal conclusion couched as a factual allegation").[20]

Moreover, as detailed above, the Code requires all county mutual insurers to file their policy forms, rates, rating manuals, and supplementary rating information (along with an actuarial memorandum and complete actuarial support) with TDI for all new insurance policies. *See* Section II(C)(3), *supra*.  The Commissioner is then tasked with deciding whether the policy forms and rates meet all legal requirements and, if not, must disapprove of them.  He specifically considers whether the proposed rates for a policy are excessive or unfairly discriminatory.  *See* Tex. Ins. Code §§ 2251.051(d); 2251.052(b).[21]  Only allowed forms and rates may be used.

Here, it is undisputed that Texas Farmers only used allowed rates.  *See* Exs. 1 & 2.  Not only did TDI allow two different rates for the two different policies, it was fully aware that the FA2 book of business would be closed and only FSPA policies sold to new customers going forward.  *See* Exs. 3 & 4.  Unlike Plaintiffs' conclusory statements which the Court may ignore, these filings show that two different policies with two different rates have been filed with and

---

[20] *See also*, *e.g.*, *SC & E Admin. Servs., Inc. v. Deloitte*, No. A-05-CA-929-SS, 2006 WL 6747974, at *5 (W.D. Tex. July 25, 2006) ("The Federal Rules do require a plaintiff to plead actual facts in support of its claims.").

[21] This regime is consistent with Chapter 544, which provides a defense to unfair discrimination claims if the discrimination is based on sound actuarial principles.  Tex. Ins. Code § 544.053.

allowed by TDI.  Accordingly, Plaintiffs have not stated a claim under the unfair discrimination statute by alleging similar individuals are charged different rates under these separate policies.

**C.**     **The Filed Rate Doctrine Bars Plaintiffs' Lawsuit**

    1.     *The Filed Rate Doctrine Renders Any Filed Rate "Unassailable"*

As explained above, Plaintiffs allege they were overcharged on their auto insurance and are suing for the difference between the premium they paid (the FA2 rate) and the premium they claim they should have paid (the FSPA rate).  They claim the rate for the FA2 policy is too high because it provides "essentially the same coverage" as the FSPA policy, which they allege charges a lesser rate.  Or stated differently, Plaintiffs think the FA2 rate is excessive and the rate difference between the two policies is unfair.  This claim is barred by the filed rate doctrine, which precludes courts from addressing direct or indirect challenges to filed rates.

"The Fifth Circuit has enunciated the doctrine in broad terms[.]"  *Winn v. Alamo Title Ins. Co.*, Case No. A-09-CA-214-SS, 2009 WL 7099484, at *4 (W.D. Tex. May 13, 2009), *aff'd*, 372 Fed. Appx. 461 (5th Cir. 2010), *cert. denied*, 562 U.S. 890 (2010).  "The filed rate doctrine bars judicial recourse against a regulated entity based upon allegations that the entity's 'filed rate' is too high, unfair or unlawful."  *Tex. Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503, 507 (5th Cir. 2004) (citing *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409 (1986)).  "'Simply stated, the doctrine holds that ***any "filed rate"***—that is, one approved by the governing regulatory agency—***is per se reasonable and unassailable in judicial proceedings brought by ratepayers***.'"  *Id.* at 508 (quoting *Wegoland, Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994)) (emphasis added).  The doctrine prohibits a customer from claiming a lower rate or charge than that filed with the pertinent regulatory agency.  *Korte*, 48 F. Supp. 2d at 650; *Sw. Bell Tel. Co. v. Metro-Link Telecom, Inc.*, 919 S.W.2d 687, 693 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

As Judge Sparks explained in the *Winn* case:

[T]he doctrine preserves the exclusive role of regulatory agencies in approving rates and keeping courts, which are far less competent to perform this function, out of the rate-making process ("nonjusticiability"). The nonjusticiability strand recognizes that (1) legislatively appointed regulatory bodies have institutional competence to address rate-making issues; (2) courts lack the competence to set rates; and (3) the interference of courts in the rate-making process would subvert the authority of rate-setting bodies and undermine the regulatory regime.

