**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| CHARLES GRIGSON and ROBERT VALE, Individually and on behalf of all others similarly situated, | Civil Action No.: 1:17cv88-LY |
| Plaintiffs, | |
| v. | |
| FARMERS GROUP, INC., a Nevada Corporation, | |
| Defendant. | |

**PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND MOTION TO STAY**

## TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................... 3

   A.  FGI Has and Continues to Engage in Unfair Discrimination Against Existing Policyholders. ................................................................... 3

   B.  FGI's Discrimination Has Harmed Up to One Million Texas Consumers. ...................................................................................... 4

   C.  FGI and the Farmers Corporate Structure ................................... 5

III.   LAW AND ARGUMENT ...................................................................... 5

   A.  Applicable Legal Standards ........................................................... 5

   B.  Plaintiffs Properly State a Claim for Discrimination in Violation of Section 544.052 ........................................................................... 6

   C.  Unable to Avail Itself of the Safe Harbor in Section 544.053, FGI Rewrites Section 544.052 ............................................................. 7

      1.  Plaintiffs Properly Allege They Were Charged More Than New Customers For the Same or Materially the Same Coverages ............................ 8

      2.  FGI Does Not Argue that Discriminating Against Existing Policyholders Is Based on "Sound Actuarial Principles" ........................................... 9

3.  FGI Improperly Re-Writes Section 544.052 ................................................ 9

**D.  The Filed-Rate and Primary Jurisdiction Doctrines Have No Bearing on This Case ............................................................................................... 15**

1.  FGI is Not a Regulated Insurer, Rendering the Filed-Rate Doctrine Inapplicable ................................................................................................ 15

2.  The Judicial System—Not TDI—is Expressly Vested With Jurisdiction Over Plaintiffs' Claims Pursuant to Section 544.054. .................................... 17

3.  Plaintiffs Challenge Discriminatory Conduct, Not Filed Rates, and Do Not Ask the Court to Conduct Any Rate Setting Or Any Other Work Within the TDI's Special Competence ............................................................................. 19

4.  TDI Did Not Approve FGI's Discrimination ............................................. 24

5.  FGI's Suggestion That Only TDI Can Ensure Even-Handed Treatment Lacks Merit ................................................................................................... 25

**IV.   CONCLUSION ........................................................................................... 25**

# TABLE OF AUTHORITIES

**CASES**

*Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009) .......................... 16

*Amarillo Oil Co. v. Energy–Agri Prod., Inc.*, 794 S.W.2d 20 (Tex.1990) ..................................... 6

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997)........................................................... 25

*Ark. La. Gas Co. v. Hall*, 453 U.S. 571 (1981)............................................................... 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 5

*Bowyer v. Beardon*, 291 S.W. 219 (Tex. Comm'n App. 1927, judgm't adopted) ...................... 14

*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198 (Tex. 2002) ..................................................... 19

*Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025 (N.D. Cal. 2013) .............................. 20

*City of Galveston v. Flagship Hotel, Ltd.*, 73 S.W.3d 422 (Tex. App. 2002)................................ 18

*Cortez v. Progressive County Mut. Ins. Co.*, 61 S.W.3d 68 (Tex. App. 2001)............................. 13

*Drew v. MCI Worldcom Mgmt. Co.,* 1999 WL 1087470 (N.D. Tex. Dec. 1, 1999)................. 6, 20

*Entergy Gulf States v. Summers*, 282 S.W. 3d 433 (Tex. 2009) ..................................................... 15

*Fogel v. Farmers Group, Inc.*, 160 Cal. App. 4th 1403 (2008)......................................... 6, 16, 17

*Foree v. Crown Cent. Petroleum Corp.*, 431 S.W.2d 312 (Tex. 1968) ............................. 6, 18, 21

*Gallo v. PHH Mortg. Corp.*, 916 F. Supp. 2d 537 (D.N.J. 2012).................................................. 20

*In re Apache Corp.*, 61 S.W.3d 432 (Tex. App. 2001)................................................. 6, 18, 21, 22

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ............................................................ 25

*In re Discovery Operating, Inc.*, 216 S.W.3d 898 (Tex. App. 2007) ......................................... 6, 18

*In re E.C.R.*, 402 S.W. 3d 239 (Tex. 2013) ................................................................... 15

*Kaltenbach v. Richards*, 464 F.3d 524 (5th Cir. 2006)............................................................ 21

*King v. Nat'l General Ins. Co.*, 129 F. Supp. 3d 925 (N.D. Cal. 2015)................................... 6, 20

*Leal v. McHugh*, 731 F.3d 405 (5th Cir. 2013)................................................................ 5

*Mercury Motor Exp., Inc. v. Brinke*, 475 F.2d 1086 (5th Cir. 1973)............................ 21

*Moon v. Chapa*, 2014 WL 12663102 (W.D. Tex. June 5, 2014).................................... 5

*N.Y. State Thruway Auth. v. Level 3 Commc'ns, LLC*, 734 F. Supp. 2d 257 (N.D.N.Y. 2010) ... 21

*Ojo v. Farmers Group, Inc.*, 356 S.W. 2d 421 (Tex. 2011)............................................ 12

*Penny v. Southwest Bell Telephone Co.*, 906 F.2d 183 (5th Cir. 1990)......................... 23

*State of Texas v. Farmers Group, Inc.*, No. GV202501 (Travis Cnty. Dist Ct.) ........... 16

*Sw. Bell Tel. Co. v. Metro-Link Telecom, Inc.*, 919 S.W.2d 687 (Tex. App. 1996) .............. 16, 22

*Tex. Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503 (5th Cir. 2005) ................ 6, 16

*Tex. West Oaks Hosp., LP v. Williams*, 371 S.W. 3d 171 (Tex. 2012)......................... 15

*Turner v. Pleasant*, 663 F.3d 770 (5th Cir.2011)........................................................... 5

*United States v. Menasche*, 348 U.S. 528 (1955) ....................................................... 21

*United States v. Williams*, 514 U.S. 527 (1995) ......................................................... 14

*Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17 (2d Cir. 1994) ....................................... 18

*White v. Hopkins*, 51 F.2d 159 (5th Cir. 1931)........................................................... 14

*Winn v. Alamo Title Ins. Co.*, No. 09cv214, 2009 WL 7099484 (W.D. Tex. May 13, 2009) 20, 22

## STATUTES

Tex Ins. Code § 544.051 ............................................................................................... 16

Tex. Gov't Code § 311.005(13)............................................................................... 14, 15

Tex. Gov't Code § 312.003(b).................................................................................... 12

Tex. Ins. Code § 541.008 .......................................................................................... 15

Tex. Ins. Code § 544.052 ……………………………………………………… passim

Tex. Ins. Code § 544.053 ...................................................................................... 1, 7, 9

Tex. Ins. Code § 544.054 ……………………………………………………….. passim

Tex. Ins. Code § 912.001(2) ................................................................................. 10

Tex. Ins. Code § 912.152(b) ................................................................................. 10

## OTHER AUTHORITIES

Webster's Third New International Dictionary of the English Language ............................ 12, 13

## RULES

Fed. R. Civ. P. 12(d) ............................................................................................. 9

Fed. R. Civ. P. 23 ................................................................................................. 25

COME NOW, Plaintiffs Charles Grigson and Robert Vale ("Plaintiffs"), who file this Omnibus Opposition to Defendant Farmers Group, Inc.'s ("FGI") Motion to Dismiss (Dkt. 17) and Motion to Stay (Dkt. 18) (hereinafter "Motion to Dismiss" and "Motion to Stay" respectively).  For the reasons stated herein, the Court should deny both motions.

