# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| CHARLES GRIGSON and ROBERT VALE, Individually and on behalf of all putative class members, § § § § | |
| Plaintiffs, § § | |
| v. § § | Civil Action No. 1:17-cv-00088-LY |
| FARMERS GROUP, INC., a Nevada corporation, § § § § | |
| Defendant. § § § | |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

**INTRODUCTION**

Recognizing they have failed to state a valid claim for unfair discrimination in the rates they were charged for the insurance policies they actually purchased, Plaintiffs doggedly insist their claims arise **solely** from FGI's[1] alleged concealment of FSPA policies from existing FA2 customers.[2] However, as explained below, this claim likewise fails because there is no duty under Texas law to disclose all available coverage or policy options, even purportedly "less expensive" ones. And unfair discrimination statutes create no such disclosure obligation.

Plaintiffs cannot escape the fact that TDI approved two separate insurance policies with two separate rating plans, underwriting requirements, and premium charges. Plaintiffs claim in one breath they are not challenging the amount or reasonableness of the FA2 rates charged, and in the next breath claim they were entitled to the "better rates" because the policies are exactly the same. Even Plaintiffs' inconsistent arguments cannot overcome the fact that they seek a refund of allegedly excessive premiums. Asserting no viable claim for FGI's alleged "hiding" of FSPA policies and seeking a refund for payment of approved FA2 premiums barred by the filed rate doctrine, Plaintiffs' sole claim under Section 544.052 must be dismissed as a matter of law.

**A.    Plaintiffs Have Not Stated an Unfair Discrimination Claim Under Section 544.052**

1.   *Texas Law Does Not Impose any Duty to Inform Customers of Other Potentially Available Policies, Including Potentially Cheaper or More Favorable Ones*

Plaintiffs cite **no authority** for the proposition that insurers (much less third party management companies like FGI) are subject to a duty to inform customers of potential

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as in the Motion to Dismiss (ECF No. 17) (the "Motion").

[2] Opp. at 2 ("This non-technical case is about ***FGI's internal policy*** of hiding better, otherwise available rates"); *id.* ("Plaintiffs neither directly nor indirectly challenge the reasonableness of their rates"); *id.* at 3 ("FGI commanded Farmers agents to conceal FSPA from their existing clients"); *id.* at 19, 21 (accusing FGI of "hiding" the FSPA rates from existing FA2 customers).

1

insurance policy alternatives that might be cheaper or somehow more favorable to their particular circumstances. This is because no such authority exists under Texas law.

It is well settled that a duty to disclose arises only in the context of certain special relationships. *See, e.g.*, *Imperial Premium Fin., Inc. v. Khoury*, 129 F.3d 347, 352 (5th Cir. 1997). Other than a duty not to make affirmative misrepresentations,[3] the Texas Supreme Court has held that insurance agents' common law duties are limited to exercising reasonable diligence in attempting to place the requested insurance and informing the client promptly if they cannot. *See May v. United Servs. Ass'n of Am.*, 844 S.W.2d 666, 669 (Tex. 1992).[4] And Texas courts have suggested that additional duties could potentially arise, if at all, only under specialized circumstances not alleged in the Complaint. *See, e.g.*, *Webb v. UnumProvident Corp.*, 507 F. Supp. 2d 668, 683 (W.D. Tex. 2005) (citing *Kitching v. Zamora*, 695 S.W.2d 553, 554 (Tex. 1985)); *Penn-Am. Ins. Co. v. Zertuche*, 770 F. Supp. 2d 832, 844 (W.D. Tex. 2011).[5] Moreover, Texas law is clear that there is no fiduciary relationship between insurance agents (or insurers) and their customers. *See, e.g.*, *Lexington Ins. Co. v. N. Am. Interpipe, Inc.*, No. CIV.A. H-08-3589, 2009 WL 1750523, at *2–3 (S.D. Tex. June 19, 2009); *Aspen Specialty Ins. Co. v. Muniz Eng'g, Inc.*, 514 F. Supp. 2d 972, 983 (S.D. Tex. 2007).

