IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CHARLES GRIGSON and ROBERT VALE, Individually and on behalf of all putative class members | § § § § | |
| v. | § § | 1:17-CV-88-LY |
| FARMERS GROUP, INC. | § § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Dismiss (Dkt. No. 17), Defendant's Opposed Motion to Stay (Dkt. No. 18), Plaintiffs' Omnibus Response (Dkt. No. 29), Defendant's Replies (Dkt. Nos. 31, 32), Defendant's Opposed Motion to Stay Discovery (Dkt. No. 21), Plaintiffs' Response (Dkt. No. 24), and Defendant's Reply (Dkt. No. 27). The District Court referred the above motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules. The Court held a hearing on the motions on July 14, 2017.

## I. GENERAL BACKGROUND

Plaintiffs Charles Grigson and Robert Vale brought this potential class action against Farmers Group, Inc. (FGI) alleging unfair discrimination in violation of TEX. INS. CODE ANN. § 544.052. FGI is not itself an insurance company, but rather provides services to, among others, Farmers Texas. Farmers Texas is the company through which Plaintiffs have owned automobile insurance policies for many years.

Plaintiffs both owned auto insurance under a policy known as Farmers Auto 2.0 (FA2). In 2016, Farmers Texas rolled out a new insurance policy known as the Farmers Smart Plan Auto policy (FSPA). Both the FA2 and the FSPA policies were approved by the Texas Department of Insurance (TDI). The Plaintiffs contend that FGI was slowly phasing out the FA2 policy. They allege that an internal policy stated that all new qualifying Farmers customers were to be offered an FSPA policy, while existing customers renewing their policies had to remain with their FA2 policy, and were not to be given the opportunity to switch to an FSPA policy. Plaintiffs allege the directive applied even when an existing customer asked about the FSPA policy, though Plaintiffs note that a small number of renewing customers were allowed to switch to FSPA policies because of the extent of their complaints.

Plaintiffs allege that in most cases the FSPA policy provides the same coverage as the FA2 policy, but for a lower premium. To further reinforce this point, Plaintiffs allege that TDI initially objected to the FSPA policy, questioning what, if any, differences existed between it and the FA2 policy. FGI also allegedly conducted an analysis comparing rates for individuals under the two policies, and concluded that individuals insured under the FSPA policy generally had lower premiums than those under the FA2 policy. Plaintiffs argue that FGI's actions amount to unfair discrimination between existing customers and new customers, in violation of TEX. INS. CODE ANN. § 544.052. Plaintiffs seek damages on behalf of a potential class, for the difference between rates under the FA2 policy and the FSPA policy, among other forms of relief.[1]

---

[1] Plaintiffs eventually were allowed to switch to FSPA policies, but only after significant effort to discover their existence. They seek damages for the time they contend they should have been on the lower-priced policy. However, they also bring this action on behalf of all other customers that were not given the opportunity to switch policies.

FGI moves to dismiss the case, or in the alternative to stay the case pending proceedings at TDI. FGI additionally has also moved to stay discovery pending the results of these motions.

## II. ANALYSIS

FGI asserts two main bases for its motion to dismiss: (1) that the statute relied on by the Plaintiffs does not actually cover the alleged discrimination in this case; and (2) that Plaintiffs' claim is barred by the filed rate doctrine. In the alternative, FGI seeks to stay the case, arguing that under the primary jurisdiction doctrine TDI should have the first opportunity to adjudicate the claim. Finally, FGI requests the Court to stay discovery pending resolution of each of these motions.

**A.  The Language of the Statute**

First, FGI contends that Plaintiffs' claim should be dismissed because the discrimination alleged is not prohibited by the statute. The relevant statutory language provides:

> A person may not in any manner engage in unfair discrimination or permit unfair discrimination between individuals of the same class and essentially the same hazard, including unfair discrimination in:
>
> (1)   the amount of premium, policy fees, or rates charged for a policy or contract of insurance;
>
> (2)   the benefits payable under a policy or contract of insurance; or
>
> (3)   any of the terms or conditions of a policy or contract of insurance.