*Winn*, 2009 WL 7099484, at *4 (internal quotation marks and citations omitted). The Supreme Court "has repeatedly applied the filed rate doctrine in a number of cases to preclude lawsuits asserting claims directly or indirectly attacking rates filed with the appropriate regulating authority[,]" as have the Fifth Circuit, other federal circuit courts, federal district courts, and Texas courts. *Winn*, 2009 WL 7099484, at *3–5 (collecting cases); *see also, e.g.*, *Metro-Link Telecom*, 919 S.W.2d at 689.

The filed rate doctrine is triggered by what its name implies: a rate filed with and authorized by the pertinent regulatory authority. *See In re N.J. Title Ins. Litig.*, 683 F.3d 451, 456 (3d Cir. 2012) ("The Supreme Court has indicated that the doctrine applies whenever rates are properly filed with a regulating agency."); *Town of Norwood v. New Eng. Power Co.*, 202 F.3d 408, 419 (1st Cir. 2000) ("It is the *filing* of the tariffs, and not any affirmative approval or scrutiny by the agency, that triggers the filed rate doctrine."); *TXU Energy*, 413 F.3d at 509–10 (approving the First Circuit's approach in *Town of Norwood*). The doctrine has been recognized by the Texas Supreme Court and extends to the regulation of automobile insurance rates in Texas. *See Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 216 (Tex. 2002) ("The 'filed-rate doctrine' applies when state law creates a state agency and a statutory scheme under which the agency determines reasonable rates for the service provided."); *Korte*, 48 F. Supp. 2d at 651. It bars state law claims, including statutory claims. *See Metro-Link Telecom*, 919 S.W.2d at 693 (filed rate doctrine "applies equally where state law creates a state agency and a statutory scheme

pursuant to which the state agency determines reasonable rates"); *Wegoland*, 27 F.3d at 20; *see also, e.g.*, *Kanuco Tech. Corp. v. Worldcom Network Servs., Inc.*, 979 S.W.2d 368, 374 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (filed rate doctrine barred claim under the Texas Deceptive Trade Practices Act & Consumer Protection Act ("DTPA")); *Winn*, 2009 WL 7099484, at \*2 (doctrine barred claims under the DTPA and Texas Free Enterprise and Antitrust Act); *Korte*, 48 F. Supp. 2d at 649 (doctrine barred claims under the DTPA and the Code).[22]

The filed rate doctrine applies "whether or not plaintiffs are suing for a class." *Wegoland*, 27 F.3d at 22. It "is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities whenever either the nondiscrimination strand or the nonjusticiability strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue." *Marcus v. AT&T Corp.*, 138 F.3d 46, 59 (2d Cir. 1998); *see also Winn*, 2009 WL 7099484, at \*4 (following *Marcus*). Indeed, there is no fraud exception to the doctrine. *Korte*, 48 F. Supp. 2d at 650. While courts acknowledge that application of the doctrine may have "harsh effects," they have opted for this result over upsetting agency authority. *See Winn*, 2009 WL 7099484, at \*3 (citing *Maislin Indus. v. Primary Steel, Inc.*, 497 U.S. 116, 128 (1990)). Here, of course, applying the doctrine would create no harsh result, as Plaintiffs have a statutory administrative remedy to address any rate filing grievance. *See* Tex. Ins. Code § 2251.105.