## I.  INTRODUCTION

In 2016, FGI began implementing a company-wide policy in Texas whereby it deliberately discriminates against existing auto insurance policyholders, systematically charging them higher premiums than otherwise identically-situated new policyholders for the same coverages.  FGI has carried out this policy by actively concealing the better rates from existing policyholders, by threatening good-intentioned Farmers agents who wish to tell their clients about the better rates, and through other measures designed specifically to prevent existing policyholders from receiving or even knowing about the better rates.  As set forth in Plaintiffs' Class Action Complaint (Dkt. 1) (hereinafter "Complaint"), FGI's conduct directly violates Tex. Ins. Code § 544.052 ("Section 544.052") and the Texas Legislature has expressly vested this Court with jurisdiction over Plaintiffs' claim pursuant to Tex. Ins. Code § 544.054 ("Section 544.054").

FGI does not dispute that discrimination between existing and new policyholders can constitute a violation of Section 544.052.  Nor does it suggest that such categorical discrimination based solely on one's status as an existing policyholder is somehow based on actuarial principles so as to qualify under the "safe harbor" of Tex. Ins. Code § 544.053.  Instead, FGI takes issue with Plaintiffs' well-pleaded facts and incorrectly argues that its discriminatory conduct falls outside of Section 544.052's broad anti-discrimination scope.  FGI's argument depends entirely on its misguided attempt to literally re-write the statute, replacing terms in the statute that do not fit its argument and adding other terms that do not exist in the statute.  By its

1

express terms, Section 544.052 broadly prohibits discrimination between similarly situated individuals "in any manner" and the Court should soundly reject FGI's untenable attempt to artificially and drastically narrow its scope.

FGI's other argument for dismissing Plaintiffs' claim—that the filed-rate doctrine supposedly bars it—fares no better. First of all, it is beyond dispute that FGI is "a person" covered by Section 544.052, but **not** a regulated insurer and thus the filed-rate doctrine can have no application to FGI under established law.  Moreover, even if the doctrine could apply to FGI's conduct, it would not apply in this case because Plaintiffs neither directly nor indirectly challenge the reasonableness of their rates; rather Plaintiffs' claims are based on FGI's blatant discrimination and concealment of rates that, but for FGI's discrimination, were available to Plaintiffs and other existing policyholders.  Indeed, if Plaintiffs' claim here could be barred under the filed-rate doctrine, Section 544.052's prohibitions regarding premium rate discrimination, and Section 544.054's vesting of jurisdiction of such claims with the judicial system, would serve no purpose.

FGI's alternative request, to stay this case indefinitely and refer the issues to the Texas Department of Insurance ("TDI") under the "primary-jurisdiction" doctrine, is similarly misguided.  Plaintiffs' lone claim here is **not** about how the rates at issue were determined or about such process in any way.  Nor does its adjudication require the technical expertise of TDI or raise issues within TDI's exclusive or primary jurisdiction.  This non-technical case is about **FGI's internal policy** of hiding better, otherwise available rates from an entire category of its customers for no reason but that they were existing policyholders. The issues to be adjudicated here—including whether FGI actively discriminated against Plaintiffs and other existing policyholders, the calculation of the resulting damages (pursuant to a simple, common formula

that, by the way, FGI has already provided), and whether FGI's conduct was "knowingly committed" so as to warrant the imposition of civil penalties under Section 544.054—are exactly the type of issues that *courts* resolve every day.  Indeed, the Texas Legislature recognized as much when it *expressly vested the judicial system with jurisdiction* over Section 544.052 claims (including claims regarding discrimination as to premium rates charged), a fact that, standing alone, mandates rejecting both FGI's filed rate doctrine argument and primary jurisdiction request.  Tex. Ins. Code § 544.054.  The Court should deny both of FGI's motions.

## II.     FACTUAL BACKGROUND

The Complaint includes detailed allegations supporting Plaintiffs' claim. The following is a brief summary of the factual background for the Court's convenience.

### A. FGI Has and Continues to Engage in Unfair Discrimination Against Existing Policyholders.

Through a series of aggressive, highly-deceptive policies and practices, FGI has been systematically discriminating against existing Farmers Texas policyholders for the past year-and-a-half.  In early 2016, FGI introduced a new auto policy regime in Texas, Farmers Smart Plan Auto ("FSPA"), which provided significantly lower premiums than the prior regime ("FA2") for the same coverages.  Instead of making FSPA and its lower rates available to existing (FA2) policyholders when their policies (which are 6 months in length, (Compl., ¶ 36)) were up for renewal or before such time, FGI has taken a series of deliberate steps to actively hide FSPA and its lower rates from Plaintiffs and other existing policyholders.

Among other things, FGI commanded Farmers agents to conceal FSPA from their existing clients, explicitly instructing the agents that FSPA was to be limited to "new business" only.  FGI even set an arbitrary, very low ceiling (5%) for the number of FA2 policies that agents could re-write to FSPA (i.e., FA2 > FSPA transfers), and repeatedly threatened agents with the

consequences (including to their compensation and job security) of disclosing FSPA to existing policyholders or exceeding the arbitrary ceiling for FA2>FSPA transfers.  (Compl., ¶¶ 35-49.) For those few existing policyholders lucky enough to find out about FSPA, FGI employed several procedural impediments and other tactics specifically designed to prevent them from transferring to FSPA.  (Compl., ¶¶ 51-57.)

FGI concealed FSPA and discriminated against existing policyholders in this manner on the **sole** basis that they were existing customers.  Indeed, other than FGI's **internal** policies, nothing rendered Plaintiffs or other existing policyholders ineligible for FSPA.  The limited instances where FA2>FSPA transfers were permitted had nothing to do with any assessment of the policyholders' risk profiles.  (Compl., ¶¶ 38, 40, 46.)

FGI's motivation in engaging in this conduct was to entice new business by offering them lower premiums, without giving up the higher premiums being extracted from existing policyholders, all of which was ultimately aimed at increasing FGI's own profitability.  (Compl., ¶¶ 15, 30-31, 35, 39.)