Plaintiffs assail FGI's argument as backed by "zero supporting authority." But the truth is that Plaintiffs cannot cite any authority whatsoever for the proposition that Section 544.052—or any other of Texas' many insurance statutes and regulations—overrides the common law by

---

[3] The Complaint does not allege any misrepresentation by FGI, Farmers, or any Farmers agent.

[4] *See also Bryce v. Unitrin Preferred Ins. Co.*, No. 03-08-00670-CV, 2010 WL 1253579, at *5 (Tex. App.—Austin Apr. 1, 2010, no pet.) (emphasizing that *May* does not create a duty "to monitor an insured's policy in order to ensure that the requested coverage is adequate.").

[5] For example, there is generally no duty to inform customers of coverage limitations, but Texas courts have noted that such a duty might arise in a relationship where an agent *specifically undertakes* to evaluate a customer's needs and advise on how best to meet them. *See Moore v. Whitney-Vaky Ins. Agency*, 966 S.W.2d 690, 692 (Tex. App.—San Antonio 1998, no pet.).

imposing a duty to inform policyholders of potential alternatives, including ones that may be cheaper under their particular circumstances.[6]  This is unsurprising since imposing such a duty to disclose would lead to untenable results.  For example, under Plaintiffs' reading, if a customer asked an insurance agent for an auto policy and the agent knew that Geico offered the lowest rate but instead sold a Progressive policy, the agent would be liable for unfair discrimination under the statute.  That is not, and should not be, the law.  It defies logic to suggest that the legislature intended for an anti-discrimination statute facially aimed at requiring a sound actuarial basis for differential treatment of persons of the same class and hazard to have such a boundless reach.[7]

Unsurprisingly, courts outside of Texas that have considered the issue agree that absent special circumstances there is no duty to inform customers of potentially cheaper alternatives.[8]  And most critically, the sole court to squarely address whether an unfair discrimination statute similar to Section 544.052 imposes such a duty **concluded it did not**.  *See Pitts v. Jackson Nat. Life Ins. Co.*, 574 S.E.2d 502 (S.C. Ct. App. 2002).  In *Pitts*, the plaintiff bought his daughter a non-preferred life insurance policy on the erroneous belief that she did not qualify for a preferred

---

[6] It is important to note that there are other Code provisions that explicitly mandate disclosures. *See, e.g.*, Tex. Ins. Code § 559.053 (requiring disclosures relating to the use of credit scoring).

[7] Plaintiffs make much of the fact that FGI's Motion does not argue the sound actuarial basis defense under Section 544.053. Opp. at 7.  And yet, as explained below, Plaintiffs nevertheless attempt to avoid application of the filed rate doctrine by insisting that their claims are "non-technical" and have nothing to do with the actuarial soundness of the filed rates for FA2 or FSPA.  FGI has not raised an actuarial soundness defense at this stage simply because it entails highly complex and factually intensive issues not suitable for resolution at the pleadings stage.

[8] *See, e.g.*, *Green v. Guidry*, No. CIV.A. 11-2466, 2012 WL 5507286, at *5 (E.D. La. Nov. 14, 2012) (no duty to inform customer of eligibility for a preferred policy or ability to obtain flood insurance at a better price); *Levine v. Blue Shield of California*, 189 Cal. App. 4th 1117, 1129 (2010) (rejecting claim that a health plan had a duty to disclose to customers that their family's premiums would be lower if they designated a different primary insured); *see also Frye v. Am. Gen. Fin., Inc.*, 307 F. Supp. 2d 836, 843 (S.D. Miss. 2004) (emphasizing an insurer has no duty to disclose material information to an insured absent a special fiduciary relationship); *Sullivan Co. v. New Swirl, Inc.*, 437 S.E.2d 30, 31 (S.C. 1993) ("[N]o obligation exists on the part of an agent or broker to secure insurance at the most favorable prices—absent a promise to do so.").