TEX. INS. CODE ANN. § 544.052. FGI contends that Plaintiffs cannot state a claim under the statute "because the statute applies only to discrimination against individuals in the amount of premiums, policy fees, or rates charged for the same policy," and Plaintiffs' claim is that FGI discriminated by charging different rates for two *different* policies. Dkt. No. 17 at 8 (emphasis in original). Plaintiffs

3

disagree, arguing that nothing in the statute limits its application solely to unfair discrimination between individuals with the same policy.

Under the general principles of statutory construction in Texas, courts turn first to the statutory language itself. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Courts should "presume that every word in a statute was chosen by the Legislature for a purpose." *Cooke v. City of Alice*, 333 S.W.3d 318, 322 (Tex. App.—San Antonio 2010, no pet.). When "statutory language is clear and unambiguous, [courts] interpret its words according to their plain and common meaning unless that interpretation would lead to absurd results." *Id.* Furthermore, if "the Legislature uses a particular term in one section of a statute and excludes it in another, we must give the term meaning where used and must not imply it where it was excluded." *Id.* (citing *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995)). A court "may also consider, among other things, the circumstances under which a statute was enacted, former statutory provisions, including laws on the same or similar subjects, and the consequences of a particular construction." *Kroger v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000) (citing TEX. GOV'T CODE § 311.023).

FGI bases its argument on the statute's repeated use of the phrase "a policy or contract of insurance." Specifically, § 544.052 provides a private cause of action to challenge "discrimination between individuals of the same class and essentially the same hazard . . . in . . . the amount of premium, policy fees, or rates charged for *a policy or contract of insurance*." TEX. INS. CODE § 544.052 (emphasis added). The meaning of "a" here could be specific—a "single" or "the same" policy, or it could be generic—"any" policy. FGI contends that the proper reading of the statute is that "*a* policy or contract of insurance," means "*the same*" policy or contract. But this is not the only

4

way to read the language. Interpreting "a" to mean "the same" is the narrowest interpretation possible, and the statute's other language does not suggest that is the correct reading. Instead, the statute by its terms is focused on "discrimination between individuals of the same class and essentially the same hazard." *Id.* And it prohibits an insurer from discriminating "in any manner," both of which suggest that a narrow reading of "a" is not consistent with the statute as a whole.

FGI also points to the absence of case law to support its argument, noting that there are no reported cases where a discrimination claim has been based on two policies of insurance. While apparently true, this is far from dispositive of the issue, as there are also no reported cases where Texas courts have rejected such a claim as being outside the reach of the statute. Indeed, on this point FGI relies on *Cortez v. Progressive County Mut. Ins. Co.*, noting that, in the words of the plaintiff, his claim was based on individuals receiving differing rates for "the same coverage, same policy, same company." Dkt. No. 17 at 11. But when the *Cortez* court was describing the reach of the statute (by distinguishing it from the portion of the statute that prohibits racial, gender, and other protected class-based discrimination), it characterized its reach more broadly:

> Thus, while article 21.21-6 prohibits discrimination based on differential treatment of members of *different classes*, article 21.21-8 prohibits discrimination based on differential treatment between individual members *within the same class*.

*Cortez v. Progressive County Mut. Ins. Co.*, 61 S.W.3d 68, 73 (Tex. App.–Austin 2001, pet. granted, judgm't vacated pursuant to settlement) (emphasis in original). The *Cortez* court also noted the Fifth Circuit had held that "in order to prevail on a claim of insurance discrimination," under the nearly identical predecessor statute, "the [plaintiffs] had to show that other individuals of the same class and hazards as them were charged lesser premiums or were given greater benefits." *Hogue v. United Olympic Life Ins. Co.*, 39 F.3d 98, 100 (5th Cir.1994). It is difficult to see how an individual could

5

receive "greater benefits" than another if the two had identical policies with identical language. So, while the case law may be silent as to whether the precise claim made here falls within the reach of the relevant statute, what the cases *do* say, if anything, appears to support the Plaintiffs' interpretation.