The filed rate doctrine is implicated when a request for damages would involve the Court in alteration of the filed rate. *Korte*, 48 F. Supp. 2d at 652; *see also McCray*, 682 F.3d at 242;

---

[22] While some courts have concluded that the filed rate doctrine does not bar equitable claims, notably in the antitrust context (*see, e.g.*, *Destec Energy, Inc. v. S. Cal. Gas Co.*, 5 F. Supp. 2d 433, 459 (S.D. Tex. 1997)), this Court has not adopted this view. *See Winn*, 2009 WL 7099484, at \*2, \*9 (dismissing lawsuit under filed rate doctrine where plaintiffs sought declaratory and injunctive relief, monetary damages, and disgorgement). And the better-reasoned view is that the filed rate doctrine precludes injunctive relief when such relief seeks to prevent a regulated entity from relying on the filed rate (*see McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 235 n.5 (3d Cir. 2012)), which is precisely what Plaintiffs seek here.

*Oncor Elec. Delivery Co. LLC v. Chaparral Energy, L.L.C.*, No. 08-13-00159-CV, 2016 WL 156054, at *5 (Tex. App.—El Paso Jan. 13, 2016, pet. filed). Even claims that do not require judicial rate-making per se can implicate the filed rate doctrine, as "[t]he filed rate doctrine prevents more than judicial rate-setting; it precludes any judicial action which undermines agency rate-making authority." *Marcus*, 138 F.3d at 61. The doctrine is a proper basis for dismissing a case at the pleadings stage. *See, e.g.*, *TXU Energy*, 413 F.3d at 510 (affirming dismissal based on filed rate doctrine); *see also, e.g.*, *Winn*, 2009 WL 7099484, at *9; *Korte*, 48 F. Supp. 2d at 649, 653.

> 2. *The Filed Rate Doctrine Applies to Plaintiffs' Claim*

This case presents a straightforward application of the filed rate doctrine. Here, the two policies and sets of rates were filed with TDI, which allowed both rates. Exs. 1 & 2. In determining whether to disapprove the rates, TDI and the Commissioner were required under the ratemaking statute to consider whether the rates were appropriate, including whether the rates were excessive, unfairly discriminatory, and "based on sound actuarial principles." Tex. Ins. Code §§ 2251.051, 2251.052(b), 2251.103(a); 28 Tex. Admin. Code § 5.9334(f). The FSPA rate filing demonstrates that TDI also considered the coverage and rates available under the FA2 policy in deciding to allow the FSPA policy and rates. Exs. 2, 3 & 4.

Plaintiffs claim FA2 policyholders "have paid, and continue to pay, higher premiums than they should." Compl., ¶ 8. As in *Winn*, Plaintiffs' allegations "clearly rest on the amount paid by Plaintiffs for [auto] insurance, effectively implicating the validity of the rates[.]" *Winn*, 2009 WL 7099484, at *9. Their claim necessarily hinges on the (erroneous) belief that the premium charged for FA2 coverage was excessive and unfair because "virtually identical" coverage was available at a lesser rate. These issues are at the core of TDI's ratemaking process.

Additionally, if Plaintiffs were to prevail here, their requests for damages and restitution would require the Court to replace the Commissioner as the regulator of insurance rates. The Court would be required to determine a new, appropriate rate for FA2 policies for approximately one million Farmers Texas insureds (according to Plaintiffs).[23] It would be required to repeat the process already taken by TDI of wading through hundreds of pages of actuarial data, loss modeling, underwriting calculations, rate manuals, and detailed coverage comparisons. This is precisely what the filed rate doctrine precludes. *See, e.g.*, *Metro-Link Telecom*, 919 S.W.2d at 693 ("Allowing a state court to award damages to a customer based on a rate lower than the filed rate would undermine the regulatory scheme."); *McCray*, 682 F.3d at 242 ("[T]he District Court's interference in the rate making process would 'subvert the authority' of the DOI by second-guessing its rate determination, thus further implicating the nonjusticiability strand."); *Util. Choice, L.P. v. TXU Corp.*, No. H-05-573, 2005 WL 3307524, at *5–6 (S.D. Tex. Dec. 6, 2005) (claims were barred by the filed rate doctrine where the requested relief "would require the Court to determine the appropriateness of the rates charged by Defendants and unduly infringe upon the rate setting authority held by the [regulatory agency]").