**B.  FGI's Discrimination Has Harmed Up to One Million Texas Consumers.**

As a direct result of FGI's discrimination, Plaintiffs and as many as one million Texas consumers have been harmed by paying significantly higher premiums than otherwise identically-situated new customers (with the same exact risk profiles) for the same or materially the same coverages.  (Compl., ¶¶ 2-3, 6, 8, 32-34, 40, 60-64, 73, 91.)  This harm is confirmed by, *inter alia*, a sample analysis that FGI itself performed of 100,000 actual FA2 policies, comparing on an "apples-to-apples" basis the premiums charged under FA2 and FSPA for the same coverages.  The average differentials between FA2 and FSPA may be as high as 20-40%. (Compl., ¶¶ 33-34.)  Both Plaintiffs were charged more for FA2 policies than they would have been charged for the same coverages under FSPA.  (Compl., ¶¶ 67-75, 79-91.)

4

### C.  FGI and the Farmers Corporate Structure

FGI is not an insurer and is not regulated by the TDI or any other insurance regulator. The insurer that issued the Farmers auto policies to Plaintiffs and the other putative class members is Farmers Texas County Mutual Insurance Company ("Farmers Texas"), a policyholder-owned county mutual and one of several state-specific insurer subsidiaries within the Farmers umbrella.  Insurance rates filed with the TDI are filed by insurer Farmers Texas, not FGI.  (Compl., ¶¶ 1, 14-15, 27; *see also* Mot. to Dismiss at 7.)

FGI controls Farmers Texas (and the other state Farmers insurer subsidiaries), performing virtually all duties on its behalf other than claims adjustment.  FGI, in turn, receives a significant portion of premiums paid by Farmers Texas policyholders as a management fee. (Compl., ¶¶ 19-27.)  FGI is responsible for the discriminatory policies and practices alleged in this case. (Compl., ¶ 15.)

## III.    LAW AND ARGUMENT

### A.  Applicable Legal Standards

On a motion to dismiss, the court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff."  *Moon v. Chapa*, No. 13cv387, 2014 WL 12663102, at *3 (W.D. Tex. June 5, 2014).  Dismissal at the pleading stage generally "'is viewed with disfavor and is rarely granted.'"  *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir.2011)). "Dismissal is appropriate only if the complaint fails to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Leal*, 731 F.3d at 410 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The filed-rate doctrine bars certain claims "against a regulated entity based upon allegations that the entity's 'filed rate' is too high, unfair or unlawful."  *Tex. Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503, 507 (5th Cir. 2005).  It does not apply merely because a

claim implicates insurance rates or seeks a partial refund of such rates, and does not apply to claims challenging the conduct of non-regulated entities like FGI.  *See, e.g., Drew v. MCI Worldcom Mgmt. Co.*, No. 3:99cv1355, 1999 WL 1087470, at *1 (N.D. Tex. Dec. 1, 1999); *King v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 936 (N.D. Cal. 2015); *Fogel v. Farmers Group, Inc.*, 160 Cal. App. 4th 1403 (2008).

Under the primary jurisdiction doctrine, courts may refer certain issues that are "especially committed" to a particular government agency. *Foree v. Crown Central Petroleum Corp.*, 431 S.W.2d 312, 316 (Tex. 1968).  The doctrine "does not apply to actions or disputes that are inherently judicial in nature and over which the legislature has not vested exclusive jurisdiction in an administrative body," even where "a particular agency has extensive general regulatory authority in the area."  *In re Discovery Operating, Inc.*, 216 S.W.3d 898, 904 (Tex. App. 2007); *In re Apache Corp.*, 61 S.W.3d 432, 436 (Tex. App. 2001) (citing *Amarillo Oil Co. v. Energy–Agri Prods., Inc.*, 794 S.W.2d 20, 26 (Tex.1990)); *Foree*, 431 S.W.2d at 316.

**B.  <u>Plaintiffs Properly State a Claim for Discrimination in Violation of Section 544.052</u>**

Plaintiffs' Complaint alleges in substantial detail the elements of a claim under Section 544.042, including that FGI has discriminated against Plaintiffs and other existing Farmers Texas policyholders, vis-à-vis new policyholders, with respect to the premium rates they were charged, despite the fact that existing policyholders are of the same class and of essentially the same hazard as new policyholders.  (Compl., ¶¶ 1, 3-4, 6-9, 32-34, 35-57, 73, 91.)  The Complaint alleges that FGI aggressively and as a matter of company policy concealed the lower, available FSPA rates from existing policyholders, and threatened Farmers agents who tried to let their clients know about the better rates.  The result is that Plaintiffs and other existing Farmers Texas policyholders were systematically charged more for the same coverages than otherwise identically-situated new policyholders.  (Id., ¶¶ 32-34.) FGI's conduct was not based on any

actuarial principles, but rather was driven by a desire to bring in new business by offering attractive rates to new customers while not losing out on the higher premiums being paid by existing policyholders.  (Id., ¶¶ 35-57.)

### C.  <u>Unable to Avail Itself of the Safe Harbor in Section 544.053, FGI Rewrites Section 544.052</u>

As discussed *infra* at III.C.1., the Complaint alleges with more than plausible factual support that Plaintiffs and other existing customers were charged more than new customers for the same or materially the same coverages.   Indeed, FA2 policies can be (and have been on occasion) literally "rerated" by FGI as FSPA policies containing the same exact coverages. Moreover, FGI cannot credibly dispute that Plaintiffs have plausibly alleged FGI's discrimination was not based upon "actuarially sound principles." Tex. Ins. Code § 544.053(a) (providing a safe harbor if the "rate charged another individual for the same coverage is based on sound actuarial principles"). In fact, FGI does not even argue that discrimination against existing policyholders, on that basis alone, can ever be actuarially justified.

FGI instead attempts to re-write Section 544.052 to manufacture an argument that the Section does not apply where there are multiple policy regimes in play (even if the same coverages are available under both regimes). Specifically, FGI argues that Section 544.052 is limited to alleged discrimination within a single policy or contract form.   In presenting this argument, FGI not only elevates form over substance, but also completely fabricates the "form" that it proffers, literally re-writing Section 544.052 to suit its dismissal argument. FGI changes the plain language of Section 544.052, disregards basic grammar and Texas's Code Construction Act, flouts the legislative intent, and ignores the practical implications of its argument.

    **1.** ***Plaintiffs Properly Allege They Were Charged More Than New Customers For the Same or Materially the Same Coverages***

    Throughout the Complaint, Plaintiffs allege that they and other existing Farmers Texas policyholders were systematically charged higher premium rates than otherwise identical new customers for the same or materially the same coverages as a direct result of FGI's discriminatory conduct.  (Compl., ¶¶ 2, 6 30-34, 56, 60, 73, 87, 91).  FGI labels these allegations as "conclusory" (Mot. to Dismiss, at 13), but ignores specific allegations on this issue, including regarding ***FGI's own sample analysis*** of 100,000 actual policies, which consisted of an "apples-to-apples comparison" of premiums charged for the same coverages under FSPA and FA2. (Compl. ¶ 33.)  FGI's moving papers actually reference this sample analysis (Dkt. No. 17-5 (Tran Decl. Ex. 4, at 5 (referring to an "Exhibit 5")), but notably FGI neglects to provide the sample itself as part of the Tran Declaration.  FGI has described the sample analysis as follows:

> The sample includes 100,000 in-force policies, selected at random. The percent differences are calculated using the following formula: [(FSPA Proposed Premium/FA2 Current Premium)-1] where "FSPA Proposed Premium" represents the sum of premium for **each coverage upon rerating the FA2 policies** using the Farmers Smart Plan Auto ROC, and "FA2 Current Premium" is the sum of premium at current rate level for **each coverage for the same set of policies in our current FA2 program**. We have updated Exhibit 5 in the Supporting Documents to include average premiums **by coverage** under Farmers Smart Plan Auto.