3

one that was cheaper. *Id.* at 505–06.  He asserted various statutory and common law claims on behalf of himself and a putative class, including under South Carolina's equivalent to Section 544.052.  *Id.*  He specifically alleged that the statute imposed a duty on the part of the insurer to disclose that the daughter qualified for the cheaper policy.  *Id*. at 513   The South Carolina Court of Appeals rejected that argument outright, reasoning that "the statute, a legislative prohibition against insurance discrimination, cannot be read as creating an implied duty *to inform the applicant of **all available policies***," and emphasizing that "all individuals were treated the same and ***received the policy they applied for*** if they qualified."  *Id.* at 513–14 (emphasis added).

This Court should reach the same conclusion about Section 544.052.  Reading the statute to create a duty to disclose alternative coverage or policy options would upend bedrock Texas law that agents and insurers are not fiduciaries of their customers.  And, as detailed in the Motion and below, that extraordinarily broad reading is also contrary to the plain language of the statute.

2.      *Plaintiffs' Statutory Construction Arguments are Unavailing*

Faced with the fact that no Texas court has held that a policyholder can assert an unfair discrimination claim by comparing his rates to those charged for a **different** policy, Plaintiffs offer three primary arguments for their expansive reading of Section 544.052.  None has merit.[9]

First, Plaintiffs accuse FGI of re-writing the statute, including by conflating "policy" with "policy form."  Opp.. at 9–13.  But that distinction is without difference.  What matters is that Section 544.052 concerns whether differential treatment in terms of rates, benefits payable, or terms for persons presenting similar risks of loss (i.e., persons of "the same class and essentially the same hazard") is actuarially justified.  *See* Tex. Ins. Code § 544.053(a).  And that inquiry

---

[9] Plaintiffs incorrectly argue that Section 544.052 must be construed liberally.  *See* Opp. at 15 (citing Tex. Ins. Code § 541.008).  Not so: the cited provision applies **only** to Chapter 541.  Chapter 544, like many others in the Code, does **not** contain a liberal construction provision.

4

simply makes no sense in the context of persons who do not share "a policy or contract of insurance"—which is exactly why that term is used in all three examples in the statute. Plaintiffs' argument to the contrary elevates form over substance to an absurd degree; persons obviously cannot literally share "the same policy" in the sense that they cannot be insured pursuant to a single set of physical papers. *See* Opp. at 11. But that does not change the fact that one cannot read the words of the statute in context and conclude that it contemplates rate or benefit comparisons across different policies.[10]

Second, Plaintiffs insist Section 544.052 bars discrimination broadly and that the three types of discrimination identified in the statute are merely illustrative. That is not disputed, and FGI's argument in no way rests on a contrary view. Rather, it rests on the fact that all three examples illustrate a basic point about the statute's scope: that it is not designed for cross-policy comparisons. That every example employs the phrase "a policy or contract of insurance" also comports with the statute's primary term of limitation, which is that it bars discrimination only between persons "of the same class and of essentially the same hazard." Persons with different TDI-approved auto policies that have different approved rates stand outside this limitation, which is why comparing different policies is not proper under the statute. Plaintiffs tacitly admit this by repeatedly insisting that the FA2 and FSPA policies are exactly the same.[11]

Third, Plaintiffs suggest that FGI's reading of Section 544.052 would facilitate "insidious discrimination" by permitting insurers to isolate certain groups into "disfavored policy regimes." This argument ignores the litany of Texas statutes and regulations barring such discrimination,

---

[10] For the same reason, Plaintiffs' argument that cross-policy comparisons are permitted because the singular phrase "a policy or contract" must be read to include the plural (i.e., "policies or contracts") pursuant to the Code Construction Act is equally meritless.

[11] *See* Opp. at 1, 2 (arguing the policies provide "the same coverages"); *id.* at 7 (arguing they "contain[] the exact same coverages"); *id.* at 8, 9 (characterizing the coverages as "identical").

5

and further illustrates that Plaintiffs' claims rest on the flawed premise that Section 544.052 must be read so broadly as to provide a remedy for every potential wrong in the insurance business.[12]

### B. The Filed Rate Doctrine Bars Plaintiffs' Lawsuit

#### 1. *The Doctrine Applies Here Even Though FGI is Not an Insurer*

Plaintiffs' claim that the filed rate doctrine does not apply because FGI is not a regulated insurer is wrong. Plaintiffs allege that FGI—not their insurer—is the one ultimately responsible for the supposedly unlawful rates they paid; but when confronted with the filed rate doctrine, claim FGI somehow cannot benefit from the doctrine. In other words, FGI has the liability but not the defense. Plaintiffs cannot have it both ways.