FGI also makes what can best be called policy arguments to support its statutory construction. Dkt. No. 17 at 11-12. It argues that the statute cannot possibly be read to allow for claims of discrimination across policies because "insurance contracts and coverages are complex." *Id.* It claims that "coverage differences drive not only the rates charged, but actuarially sound reasons to discriminate between different classes of individuals." *Id.* Leaving aside that policy arguments such as these generally are irrelevant when construing a statute, FGI's argument is inapt. As discussed in detail already, Plaintiffs are not alleging that FGI has discriminated among "different classes of individuals," but instead claim that it has discriminated against a single class of individuals. As already noted, the statute prohibits discrimination in any manner between individuals of the same class and essentially the same hazard for the same coverage. Thus, so long as the two policies offer the same coverage, the fact that an insurer has created two or more policies does not preclude application of the statute.

Indeed, reading the statute as FGI does would allow easy subversion of the purposes of the statute. If the statute only prohibited discrimination between two persons issued the same policy, insurers could simply create two essentially identical policies with two different names, charge two different rates for them, and never violate the anti-discrimination statute. When questioned as to whether the statute permitted this, FGI's counsel said that it did:

6

| | |
|---|---|
| THE COURT: | So is Farmers saying there's a different risk profile between one who's been covered by Farmers before and one who hasn't? |
| MR. INCERTO: | Well, no. We're saying that there can be between different policies. And so, this particular statute only is looking at someone in the same class to a particular policy. It's not looking at— it's not saying, let me take two 35-year-old men with exact same driving record and let's—and then, just look at them in a vacuum. No. They're looking—this statute is looking at them in the context of the policy of which they are a member. And are they being treated fairly compared to all of the members of that policy? |
| THE COURT: | So then, the statute only applies if the insurance company has determined that both people are going to be given the same policy. |
| MR. INCERTO: | Yes. |
| THE COURT: | Only then does that statute kick in. |
| MR. INCERTO: | Yes. |

Tr. at 15–16. This interpretation would permit an insurer to create multiple, essentially identical policies, and then discriminate among individuals "of the same class and of essentially the same hazard" with regard to who gets which policy. This result suggests that FGI's very narrow interpretation of the statute is not correct.

FGI lastly argues that the Plaintiffs' statements that the two policies are "identical or substantively identical" are conclusory and insufficient to survive a motion to dismiss. In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009). Here, Plaintiffs have sufficiently alleged that the two policies offer the same coverage, but that the lower-priced rate is solely offered to new customers. If true, this is sufficient

7

to support Plaintiffs' claim for relief. This is enough to state a plausible claim. FGI's argument therefore fails.

**B.     Filed Rate Doctrine**

FGI also asserts that Plaintiffs' claim is barred by the filed rate doctrine. The filed rate doctrine originated from the filed tariff doctrine set forth in 47 U.S.C. § 203(a), which "forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority." *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577 (1981). Courts found that this doctrine has two "companion principles":

> (1) preventing carriers from engaging in price discrimination as between ratepayers (the "nondiscrimination strand") and (2) preserving the exclusive role of federal agencies in approving rates for . . . services that are 'reasonable' by keeping courts out of the rate-making process (the "nonjusticiability strand"), a function that the federal regulatory agencies are more competent to perform.

*Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998). Since the inception of this doctrine, it has been expanded to apply not only to federal agencies, but also to state administrative agencies as well. *See Winn v. Alamo Title Ins. Co.*, 372 F. App'x 461, 461–63 (5th Cir. 2010). Courts in the Fifth Circuit frequently apply this doctrine in cases involving insurance rates. *Winn v. Alamo Title Ins. Co.*, 2009 WL 7099484 at *5 (W.D. Tex. May 13, 2009); *Korte v. Allstate Ins. Co.*, 48 F. Supp. 2d 647, 651 (E.D. Tex. 1999).