As case law and the Code recognize, the Commissioner and TDI are the only ones positioned and equipped to make such determinations. *See Winn*, 2009 WL 7099484, at *4 (the nonjusticiability strand recognizes that "courts lack the competence to set rates"); *In re N.J. Title*, 683 F.3d at 457 ("the nonjusticiability strand recognizes that federal courts are ill-equipped to engage in the rate making process"). The Second Circuit's explanation for the filed rate doctrine holds true here:

---

[23] The Court could not simply assume there is no difference in the actuarial risk between the FA2 and FSPA policies and apply the FSPA rate to the putative class. Rating depends on many complex factors, such as loss history, which differ between the two policies and which the Commissioner has already analyzed here.

> As compared with the expertise of regulating agencies, courts do not approach the same level of institutional competence to ascertain reasonable rates. Regulators employ their peculiar expertise to consider the whole picture regarding the reasonableness of a proposed rate. They make hundreds if not thousands of discretionary decisions about the submitted costs and ultimately arrive at the approved filed rate. Courts are simply ill-suited to systematically second guess the regulators' decisions and overlay their own resolution.

*Wegoland*, 27 F.3d at 21.

Plaintiffs' sole cause of action is premised on the allegation that the rates or premiums they paid for FA2 policies are too high—a direct challenge to the appropriateness of the rates and policy fees on file with TDI.  Allowing Plaintiffs' lawsuit to proceed would run afoul of both the nonjusticiability command of the filed rate doctrine and the statutory scheme governing filed rates in Texas.  As such, Plaintiffs' lawsuit is barred by the filed rate doctrine, and dismissal with prejudice is proper.  *See McCray*, 682 F.3d at 242 (holding that the filed rate doctrine barred claims "based on the nonjusticiability principle alone").

## IV. <u>CONCLUSION</u>

Plaintiffs' sole cause of action for unfair discrimination fails as a matter of law because the statute only covers discrimination between individuals sharing the same contract of insurance.  Moreover, because they paid the rate allowed by TDI, the claim is precluded by the filed rate doctrine.  Accordingly, this case should be dismissed with prejudice.

Dated:  April 3, 2017                          Respectfully submitted,

                                               */s/ Scott Incerto*
                                               _____

                                               NORTON ROSE FULBRIGHT US LLP

                                                  M. Scott Incerto
                                                  Texas Bar No. 10388950
                                                  scott.incerto@nortonrosefulbright.com
                                                  Adam Schramek
                                                  Texas bar No. 24033045
                                                  adam.schramek@nortonrosefulbright.com
                                                  James Hughes
                                                  Texas Bar No. 24074453
                                                  james.hughes@nortonrosefulbright.com
                                                  William Patrick Courtney
                                                  Texas Bar No. 24087351
                                                  patrick.courtney@nortonrosefulbright.com

                                               98 San Jacinto Boulevard, Suite 1100
                                               Austin, Texas 78701
                                               Telephone:   (512) 474-5201
                                               Facsimile:   (512) 536-4598

                                                  Peter H. Mason (admitted *pro hac*)
                                                  California Bar No. 10388950
                                                  peter.mason@nortonrosefulbright.com
                                                  Cristina Longoria
                                                  Texas Bar No. 24070165
                                                  cristina.longoria@nortonrosefulbright.com

                                               555 South Flower Street, Forty-First Floor
                                               Los Angeles, California 90071
                                               Telephone:   (213) 892-9200
                                               Facsimile:   (213 892-9494


                                               ATTORNEYS FOR DEFENDANT
                                               FARMERS GROUP, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 3, 2017, a true and correct copy of the foregoing document

was served on all counsel of record via the CM/ECF system.

*/s/ Scott Incerto*_____
Scott Incerto