(Decl. of John R. Davis ("Davis Decl."), filed herewith, and **Ex. 1** ("Exhibit 1") at pp. 1-2.)  In other words, FGI has admitted that FA2 policies can be "rerated" (FGI's term) into FSPA policies providing identical coverages, as Plaintiffs' Complaint alleges both generally and with respect to Plaintiffs themselves.  (Compl., ¶¶ 6, 32-34, 73-74, 91.)  Although Plaintiffs are not required to factually prove as much at the pleading stage, FGI's 100,000 policy analysis and

description of same demonstrate that Plaintiffs' allegations on this issue are well-founded.[1] (Davis Decl., **Ex. 2** ("Exhibit 2").)   The Complaint also alleges that FGI has, in practice, permitted the rerating of a limited number of FA2 policies into FSPA (i.e., FA2>FSPA transfers) with identical coverages.  (Compl., ¶¶ 32-34, 44-46, 54-56, 73-74, 91.)  The Court must accept these allegations as true and draw all reasonable inferences therefrom in Plaintiffs' favor.[2]

### 2. *FGI Does Not Argue that Discriminating Against Existing Policyholders Is Based on "Sound Actuarial Principles"*

FGI does not contend that categorical discrimination against existing policyholders in the arbitrary manner alleged in the Complaint can be characterized as being based upon "sound actuarial principles." Tex. Ins. Code § 544.053(a) (providing safe harbor where differentiation based on "sound actuarial principles"). Indeed, while FGI cites and quotes Section 544.053, its subsequent discussion does not express any argument that discrimination against existing policyholders on the sole basis that they are existing policyholders can be actuarially justifiable.

### 3. *FGI Improperly Re-Writes Section 544.052*

Because the "safe harbor" of Section 544.053 does not apply under the facts alleged, FGI looks elsewhere to dodge liability for its discriminatory conduct.   Citing zero supporting authority, FGI claims that Section 544.052 applies only to discrimination confined to "the same policy[,]" or within "a particular contract of insurance[.]" (Mot. to Dismiss, at 8-9.)  FGI argues, in turn, that discrimination is not actionable under Section 544.052 if it occurs outside of a single

---

[1] Exhibit 2 shows an 8.5% premium differential between FA2 and FSPA.  (*See also* Compl. ¶ 33.)  As alleged in the Complaint, however, Plaintiffs believe the true average differential may be closer to 20-40%.  (*Id.* ¶ 34.)  In all events, as Exhibit 1 shows, FGI has already provided the common formula that can be used to determine the exact differential for each affected existing policyholder.

[2] By submitting factual and judicially noticeable evidence for the Court to consider, Plaintiffs do not encourage conversion of Defendant's Motion to Dismiss into a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 12(d).  Rather, Plaintiffs should be afforded the opportunity to pursue additional supporting evidence in discovery.

policy "form" (*e.g.*, between FSPA and FA2 policyholders). In other words, without any basis

and in direct conflict with Texas law, FGI attempts to narrow Section 544.052(1)-(3)'s "policy or

contract" language to the templates on which they are formed.

Section 544.052 simply does not contain the narrowing language that FGI asks this Court

to read into the statute. It reads as follows:

> Sec. 544.052.   UNFAIR DISCRIMINATION.   A person may not
> **in any manner** engage in unfair discrimination or permit unfair
> discrimination between individuals of the same class and of
> essentially the same hazard, **including** unfair discrimination in:
>
> (1)       the amount of premium, policy fees, or rates charged for a
> policy or contract of insurance;
> (2)       the benefits payable under a policy or contract of insurance;
> or
> (3)       any of the terms or conditions of a policy or contract of
> insurance.

Tex. Ins. Code § 544.052 (emphasis added).   By its plain terms, and as discussed *infra*, Section

544.052 broadly prohibits discrimination "**in any manner**" between customers of the same or

essentially the same hazard, and the language found in subsections (1)-(3) constitutes

nonexclusive **examples** of prohibited conduct. FGI's attempt to drastically narrow Section

544.052 based upon language found (or, rather, not found) in a list of nonexclusive examples,

fails for multiple reasons.

### a)   FGI Conflates "Policy" with "Policy Form"

One of the premises of its erroneous interpretation of Section 544.052 is FGI's conflation

of the word "policy," which is used in the Section, with a different term not used in the Section,

"policy form."   The former ("policy") is defined as the "document through which insurance is

effected or evidenced" at the individual level.   Tex. Ins. Code § 912.001(2).   The latter ("policy

form") is a "standard" template filing with the Texas Department of Insurance ("TDI"). Tex. Ins.

Code § 912.152(b).

Though "policy form" is nowhere to be found in Section 544.052, FGI devotes a major portion of its brief to "Form Filings," repeatedly referencing therein the terms "policy form" or "form." Then, the word "form" is dropped when FGI turns to the language of Section 544.052 (and it does not make a return appearance in FGI's brief), presumably because FGI realizes the statutory language (which never references "policy forms") does not support its argument.

Replacing "policy" with "policy form," as FGI urges, improperly changes the language the Texas Legislature adopted. It also results in a muddled statute. For example, Section 544.052(1) prohibits discrimination regarding the amount of premium "charged for" a policy. However, policyholders are certainly not "charged for" policy forms because – as admitted by FGI – policyholders have no interaction with policy forms.

### b) FGI's Attempt to Drastically Narrow Section 544.042 By Adding a Non-Existent "Same Policy" Limitation Must Fail

FGI asks the Court to re-write Section 544.052 in another way. Specifically, FGI argues that Section 544.052 "is limited to the treatment of customers sharing the same policy …." (Mot. to Dismiss, at 11; *see also* id. at 8 & 10 (arguing that § 544.052 applies only to the "same policy"); id. at 9 (referring to the "same insurance contract").) Section 544.052 simply does not say that. In fact, that interpretation would make no sense because, other than for family members on a family policy, individuals ***cannot share the same policy***. (Individuals can have policies written from the same policy form, hence FGI's misguided attempt to replace "policy" in the Section with "policy form").

FGI's "same policy" interpretation is premised on its unsupported, loaded reading of the word "a" in "a policy or contract[.]" (Mot. to Dismiss, at 9.) In essence, FGI suggests the use of the word "a" was intended to exclude from the statute's reach any discrimination that occurs across multiple policies (or, in FGI's twisted reading, "policy forms"). (*See, e.g.*, Mot. to

11

Dismiss, at 8-11).  Putting aside, for a moment, that FGI's reading conflicts with basic principles of grammar and the Texas Code Construction Act (as discussed below), there is absolutely no indication the Texas Legislature intended the reach of Section 544.052 to be so drastically narrow or for the word "a" to be read in the singular manner encouraged by FGI.