Plaintiffs also misread their primary case, *Fogel v. Farmers Grp., Inc.*, 160 Cal. App. 4th 1403 (2008). The plaintiff in *Fogel* sued FGI for breach of fiduciary duty and violation of California's unfair competition law, claiming FGI collected unauthorized excessive attorney-in-fact management fees from subscribers. *Id.* at 1412, 1416. The court held the suit was not barred by a California statute (Cal. Ins. Code § 1860.1) that is somewhat similar to the filed rate doctrine because FGI collected its management fee from the approved rate premium payments by policyholders pursuant to management agreements, and while the commissioner regulated the rates charged, he did not regulate the management agreements or the amount of management fees paid out of the approved premium rates. *Id.* at 1416-17. Thus, the statute was inapplicable.[13]

---

[12] *See, e.g.*, Tex. Ins. Code § 544.002 (barring discrimination on the basis of race or religion); *id.* § 560.002(c) (specifically barring discrimination based on race). And as Plaintiffs correctly anticipate, TDI would never approve such practices. *See* Opp. at 14 n.4.

[13] The *King* case upon which Plaintiffs rely hinged on the same California statute and is similarly inapplicable for this reason. *See King v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 934 n.5 (N.D. Cal. 2015); *id.* at 935 (noting that the immunity offered by the statute is construed narrowly).

Moreover, courts across the country are clear that the filed rate doctrine is not confined to claims against regulated entities. As noted in the Motion, the Fifth Circuit takes an expansive view of the doctrine: filed rates are "unassailable" in judicial proceedings brought by ratepayers. *Tex. Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503, 508 (5th Cir. 2005). What matters for purposes of the doctrine is whether a suit attacks the validity or amount of authorized rates, *not* whether the defendant is the regulated entity.[14] *See, e.g.*, *Winn v. Alamo Title Ins. Co.*, No. A-09-CA-214-SS, 2009 WL 7099484, at *8 (W.D. Tex. May 13, 2009), *aff'd*, 372 Fed. Appx. 461 (5th Cir. 2010); *Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 263 (2d Cir. 2015) (claims against insurers and non-insurers barred where the claims "rest[ed] on the premise that the rates approved by regulators *were too high*") (emphasis added); *Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 433, 441 (S.D. Tex. 2016) (suit *against nonprofit AARP* and UnitedHealth claiming they schemed to create a health insurance plan that charged an improper monthly fee to plan members *and failed to properly disclose the fee* dismissed because these claims were "pled to attack the legality *vel non* of the rates charged"). The filed rate doctrine is not limited to cases brought against regulated insurers and entities, and Plaintiffs' request that the Court create such a limitation should be denied. *See, e.g.*, *Decambaliza v. QBE Holdings, Inc.*, No. 13-CV-286-BBC, 2013 WL 5777294, at *8 (W.D. Wis. Oct. 25, 2013) ("Although the [Commissioner of Insurance] does not regulate *mortgage lenders*, it does regulate the premium rate ultimately charged to plaintiff. . . [P]laintiff cannot avoid the fact that she is asking this court to determine what rate the insurance company defendants should have charged instead of the rates they did charge.") (emphasis added); *Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 419 (S.D.N.Y. 2009) (applying the doctrine where the defendants did not file the challenged rates but the plaintiff was

---

[14] These cases refute Plaintiffs' argument that the filed rate doctrine is limited to cases attacking the *reasonableness* of rates. *See* Opp. at 19, 20.

7

"'seeking relief for an injury allegedly caused by the payment of a rate on file with a regulatory commission,' albeit indirectly") (citations omitted), *aff'd*, 379 Fed. Appx. 30 (2d Cir. 2010).