As part of the nonjusticiability strand, a plaintiff is barred from attacking a rate that has been approved by the regulatory body. *Marcus*, 138 F.3d at 59. In other words, the filed rate doctrine "bar[s] judicial recourse against a regulated entity based upon allegations that the entity's 'filed rate' is too high, unfair or unlawful." *Winn*, 2009 WL 7099484 at *4 (quoting *Tex. Comm'l Energy*, 413 F.3d at 507). Thus, "any 'filed rate'—that is, one approved by the governing regulatory agency—is

8

per se reasonable and unassailable in judicial proceedings brought by ratepayer." *Tex. Comm'l Energy v. TXU Energy, Inc.*, 413 F.3d 503, 508 (5th Cir. 2005) (quoting *Wegoland, Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (3d Cir. 1994)).

The application of this doctrine does not "depend on the nature of the cause of action the plaintiff seeks to bring." *Marcus*, 138 F.3d at 58 (citing cases alleging antitrust, breach of contract, common law fraud, negligent misrepresentation, and RICO claims); *see also Winn*, 2009 WL 7099484 at *4 (same). Nor does it depend on the alleged legality of the defendant's actions. *See Winn*, 2009 WL 7099484 at *4 (quoting *Marcus*, 138 F.3d at 59). Instead, the doctrine looks to whether the plaintiff's claims "implicate the reasonableness of the filed rates" or would require "retroactive alteration of the filed rate." *Korte*, 48 F. Supp. 2d at 652. If so, the claim is barred by the doctrine. The filed rate doctrine "is applied strictly . . . even in the face of inequities." *Marcus*, 138 F.3d at 59.

Plaintiffs contend that the doctrine does not bar their claims. They argue that because FGI is not a regulated entity and did not file the rates with TDI, the filed rate doctrine does not apply. They rely on *Fogel v. Farmers Group, Inc.*, a California state court case, to support this argument. The language in *Fogel* Plaintiff's rely upon, however, did not address the filed rate doctrine at all, but instead was considering whether the company was entitled to immunity under the California statute. *Fogel v. Farmer's Group, Inc.*, 160 Cal. App. 4th 1403, 1417 (2008). In fact, the court found that the filed rate doctrine did not apply because California's "prior approval" system was not analogous to the federal tariff system. *Id.* at 1418. A more analogous case is *Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 419 (S.D.N.Y. 2009). In that case, the plaintiffs made a nearly identical argument to that being asserted by Plaintiffs here, and the court rejected it, concluding that "the rate

9

at issue must be filed by *a participant* in the regulated industry" but that it is immaterial whether the defendant was the one that filed that rate. *Id.* (emphasis added). The Court agrees. The fact that FGI did not file the rates itself does not prevent the application of the doctrine.

Nevertheless, the Court agrees that the filed rate doctrine is not implicated here. At the hearing, FGI relied heavily on *Marcus* to argue that the filed rate doctrine applies to Plaintiffs' claim. In *Marcus*, the plaintiffs claimed that AT&T concealed its method of calculating rates for long distance phone calls, and sought damages for the difference between AT&T's approved rate and the best alternative rate. *Marcus*, 138 F.3d at 52, 62. The court dismissed the claim for damages, finding that it implicated both the nondiscrimination and nonjusticiability strands of the filed rate doctrine. *Id.* at 62. The court found that the damages sought would have essentially "excuse[d] them from paying th[e] tariff," directly implicating the nonjusticiability strand as such a result would undermine the agency's authority to approve a rate. *Id.* at 61. Moreover, the court pointed out that a rate approved by the agency was "by definition reasonable" and unassailable in court. *Id.* The court found that plaintiffs' de facto attack on the reasonableness of the rate also invoked the filed rate doctrine.