FGI's proffered interpretation runs directly counter to the main substantive language in Section 544.052 expressly prohibiting discrimination "in any manner" between customers of the same or essentially the same hazard.  As discussed further below (*infra* section III.C.3.c)) this language, in no uncertain terms, evidences that the Texas Legislature intended for Section 544.052 to broadly prohibit discrimination in this area.

FGI's attempt to read "a policy" as the "same policy," also runs afoul of English grammar.  As an indefinite article, the word "a" refers to a noun – in this case a "policy or contract" – when such noun is "undetermined, unidentified, or unspecified." Webster's Third New International Dictionary of the English Language ("Webster's Third"), at 1.  If the Texas Legislature wished to limit the scope of the examples listed in Section 544.052(1)-(3), to fact patterns where the "same policies" were in play, it would have replaced the indefinite article "a" with the adjective modifier "the same." The Texas Legislature, of course, did not do so because limiting Section 544.052 to the same policy would narrow the statute to the point of absurdity.

Further, the Texas Code Construction Act (which applies to construing provisions of the Texas Insurance Code, *see Ojo v. Farmers Group, Inc.*, 356 S.W. 3d 421, 430 (Tex. 2011)), states the following with respect to the appearance of the singular in Texas statutory law: "The singular includes the plural and the plural includes the singular unless expressly provided otherwise." Tex. Gov't Code § 312.003(b). Here, there is no language expressly providing that "a policy" should be interpreted to refer to a "single" or the "same" or a "particular" policy.

(Mot. to Dismiss, at 8-11 (arguing that Section 544.052 should be limited to the "same" or to a "particular" policy form); *see also* Webster's Third, at 1646 (defining adjective "particular" as "of, relating to, or being a **single** definite [] thing as distinguished from some or all others" (emphasis added).)

Finding no support in Section 544.052's actual language, FGI turns to the National Association of Insurance Commissioner's model statutes and regulations, but they do not support FGI's argument either. The model statute actually refers to "any...policy," not to the "same policy form" as FGI suggests, and there is no indication that the model statute's intent was to prohibit only the narrow range of discrimination FGI suggests. (Mot. to Dismiss, at 9-10.) Moreover, the language relied upon by FGI in the model statute is ***not*** the language adopted by the Texas Legislature in Section 544.052.

FGI's citation to *Cortez v. Progressive County Mut. Ins. Co.*, 61 S.W.3d 68 (Tex. App. 2001), is similarly misguided. Just because the discrimination at issue in *Cortez* happened to occur within one policy regime does ***not*** mean that Section 544.052 ***only*** applies in those circumstances.[3] Section 544.052 prohibits discrimination "in any manner[.]"

The Court should also consider the practical effect of FGI's argument. Had the Texas Legislature really limited Section 544.052 to discrimination within the "same policy form," the statute would be largely, if not entirely, toothless since it would offer no redress under the statute against FGI and other insurance entities engaging in literally any kind of insidious discrimination on any basis (including race, gender...etc.) if such entities simply created new policy regimes

---

[3] FGI's *Cortez* argument is no different than arguing racial discrimination is outside of Section 544.052's scope because another case found a violation of the Section based on gender discrimination.

and dumped the targeted group into the disfavored regime. That could not possibly have been the Texas Legislature's intent.[4]

### c) **FGI's Argument Fails for the Additional Reason that the Examples of Unfair Discrimination Found in Section 544.052 Are Expressly Nonexclusive**

Even assuming *arguendo* that the "a policy or contract" language found in the ***examples*** of discriminatory conduct listed in Section 544.052(1)-(3) was amended to instead read "the same policy or contract form," that revised language still would not support dismissal of Plaintiffs' claim.  The examples of prohibited conduct, listed in subsections (1)-(3) of Section 544.052, directly follow the Section's main substantive language which makes clear that that the Texas Legislature intended Section 544.052 to broadly make illegal unfair discrimination "in any manner" between customers of the same or essentially the same hazard.  Tex. Ins. Code § 544.052; *see also Bowyer v. Beardon*, 291 S.W. 219, 223 (Tex. Comm'n App. 1927, judgm't adopted) (statute containing the words "in any manner" indicates a "very broad policy"); *White v. Hopkins*, 51 F.2d 159, 162 (5th Cir. 1931) (finding that statute containing the words "in any manner" is "broad"); *United States v. Williams*, 514 U.S. 527, 531-32 (1995) (stating that statute containing "in any manner" clause "uses broad language").

Indeed, Section 544.052's use of the word "including" requires the conclusion that the examples that follow that word be treated as "terms of enlargement" under established Texas law.  *See* Tex. Gov't Code § 311.005(13) (providing that "'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded."); *see also Entergy Gulf States v.*

---

[4] FGI may argue on reply that TDI would prevent the adoption of such new rate regimes, but as the circumstances in this case show, an insurer with multiple regimes that are not presented to TDI as discriminatory, may nevertheless implement those regimes in a discriminatory manner pursuant to internal policy.  Hence the Texas Legislature's adoption of Section 544.042 and, through Section 544.054, vesting of the courts with jurisdiction to adjudicate claims under the statute.

*Summers*, 282 S.W. 3d 433, 440-441 (Tex. 2009) (cautioning against "circumventing legislative intent" as expressed in § 311.005(13)); *In re E.C.R.*, 402 S.W. 3d 239, 246 & n.6 (Tex. 2013) (same); *Tex. West Oaks Hosp., LP v. Williams*, 371 S.W. 3d 171, 179 (Tex. 2012) (holding that the Legislature's use of the term "including" meant that statutory definition was nonexclusive).

This plain language reading also jibes with the general legislative directive that the consumer protection provisions of the Texas Insurance Code be construed liberally. Tex. Ins. Code § 541.008 ("This chapter shall be liberally construed and applied to promote the underlying purposes as provided by Section 541.001."). The Court should reject FGI's misguided attempt to re-write Section 544.052.

### D. The Filed-Rate and Primary Jurisdiction Doctrines Have No Bearing on This Case

FGI's other argument for dismissal—*i.e.*, based on the filed-rate doctrine—is premised on a mischaracterization of Plaintiffs' Complaint and fails for multiple additional reasons, including because FGI is not a regulated insurer and thus the doctrine does not apply to its conduct. Likewise, FGI's related, alternative request to stay the case indefinitely under the primary jurisdiction doctrine lacks merit and should be rejected for multiple reasons, including because this case is not based on technical issues that only the TDI is equipped to consider or any other issues that are exclusively or primarily within the purview of the TDI. Rather this case is about FGI's non-technical, entirely internal policy of discriminating and concealing better available rates from an entire category of customers. This Court is well-equipped to adjudicate the lone cause of action here, precisely as the Texas Legislature contemplated when it expressly vested the judicial system with jurisdiction over this exact type of claim.