### 2. *Plaintiffs' Nondisclosure Allegations Have No Effect on the Filed Rate Doctrine*

Plaintiffs assert that the filed rate doctrine does not apply because this case is about concealing rates, not challenging them. This argument was previously made and rejected:

> Plaintiffs assert that their claims do not engage the filed rate doctrine because they attack AT&T's *non-disclosure of its residential long-distance rates* rather than the *reasonableness* of those rates. In essence, plaintiffs challenge the application of AT&T's rates to them in light of AT&T's billing and advertising practices, as opposed to the reasonableness of the rates *absent any allegedly misleading conduct*. But Supreme Court case law illustrates that the filed rate doctrine applies as stringently to claims challenging *the individual application of the filed rate*, as it does to claims challenging the general integrity of that rate.

*Marcus v. AT&T Corp.*, 938 F. Supp. 1158, 1170 (S.D.N.Y. 1996) (emphasis added), *aff'd*, 138 F.3d 46 (2d Cir. 1998). Simply stated, "[a]ny remedy that requires a refund of a portion of the filed rate . . . is barred." *Id.*

Even allegations that a company misled a regulator or others have no bearing on the doctrine's application. *See, e.g.*, *Sw. Bell Tel. Co. v. Metro-Link Telecom, Inc.*, 919 S.W.2d 687, 693 n.1 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ("Metro-Link complains about the fact that [defendant] either intentionally or negligently misquoted rates and services under [its] tariffs . . . . These facts do not preclude application of the filed rate doctrine."). And "it is well established that there is no fraud exception to the filed rate doctrine." *McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 241 n.11 (3d Cir. 2012) (quotation marks and citation omitted).

### 3. *Plaintiffs' Lawsuit Plainly Attacks the Insurance Rates they Paid*

Try as they might to frame this case as having nothing to do with the insurance rates they paid, Plaintiffs' Complaint proves otherwise. The Opposition emphasizes allegations that FGI failed to disclose the FSPA rates, but ignores the supposed impact of such conduct and the thrust

8

of their claims: that some Farmers Texas policyholders allegedly paid higher rates than others for allegedly identical coverage. Indeed, Plaintiffs repeatedly complain of the "higher" rates they and others supposedly paid after the rollout of FSPA and insist that FSPA and FA2 policies offer the "same exact coverages." *See* footnote 11, *supra*. By claiming that FSPA and FA2 offer the same coverages and that they were overcharged because they paid the FA2 rate, Plaintiffs can only be ***challenging TDI's decision*** to allow two different rates for the two different policies.[15] And as Plaintiffs acknowledge, the filed rate doctrine bars claims that a filed rate is "***too high***, ***unfair*** or unlawful." Opp. at 5 (quoting *Tex. Commercial*, 413 F.3d at 507) (emphasis added).

Plaintiffs' request for damages confirms their case is about rates: they seek "all premium amounts that Plaintiffs and Class Members paid for their FA2 policies, renewed on or after January 4, 2016, over and above the amounts they would have paid for identical or materially identical coverage had their policies been renewed on the same date under FSPA." Compl., ¶ 111. In other words, they want to pay the "cheaper" FSPA rates for FA2 policies and coverages. This is exactly what the filed rate doctrine precludes. *See, e.g.*, *Hill v. BellSouth Telecomms., Inc.*, 364 F.3d 1308, 1317 (11th Cir. 2004) (even if a claim does not directly attack the filed rate, a damages award that would effectively result in a judicial determination of the ***reasonableness of the filed rate*** is barred under the filed rate doctrine); *Winn*, 2009 WL 7099484, at *9 (following

---

[15] The cases Plaintiffs cite in claiming otherwise are distinguishable. In *Drew v. MCI Worldcom Mgmt. Co., Inc.*, No. 3:99-CV-1355-D, 1999 WL 1087470, at *1 (N.D. Tex. Dec. 1, 1999), the court found the filed rate doctrine did not apply because the plaintiff was attempting to *enforce* the filed tariff, not challenge it. *Cannon v. Wells Fargo Bank, N.A.*, 917 F. Supp. 2d 1025 (N.D. Cal. 2013) and *Gallo v. PHH Mortg. Corp.*, 916 F. Supp. 2d 537 (D.N.J. 2012) involved force-placed insurance and alleged kickbacks from insurers to loan servicers. The courts ruled that the doctrine did not apply because the alleged kickback scheme was being challenged, not the insurance rates, and such "side agreements" were not regulated in any way. *See Gallo*, 916 F. Supp. 2d at 545-46; *Cannon*, 917 F. Supp. 2d at 1038. The plaintiff in *Gallo* also admitted he was not seeking a premium refund (916 F. Supp. 2d at 545 n.7), unlike Plaintiffs here.