FGI analogizes to *Marcus*, and asserts that plaintiffs cannot rely on an argument of concealment to overcome the filed rate doctrine. But as the Court noted at the hearing, FGI mischaracterizes the Plaintiffs' claim. In *Marcus*, the plaintiffs argued that an element of the rate had been concealed, and that this invalidated that portion of the rate. Here, Plaintiffs do not challenge any element of the filed rate. They do not argue that any element of the rate is unfairly discriminatory; nor do they argue that the rate itself is unfairly discriminatory. Rather, they argue that they should have been given access to a different policy and thus a different rate, and that FGI

discriminated against them in denying them access to that rate. In *Marcus* the court balked because the plaintiffs there challenged a particular element of AT&T's long distance charge as having been fraudulently concealed, because fashioning relief for that claim (if valid) required essentially rewriting a rate that had been approved by the agency. Here, the Court would merely be determining whether FGI unfairly discriminated against the Plaintiffs in not offering the second—allegedly lower—filed rate. Nothing in the relief the Court would award if it found that claim meritorious would require any review of TDI's ratemaking or review of either policy's rate.

A much more analogous case is *Lentini v. Fidelity Nat. Title Ins. Co. of New York*, 479 F. Supp. 2d 292 (D. Conn. 2007).[2] There, the plaintiff argued that the rate manual filed with the state insurance department provided two rates: a regular rate and a reduced rate. *Id.* at 296. The plaintiff argued that he should have been given access to the reduced rate, as opposed to the regular rate. *Id.* at 297. The court found that these claims did "not implicate the nonjusticiability strand of the filed rate doctrine because agency decision-making regarding the applicable rates [was] not at issue." *Id.* at 300. There, the "plaintiff [was] not attempting to pay a lower rate than the filed rate; rather, [the plaintiff was] simply attempting to force the defendant to adhere to the approved rate." *Id.* at 301. As in *Lentini*, the plaintiffs here are not attempting to pay a rate different from the approved rate, but rather are asking to be permitted to subscribe to a different policy, and pay the rate that has already been approved by TDI for that policy. *See also Robinson v. Fountainhead Title Grp. Corp.*, 447 F. Supp. 2d 478, 488 (D. Md. 2006) ("The question is not whether Assurance's fee is reasonable, but

---

[2]The parties' advisories filed after the hearing addressed at some length whether *Cortez* included more than one filed rate or whether the challenged commissions were in addition to the filed rate. As noted by FGI, even if three separate rates were filed to incorporate the different commissions, the court in that case simply did not address the filed rate doctrine. .

whether Plaintiff should have instead paid the filed rate of Fountainhead."); *Kunzelmann v. Wells Fargo Bank, N.A.*, 2012 WL 2003337 at *3 (S.D. Fla. June 4, 2012). A decision in the Plaintiffs' favor would not invoke any rate decision made by TDI, but instead would address FGI's policies as to whom it offers the allegedly lower cost policy. And no one has argued that TDI has made any determinations regarding the eligibility criteria for either the FA2 or FSPA policies.

Further, Plaintiffs damages model does not automatically implicate the doctrine. At the hearing, counsel for FGI argued:

> But when you're going after, as the plaintiffs are, the rate itself, that's when the filed rate doctrine comes into play. And I do find it interesting that the plaintiffs are sort of running away from their own damage allegation... They have pled that they want everybody at the FA2 rate adjusted down to the FSPA rate. . . . [T]hat implicates the rates directly, and that's why filed rate does apply.