#### 1. *FGI is Not a Regulated Insurer, Rendering the Filed-Rate Doctrine Inapplicable*

As alleged, "TDI has no regulatory jurisdiction over FGI because FGI is not, and never has been a licensed insurer in any state." (Compl., ¶¶ 14, 27.) In fact, TDI itself has taken this

very position. In 2003, then-TDI Commissioner Jose Montemayor testified that "[TDI] ha[s] no authority over Farmers Group, Inc. because it's not an insurance company[.]" (Davis Decl., **Ex. 3** (*State of Texas v. Farmers Group, Inc.*, No. GV202501 (Travis Cnty. Dist Ct.) (May 21, 2003 Tr. of H'rg on Prelim. Approval of Settlement, at 109:15-18)).)  FGI agrees with TDI that it is not an insurer,[5] but ignores the resulting conclusion that the filed-rate doctrine can have no application here because the doctrine only applies to claims against regulated entities.  *See Fogel*, 160 Cal. App. 4th at 1417; *Tex. Commercial Energy*, 413 F.3d at 507 ("The filed rate doctrine bars judicial recourse ***against a regulated entity*** based upon allegations that ***the entity's 'filed rate'*** is too high, unfair or unlawful.") (emphasis added); *Sw. Bell Tel. Co. v. Metro-Link Telecom, Inc.*, 919 S.W.2d 687, 692 (Tex. App. 1996) (Filed rate doctrine applies to claims "against the private entity that filed" the rates); *see also Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1277 (S.D. Fla. 2009) (finding filed rate doctrine did not apply to claim alleging overpayment of insurance premiums because defendant bank was not an insurance company).[6]

The doctrine's inapplicability to FGI was specifically addressed in *Fogel* in the context of analogous California law.  There, plaintiff alleged that FGI breached its fiduciary duties, and sought a partial refund from FGI of premiums paid under policies with another state-level, FGI-controlled Farmers insurer.  FGI argued that the claims were barred by California's prior rate

---

[5] Mot. to Stay at 3 ("Plaintiffs have sued FGI—not their insurer, Farmers Texas."); Mot. to Dismiss at 7 (Farmers Texas, not FGI, submits rates to TDI for approval).

[6] It should be noted that, by design, Section 544.052 covers a broader range of players in the insurance industry.  *See* Tex Ins. Code § 544.051 (subchapter including Section 544.052 applies broadly to "any individual, corporation, association, partnership, or other legal entity engaged in the business of insurance.").  FGI does not dispute that it is covered by Section 544.052.

approval doctrine.  The appeals court disagreed, finding that the doctrine was not applicable to

non-regulated entities like FGI:

> Defendants' argument for immunity fails because they treat the insurer and the attorney-in-fact [FIE/FGI] as a single entity that is regulated by the Commissioner, rather than separate and distinct entities, only one of which is regulated.  While it might make sense to preclude lawsuits by policyholders challenging *an insurer's* rate of return as excessive, because that is something regulated by the Commissioner, it makes little sense to immunize the unregulated attorney-in-fact from a lawsuit by subscribers—the attorney-in-fact's principals—challenging a purportedly excessive rate of return.

*Fogel*, 160 Cal. App. 4th at 1417 (emphasis added).  Like the plaintiff in *Fogel*, Plaintiffs here

challenge misconduct by FGI, not by a regulated insurer.  Like the *Fogel* court, this Court should

reject FGI's attempt to assert immunity by improperly treating Farmers Texas and FGI as a

single entity when they are "separate and distinct entities, only one of which is regulated."  *Id*.

### 2. The Judicial System—Not TDI—is Expressly Vested With Jurisdiction Over Plaintiffs' Claims Pursuant to Section 544.054.

Even if FGI were a regulated insurer (which it is not), its filed-rate and primary

jurisdiction arguments would still fail under the plain language of the applicable statutes,

pursuant to which the Texas Legislature expressly vested the judicial system—not TDI—with

jurisdiction over claims under Section 544.052.  Tex. Ins. Code § 544.054(a) ("A person who has

sustained economic damages as the result of a violation of Section 544.052 may maintain only in

a Travis County district court an action against the person who violated that section.").  FGI does

not address this provision, **and in fact Section 544.054 is not cited in either of FGI's motions**.

Plaintiffs do not dispute that the Texas Legislature has endowed TDI with regulatory

authority over licensed insurers and in connection with the Texas Insurance Code. However, that

power is neither exclusive nor all-encompassing.

At its heart, the filed rate doctrine is a judicial recognition of legislative intent to delegate authority over rate regulation to the administrative agency receiving such a charge. *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 19 (2d Cir. 1994) (stating that the primary core principle underlying the filed rate doctrine is the legislature's intent that the regulatory body it created set rates); *see also Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 580 (1981) (in the context of the federal Natural Gas Act, stating that "Congress here has granted exclusive authority over rate regulation to the Commission").

In this case, the Texas Legislature has specifically charged courts with adjudicating claims under Section 544.052, including claims regarding discrimination as to premium rates charged. This clearly articulated and specific legislative command cannot be undercut by a judge-made doctrine of general application.   FGI's suggestion that the TDI's general enforcement power somehow trumps this clear, specific jurisdictional provision, lacks merit.   It is well settled that the primary jurisdiction doctrine in inapplicable where, as here, a dispute is "inherently judicial in nature," even where "a particular agency has extensive general regulatory authority in the area." *Apache Corp.*, 61 S.W.3d at 436 (citation omitted); *see also Discovery Operating*, 216 S.W.3d at 904 ("[T]he primary jurisdiction doctrine does not apply to actions or disputes that are inherently judicial in nature and over which the legislature has not vested exclusive jurisdiction in an administrative body."); *City of Galveston v. Flagship Hotel, Ltd.*, 73 S.W.3d 422, 425 (Tex. App. 2002) ("[W]here an issue is inherently judicial in nature, the courts are not ousted from jurisdiction unless the legislature, by a valid statute, has explicitly granted exclusive jurisdiction to an administrative body."); *Foree*, 431 S.W.2d at 316.[7]

---

[7] Nor does the non-technical claim here even raise a scenario where the legislature contemplated concurrent jurisdiction.  The claim here is judicial in nature and falls directly within the scope of claims that are to be filed and resolved in court under Section 544.054.

The very case law cited by FGI undermines FGI's argument.  In *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 208 (Tex. 2002), the court held the Texas Motor Vehicle Board had primary jurisdiction because "the Legislature has specifically authorized the Board to resolve disputes" like the one at issue.  Here, by contrast, the entity specifically tasked by statute to resolve claims of discrimination under Section 544.052 is the court system.

### 3. Plaintiffs Challenge Discriminatory Conduct, Not Filed Rates, and Do Not Ask the Court to Conduct Any Rate Setting Or Any Other Work Within the TDI's Special Competence

FGI's filed-rate and primary jurisdiction doctrine arguments fail for the additional reason that they are premised on a mischaracterization of Plaintiffs' sole cause of action.  Contrary to FGI's suggestion, Plaintiffs' claim is *not* that the FA2 premium rates they were charged were unreasonable or "too high."  Plaintiffs do *not* challenge the propriety of any rates filed with TDI, contend that discrimination was baked into any filed rates, or otherwise ask this Court to evaluate, directly or indirectly, the reasonableness of any decision by TDI.  Nor does Plaintiffs' claim here raise highly-technical issues that only TDI is equipped to consider.

Rather, Plaintiffs challenge non-technical, categorical discrimination by FGI that resulted, not from anything within TDI's purview, but from FGI's own *internal* policies and practices.  Lower rates that were approved by TDI were otherwise available to Plaintiffs and other existing customers, but FGI deliberately hid those rates from them (for no other reason but that they were existing customers) through a disturbing course of conduct as alleged in the Complaint.  TDI had nothing to do with FGI's decision to intimidate Farmers agents to keep them from telling their clients about the lower rates, or with FGI's other directives that existing customers were to be kept in the dark.  Nor did TDI play any role in setting FGI's arbitrary ceiling for FA2>FSPA transfers.  FGI's discrimination was solely a function of its own *internal* policies and practices.

The filed-rate doctrine is simply not implicated under these circumstances. FGI may urge

the Court to deviate from long-standing authority recognizing the distinction between challenges

to the reasonableness of a rate—the province of the TDI—and challenges to a defendant's

unlawful conduct—the province of the courts.   But while courts have rejected disingenuous

attempts to avoid the doctrine by mislabeling challenges to the reasonableness of rates (see, e.g.,

*Winn v. Alamo Title Ins. Co.*, No. A-09-CA-214-SS, 2009 WL 7099484, at *9 (W.D. Tex. May

13, 2009)), courts have repeatedly recognized the distinction and rejected application of the

filed-rate doctrine in circumstances like this case. The Court should draw guidance from *King v.*

*National General Insurance Company*, wherein the Northern District of California rejected a

filed-rate doctrine argument under similar circumstances:

> Plaintiffs do not challenge the reasonableness of any particular
> insurance rate, nor do they attack acts done pursuant to the DOI's
> rate-making authority. Instead, Plaintiffs challenge Defendants'
> allegedly wrongful application of the approved rates, i.e., the
> conduct and practices that result in Plaintiffs being offered a policy
> with a higher DOI-approved rate when they should have been
> offered a policy with a lower DOI-approved rate. Thus, neither
> [California's prior approval statute] nor the filed rate doctrine
> precludes Plaintiffs from litigating their claims in this court, and
> Defendants' motion to dismiss on this basis is denied.

129 F. Supp. 3d 925, 936 (N.D. Cal. 2015).  As *King* illustrates, the filed-rate doctrine does not

apply simply because a case involves premium rates or even seeks a partial refund of premiums

charged.  *See also, e.g.*, *Drew*, 1999 WL 1087470, at *1; *Gallo v. PHH Mortg. Corp.*, 916 F.

Supp. 2d 537, 546 (D.N.J. 2012) (finding filed rate doctrine inapplicable where plaintiff was "not

challenging the rate itself or the mechanism by which it was determined," but rather the

lawfulness of the defendant's conduct); *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d

1025, 1038 (N.D. Cal. 2013) (same).

In fact, if the filed-rate doctrine *did* bar all discrimination claims involving filed premium rates (the logical extension of FGI's argument), that would render useless Section 544.052's prohibition on such discrimination and certainly the corresponding right to file a judicial action provided for in Section 544.054, discussed *supra* at sections III.C. & III.D.2.  *See United States v. Menasche*, 348 U.S. 528, 538-39 (1955)  ("It is our duty to give effect, if possible, to every clause and word of a statute" (citation and internal quotation marks omitted)); *Kaltenbach v. Richards*, 464 F.3d 524, 528 (5th Cir. 2006) (statutes should be construed so that no clause, sentence, or word is superfluous, void, or insignificant).

Nor does adjudicating the sole claim alleged here implicate TDI's "special competence" in a way that requires TDI to "weigh in" under the primary jurisdiction doctrine.  *Mercury Motor Exp., Inc. v. Brinke*, 475 F.2d 1086, 1091-92 (5th Cir. 1973).  TDI is not solely qualified to evaluate claims involving the type of non-technical discrimination at issue here or FGI's unilateral practices of literally hiding better available rates from an entire category of its customers without any regard to their risk levels.[8]  Rather the issues to be adjudicated in this case—including whether FGI deliberately discriminated against Plaintiffs and other existing policyholders, what the resulting damages were to the affected consumers, and whether FGI's conduct was "knowing" so as to warrant the imposition of civil penalties under Section 544.054—are exactly the types of determinations that *courts* routinely make every day.  *In re*

---

[8] The existence of a regulatory body in a field does not vest that body with exclusive jurisdiction over any and all claims arising in that field, even when that regulator has broad "general regulatory authority" in the field.  *In re Apache*, 61 S.W.3d at 436; *Foree*, 431 S.W.2d at 316; *see also N.Y. State Thruway Auth. v. Level 3 Commc'ns, LLC*, 734 F. Supp. 2d 257, 265-66 (N.D.N.Y. 2010) ("[T]he doctrine of primary jurisdiction does not require that all claims that may fall within an agency's purview must be decided by the agency. . . .  [T]he doctrine should not be applied mechanically or according to some rigid formula. . . .  [T]here is no need to secure agency advice each and every time.") (citations and internal quotation marks omitted).  The doctrine is particularly inapplicable where, as here, the claims involve non-technical, internal conduct by the defendant and the legislature has expressly vested courts with jurisdiction.

*Apache Corp.*, 61 S.W.3d at 436 (primary jurisdiction does not apply to determinations that are "inherently judicial in nature") (citation omitted).   The Texas Legislature agreed when it expressly vested the judicial system with jurisdiction over claims alleging violations of Section 544.052.  Tex. Ins. Code § 544.054.

FGI warns that TDI rate filings can be "detailed and technical." (Mot. to Stay, at 3.)  But highlighting the complexity of TDI's work—when Plaintiffs do not ask the Court to engage in that work or anything remotely like it—does not support applying either doctrine FGI seeks to invoke.  This is a straightforward discriminatory conduct case that this Court is well-equipped to adjudicate.

Once the ***actual*** nature of Plaintiffs' Complaint is considered, it is apparent that the cases FGI cites do not support dismissal or the requested stay.  In *Southwest Bell Telephone Company. v. Metro-Link Telecom, Incorporated*, cited by FGI, the court explained that the filed-rate doctrine aims to prevent discrimination and that, typically, permitting a challenge to filed rates would frustrate this purpose because "[a]llowing the utility to vary from its [filed] rates would open the door for discrimination by the utility." 919 S.W.2d 687, 693 (Tex. App. 1996).  Here, there is no challenge to any filed rates, and the issue is not whether something discriminatory is baked into filed rates.  Nothing in *Metro-Link* remotely suggests that claims of actual discrimination of the sort alleged in this case would be barred by doctrine.  FGI's attempt to turn *Metro-Link* on its head should be rejected.  This case is also distinguishable from cases like *Winn* where, unlike here, the crux of the plaintiffs' claims was that the rates themselves were unreasonable. 2009 WL 7099484 at *1 ("Plaintiffs . . . complain the rates they were charged were artificially inflated").

With respect to primary jurisdiction, FGI's heavy reliance on *Penny v. Southwest Bell Telephone Co.*, 906 F.2d 183 (5th Cir. 1990), is misplaced. The plaintiff in *Penny* claimed that the defendant charged the plaintiff's competitor residential telephone rates while plaintiffs themselves were charged business rates, which plaintiffs claimed was "unfair" in violation of the Texas Deceptive Trade Practices Act. *Id*. at 184.  The court found that it and the Texas PUC had "concurrent jurisdiction" over the issue and that the PUC's "special competence" would help resolve whether the rates in question were truly "disparate" or proper under the filed tariffs. *Id.* at 187. The claim in *Penny* was not, as it is here, that the defendant was concealing available rates on a completely arbitrary basis from a category of customers.  Here, no similar "special competence" or input from TDI is needed.  As alleged, Defendant FGI, by its conduct, intentionally prevented Plaintiffs and other existing customers from accessing or even knowing about available better rates, for no reason but that they were existing customers, entirely separate from any actuarial concerns or filings with TDI.  The statute under which Plaintiffs file their claim clearly and directly prohibits FGI from engaging in this sort of discrimination, and vests courts with jurisdiction to hear claims.

FGI's suggestion that TDI's input is needed to evaluate the similarity of coverages available to Plaintiffs under FSPA and FA2 lacks merit for the reasons stated above.  FGI's own documents, including the 100,000 policy "apples-to-apples comparison," show that the same coverages available to Plaintiffs under FA2 were available under FSPA (and also provide the common formula that can be used to calculate the precise premium differential for each affected consumer).  This Court is well-equipped to make this kind of determination using such documents and any other evidence presented. Courts are often asked to read and interpret coverage provisions in insurance policies.  FGI's suggestion that TDI might need to weigh in on

whether FGI's discrimination was somehow actuarially sound (FGI does not now even argue that could be the case, *supra* at III.C.2.), likewise presents no basis for staying this case. FGI's discrimination had nothing to do with customer risk assessments; for example, FGI permitted an arbitrary small number of existing customers to transfer to FSPA without any regard to their individual risk profiles.[9] This Court is well-equipped to address that issue, should the need arise, at trial or on summary judgment based on any evidence presented by the parties.

### 4. TDI Did Not Approve FGI's Discrimination

Trying to prop up its misguided primary jurisdiction argument, FGI misleadingly implies that TDI blessed FGI's discriminatory conduct because the FSPA and FA2 rate regimes were filed with TDI.  (Mot. to Dismiss, at 14.)  However, FGI does not, and cannot, suggest that TDI knew about or blessed FGI's plan to conceal the new lower FSPA rates from existing customers and force them to stay in FA2 with its higher rates.  FGI communicated only that the "FA2 book of business would be closed and only FSPA policies sold to new customers going forward." (Mot. to Dismiss, at 14.)  Certainly, it is one thing to note that the old regime (FA2) will be closing, and quite another to forcibly preclude existing customers from accessing or even knowing about the new, lower rates (that were available to them) and thus forcing them to be stuck with the old higher rates going forward indefinitely, which FGI decidedly did not tell TDI would occur. In fact, the very nature of FGI's 100,000 policy sample that "rerated" FA2 policies into FSPA policies falsely suggested that FGI intended to make FSPA generally available.  (*See* Compl., ¶ 50 ("… at no point did FGI inform TDI that it would attempt to hide, conceal, and prevent current FA2 policyholders from switching to the cheaper FSPA when their FA2 policies

---

[9] The FGI documents cited in the Complaint already confirm that FGI"s discrimination against existing customers was not based on actuarial principles, but rather was carried out to serve FGI's self-serving "auto growth strategy."  (Compl., ¶ 39.)

came up for renewal. To the contrary, FGI falsely implied to TDI that FSPA would be generally available to existing FA2 policyholders.").)

### 5. *FGI's Suggestion That Only TDI Can Ensure Even-Handed Treatment Lacks Merit*

FGI's suggestion that staying this case under the primary jurisdiction is necessary to ensure "even-handed treatment and uniformity (Mot. to Stay at 9), lacks merit.  First of all, this argument is premised on the assumption that TDI's expertise is needed to adjudicate the sole claim in Plaintiffs' Complaint, which as discussed above is not the case.  Moreover, the principles underlying the allegations here (*i.e.*, eliminating discrimination) already apply uniformly and in fact have been codified in Section 544.052 in this specific context with a legislatively provided judicial remedy.  That the present case concerns insurance does not somehow make this Court ill-equipped to apply the universal principles at play in the statute, nor does it leave FGI or any other entity engaged in the business of insurance in the dark concerning what their obligations are.  Section 544.052 already makes clear that they are not to discriminate between their customers (which, frankly, should have been clear to FGI even without the statute).  Finally, Plaintiffs note that the use of the class action device here, and the protections of Federal Rule of Civil Procedure 23 protections, will protect against the threat of inconsistent rulings against FGI on the issues raised here.  *See, e.g.*, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (noting as a purpose of Rule 23, to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision"); *In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir. 2014) (same).  Issuing a stay under the primary jurisdiction doctrine is thus unnecessary to achieve that purpose.

## IV.   CONCLUSION

For the foregoing reasons, FGI's Motion to Dismiss and Motion to Stay (Dkt. Nos. 17-18) should be denied.

Dated: May 17, 2017                     Respectfully Submitted,


                                        /s/ John R. Davis_____
                                        Michael L. Slack (TX Bar 18476800)
                                        John R. Davis (TX Bar 24099518)
                                        Paula Knippa (TX Bar 24049103)
                                        SLACK & DAVIS, LLP
                                        2705 Bee Cave Road, Suite 220
                                        Austin, TX 78746
                                        Tel.: 512-795-8686
                                        Fax: 512-795-8787
                                        mslack@slackdavis.com
                                        jdavis@slackdavis.com
                                        pknippa@slackdavis.com

                                        Joe K. Longley (TX Bar 1254200)
                                        LAW OFFICES OF JOE K. LONGLEY
                                        3305 Northland Drive, Suite 500
                                        Austin, TX 78731
                                        Tel.: 512-477-4444
                                        Fax: 512-477-4470
                                        joe@joelongley.com

                                        Roger N. Heller (CA Bar 215348) (*pro hac vice*)
                                        Jonathan Selbin (NY Bar 3948684) (*pro hac vice*)
                                        LIEFF CABRASER HEIMANN & BERNSTEIN,
                                        LLP
                                        275 Battery Street, 29th Floor
                                        San Francisco, CA 94111
                                        Tel.: 415-956-1000
                                        Fax: 415-956-1008
                                        rheller@lchb.com
                                        jselbin@lchb.com

                                        COUNSEL FOR PLAINTIFFS CHARLES
                                        GRIGSON ET AL.

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ John R. Davis_____