*Hill*); *Medco Energi US v. Sea Robin Pipeline Co., L.L.C*., 895 F. Supp. 2d 794, 813, 816 (W.D. La. 2012) (barring tort claims that would "effectively refund a portion of the filed rate").

Ultimately, the FA2 rates Plaintiffs challenge were filed with TDI; TDI was charged with analyzing the forms and coverages for both the FA2 and FSPA policies and ensuring the rates were adequate and not unfairly discriminatory (*see* Motion at 4–6); and TDI allowed the two separate policies and rates. Plaintiffs cannot by judicial decree access the FSPA rates during the time they owned FA2 policies. To do so would inject the Court into Texas' regulatory framework to reach a result different from that reached by TDI, thereby violating the filed rate doctrine. *See Korte v. Allstate Ins. Co.*, 48 F. Supp. 2d 647, 652 (E.D. Tex. 1999).

4. *Section 544.054 Does Not Preclude Application of the Filed Rate Doctrine*

Plaintiffs also argue that the existence of Section 544.054 means the filed rate doctrine is inapplicable. But Section 544.054 does not purport to vest exclusive jurisdiction in the courts. Nor can it be read to oust TDI, given that Texas' statutory scheme charges the Commissioner with protecting and ensuring the fair treatment of consumers, including by ensuring rates are not unfairly discriminatory. *See* Motion at 4–6. Moreover, applying the filed rate doctrine here does not eviscerate the private cause of action under Chapter 544, as Plaintiffs argue. For example, in *Cortez v. Progressive Cnty. Mut. Ins. Co.*, Progressive policyholders brought an unfair discrimination claim challenging the insurer's practice of allowing agents to add different, varying amounts for agent commissions on top of the approved rate, which resulted in similarly situated policyholders being charged different premiums based on who sold them their policy. 61 S.W.3d 68, 70, 75 (Tex. App.—Austin 2001, pet. granted, judgm't vacated pursuant to settlement). *Cortez* illustrates that Section 544.052 encompasses a range of possible practices that do not infringe on the ratemaking process and thus do not run afoul of the filed rate doctrine.

10

**CONCLUSION**

For the reasons set forth above and in the Motion, Plaintiffs' claims fail as a matter of law and are barred by the filed rate doctrine, and this case should be dismissed with prejudice.

Dated:  May 31, 2017             Respectfully submitted,

*/s/ Scott Incerto*

NORTON ROSE FULBRIGHT US LLP

    M. Scott Incerto
    Texas Bar No. 10388950
    scott.incerto@nortonrosefulbright.com
    Adam Schramek
    Texas bar No. 24033045
    adam.schramek@nortonrosefulbright.com
    James Hughes
    Texas Bar No. 24074453
    james.hughes@nortonrosefulbright.com
    William Patrick Courtney
    Texas Bar No. 24087351
    patrick.courtney@nortonrosefulbright.com

98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone:   (512) 474-5201
Facsimile:    (512) 536-4598

    Peter H. Mason (admitted *pro hac*)
    California Bar No. 71839
    peter.mason@nortonrosefulbright.com
    Cristina Longoria
    Texas Bar No. 24070165
    cristina.longoria@nortonrosefulbright.com

555 South Flower Street, Forty-First Floor
Los Angeles, California 90071
Telephone:   (213) 892-9200
Facsimile:    (213 892-9494

ATTORNEYS FOR DEFENDANT
FARMERS GROUP, INC.

11

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2017, a true and correct copy of the foregoing document was served on all counsel of record via the CM/ECF system.

> */s/ Scott Incerto*
> Scott Incerto