Tr. at 65–66. Many courts have applied the filed rate doctrine when they find that a plaintiff is "attacking" a rate approved by an agency. *See Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 441 (S.D. Tex. 2016) (finding that because plaintiffs sought "to recover for substantially illegal overcharges," the claim was barred by the filed rate doctrine); *Winn*, 2009 WL 7099484, at *9 ("These allegations clearly rest on the amount paid by Plaintiffs for title insurance, effectively implicating the validity of the rates set for title insurance in Texas."). However, seeking a refund of rates paid does not automatically implicate the doctrine. Again, the question is whether this determination would result in judicial rate-setting or undermine agency rate-making authority. *Marcus*, 138 F.3d at 61. Plaintiffs claim for damages would not implicate either. First, unlike in *Winn* or *Peacock*, the Court is not required to find that a filed rate was unreasonable, which would then require a determination of how much each plaintiff should have paid were the circumstances different. *See Winn*, 2009 WL 7099484, at *9 (noting that recovery would encompass "the

12

overcharges they incurred" as a result of the illegal conduct); *Peacock*, 181 F. Supp. 3d at 441 (same). Here, if the Court found that FGI unfairly discriminated against Plaintiffs, it would then only have to determine the difference between two filed rates to award damages. Doing so would not involve any rate-setting by the Court, nor would it undermine TDI's authority to approve those rates. This merely involves a choice between two filed rates, much like the case in *Lentini*. 479 F. Supp. 2d at 301. As such, the filed rate doctrine does not bar Plaintiffs' claim.

## C.     Primary Jurisdiction

Finally, FGI contends that, even if Plaintiffs' claim is not barred by the filed rate doctrine, the suit should be stayed pursuant to the primary jurisdiction doctrine. The primary jurisdiction doctrine "allocate[s] power between courts and agencies when both have authority to make initial determinations in a dispute." *In re Sw. Bell Tel. Co., L.P.*, 226 S.W.3d 400, 403 (Tex. 2007). The doctrine provides that:

> courts should defer to appropriate administrative agencies when (1) the agency is staffed with experts trained in handling complex problems within the agency's purview, and (2) great benefit is derived from the agency's uniform interpretation of laws within its purview and the agency's rules and regulations when courts and juries might reach differing results under similar fact situations.

*Id.* In other words, the question is: "[W]hen will the Court be helped and assisted on technical, regulatory issues that is beyond its capacity to deal with in the first instance?" Tr. at 36. When the two factors are met, "the court should abate the lawsuit and suspend finally adjudicating the claim until the agency has an opportunity to act on the matter." *In re Sw Bell*, 226 S.W.3d at 403 (quoting *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 208 (Tex. 2002)).

FGI does not dispute that this Court has the power to adjudicate a matter under TEX. INS. CODE § 544.052. Rather, it argues that the Court should stay the case under the primary jurisdiction

13

doctrine as Plaintiffs' claim would require resolution of complex issues better suited for the experts at TDI. Specifically, FGI argues that determining (1) whether the two policies offer the same coverage, and (2) whether the differences in rates are actuarially sound, require the expertise of the agency. TDI clearly has authority to make this determination, and it is staffed with experts trained to handle such issues. TEX. INS. CODE § 2251.105(a) (providing a grievance procedure for any aggrieved party to challenge a rate filing). However, the Court disagrees that the question before it requires the certification to TDI. At this point, there is no "great benefit" derived by the agency addressing the questions first. This problem before the Court does not require interpretation of a complex administrative scheme, but instead is focused on whether FGI's rules on the two policies at issue discriminated against a class of insureds. Courts frequently grapple with such detailed fact issues and questions of law, and this case is no different. This is not to say that the Court may not determine at a later date that a question is better suited for adjudication by TDI. At this time, however, the motion to stay should be denied.

## III. RECOMMENDATION

The undersigned **RECOMMENDS** that the District Judge **DENY** Defendant's Motion to Dismiss (Dkt. No. 17) and Defendant's Opposed Motion to Stay (Dkt. No. 18). The undersigned **FURTHER RECOMMENDS** that the District Judge **DENY AS MOOT** Defendant's Motion to Temporarily Stay Discovery (Dkt. No. 21).

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53, 106 S. Ct. 466, 472–74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 18 day of October, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE