## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| CHARLES GRIGSON and ROBERT VALE, | § | |
| Individually and on behalf of all putative | § | |
| class members, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:17-cv-00088-LY |
| | § | |
| FARMERS GROUP, INC., | § | |
| a Nevada corporation, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE AUSTIN'S
REPORT AND RECOMMENDATIONS DENYING DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STAY**

## TABLE OF CONTENTS

I.      INTRODUCTION..................................................................................................... 1

II.     OBJECTIONS TO THE REPORT ......................................................................... 2

        A.      Standard of Review .................................................................................... 2

        B.      The Report Erroneously Concludes that the Filed Rate Doctrine Does
                Not Require Dismissal ............................................................................... 2

                1.      The Filed Rate Doctrine Bars Plaintiffs' Claims Because The
                        Claim—and the Requested Relief—Undermines TDI's Regulatory
                        Authority. ........................................................................................ 3

                2.      The Report's Characterization of the Filed Rate Doctrine is
                        Erroneous. ....................................................................................... 6

                3.      The Report Relies on Case Law Not Cited by the Parties that is
                        Plainly Distinguishable. .................................................................. 9

        C.      The Report Erroneously Denied FGI's Motion to Stay on Primary
                Jurisdiction Grounds With Only Conclusory Analysis................................. 11

                1.      The Report Overlooks the Great Benefit of Experience and
                        Uniformity TDI Can Supply .......................................................... 12

                2.      The Report Fails to Consider TDI's Expertise, and the Difficult
                        Task It Now Sets for this Court ..................................................... 13

        D.      The Report Erroneously Concludes that Plaintiffs' Complaint States
                an Actionable Discrimination Claim Under Section 544.052....................... 17

                1.      The Report Hinges on the Incorrect Finding that Plaintiffs
                        Plausibly Allege that FA2 and FSPA Policies are "The Same." ............. 17

                2.      The Report Errs in Concluding that an Alleged Failure to Offer or
                        Grant "Access" to an Alternative Policy is Actionable Under
                        Section 544.052. ............................................................................ 20

                3.      The Report Errs in Concluding that Alleged Inter-Policy
                        Discrimination is Actionable Under Section 544.052. ............................ 23

III.    CONCLUSION ........................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                       **Page(s)**

*Alpert v. Nationstar Mortg. LLC*,
    243 F. Supp. 3d 1176 (W.D. Wash. 2017)..............................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................17, 18, 19

*Aspen Specialty Ins. Co. v. Muniz Eng'g, Inc.*,
    514 F. Supp. 2d 972 (S.D. Tex. 2007) ................................................................................21

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    835 N.E.2d 801 (Ill. 2005).................................................................................................24

*Beacon Nat'l Ins. Co. v. Montemayor*,
    86 S.W.3d 260 (Tex. App.—Austin 2002, no pet.) ............................................................14

*Cox v. Bank of Am., N.A.*,
    No. CV H-16-2624, 2017 WL 1622043 (S.D. Tex. May 2, 2017)........................................18

*Desperado Motor Racing & Motorcycles, Inc. v. Robinson*,
    No. CIV.A. H-09-1574, 2010 WL 2757523 (S.D. Tex. July 13, 2010) .................................19

*Farmers Ins. Exch. v. Superior Court*,
    2 Cal. 4th 377 (1992) ........................................................................................................13

*Forte v. Wal-Mart Stores, Inc.*,
    No.02:07-cv-155, 2007 WL 2461831, (S.D. Tex. Aug. 26, 2007)........................................14

*Gen. Servs. Comm'n v. Little–Tex Insulation Co.*,
    39 S.W.3d 591 (Tex. 2001)................................................................................................23

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    954 F.2d 485 (8th Cir. 1992) ...............................................................................................4

*Hilco Elec. Co-op., Inc. v. Midlothian Butane Gas Co., Inc.*,
    111 S.W.3d 75 (Tex. 2003)................................................................................................23

*Jabary v. City of Allen*,
    547 F. App'x 600 (5th Cir. 2013) ......................................................................................18

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) .............................................................................................17

*Korte v. Allstate Ins. Co.*,
    48 F. Supp. 2d 647 (E.D. Tex. 1999)...................................................................................7

*Kunzelmann v. Wells Fargo Bank, N.A.*,
   No. 9:11–cv–81373–DMM, 2012 WL 2003337, (S.D. Fl. June 4, 2012) ..............................10

*Lentini v. Fidelity Nat'l Title Ins. Co.*,
   479 F. Supp. 2d 292 (D. Conn. 2007)...............................................................................9, 10

*Lexington Ins. Co. v. N. Am. Interpipe, Inc.*,
   No. CIV.A. H-08-3589, 2009 WL 1750523 (S.D. Tex. June 19, 2009)................................21

*Marcus v. AT&T Corp.*,
   138 F.3d 46 (2d Cir. 1998)...................................................................................3, 5, 6, 9

*Marcus v. AT&T Corp.*,
   938 F. Supp. 1158 (S.D.N.Y. 1996)......................................................................................6

*May v. United Servs. Ass'n of Am.*,
   844 S.W.2d 666 (Tex. 1992)................................................................................................21

*McCray v. Fid. Nat'l Title Ins. Co.*,
   682 F.3d 229 (3d Cir. 2012)............................................................................................3, 6

*Medco Energi US v. Sea Robin Pipeline Co., L.L.C.*,
   895 F. Supp. 2d 794 (W.D. La. 2012)...................................................................................6

*Peacock v. AARP, Inc.*,
   181 F. Supp. 3d 430 (S.D. Tex. 2016) ..................................................................................7

*Penn-Am. Ins. Co. v. Zertuche*,
   770 F. Supp. 2d 832 (W.D. Tex. 2011).................................................................................21

*Penny v. Sw. Bell Tel. Co.*,
   906 F.2d 183 (5th Cir. 1990) ............................................................................10, 12, 13, 14

*Pitts v. Jackson Nat'l Life Ins. Co.*,
   574 S.E.2d 502 (S.C. Ct. App. 2002)...................................................................................22

*Rios v. Randolph Brooks Fed. Credit Union*,
   No. 5:13-CV-946-DAE, 2014 WL 3897806 (W.D. Tex. Aug. 8, 2014) ...............................19

*In re Sw. Bell Tel. Co.*,
   226 S.W.3d 400 (Tex. 2007)...........................................................................11, 12, 13, 14

*Robinson v. Fountainhead Title Group Corp.*,
   447 F. Supp. 2d 478 (D. Md. 2006) ....................................................................................10

*Sw. Bell Tel. Co. v. Metro-Link Telecom, Inc.*,
   919 S.W.2d 687 (Tex. App.—Houston [14th Dist.] 1996, writ denied)................................7, 9

*Sw. Bell Tel. Co. v. Pub. Util. Com'n of Texas*,
   735 S.W.2d 663 (Tex. App.—Austin 1987, no writ).............................................................11

*Tex. Comm'l Energy v. TXU Energy, Inc.*,
  413 F.3d 503 (5th Cir. 2004) ..........................................................................7, 8

*United States v. W. Pac. R. Co.*,
  352 U.S. 59 (1956)...............................................................................................11

*Vought Aircraft Indus., Inc. v. Falvey Cargo Underwriting, LTD.*,
  729 F. Supp. 2d 814 (N.D. Tex. 2010) ...............................................................24

*Webb v. UnumProvident Corp.*,
  507 F. Supp. 2d 668 (W.D. Tex. 2005)................................................................21

*Wegoland Ltd. v. NYNEX Corp.*,
  27 F.3d 17 (2d Cir. 1994) .......................................................................................4

*Whiddon v. Chase Home Fin., LLC*,
  666 F. Supp. 2d 681 (E.D. Tex. 2009).................................................................19

*Winn v. Alamo Title Ins. Co.*,
  No. A-09-CA-214-SS, 2009 WL 7099484 (W.D. Tex. May 13, 2009) ........3, 4, 7, 8

*Woodhams v. Allstate Fire & Cas. Co.*,
  748 F. Supp. 2d 211 (S.D.N.Y. 2010)....................................................................8

**Rules and Statutes**

28 U.S.C. § 636(b) .....................................................................................................1, 2

Tex. Ins. Code Art. 21.21–8....................................................................................1

Tex. Ins. Code § 544.052 ................................................................................ *passim*

Tex. Ins. Code § 544.053 ...............................................................................15, 22

Tex. Ins. Code § 912.152 ........................................................................................4

Tex. Ins. Code § 2251.001 ......................................................................................4

Tex. Ins. Code § 2251.051 ....................................................................................16

Tex. Ins. Code § 2251.052 .................................................................................4, 16

Tex. Ins. Code § 2251.101 ......................................................................................4

Tex. Ins. Code § 2251.103 .................................................................................4, 16

Tex. Ins. Code § 2301.006 ......................................................................................4

Tex. Ins. Code § 2301.007 ......................................................................................4

Tex. Ins. Code § 2301.052 ........................................................................................4

**Other Authorities**

28 Tex. Admin. Code § 5.9320 ..................................................................................4

28 Tex. Admin. Code § 5.9334(f) ..............................................................................4

Pursuant to 28 U.S.C. § 636(b) and Rule 72 of the Federal Rules of Civil Procedure, Farmers Group, Inc. ("FGI") respectfully submits the following objections to Magistrate Judge Austin's Report and Recommendation (ECF No. 48) (the "Report") recommending that FGI's Motion to Dismiss (ECF No. 17) (the "Motion") and Motion to Stay (ECF No. 18) be denied.[1]

## I. INTRODUCTION[2]

The Report contains fundamental errors and this Court should not adopt it for three primary reasons.  First, it is predicated on an overly narrow and incorrect reading of the filed rate doctrine that is contrary to controlling law and the allegations in the Complaint.  The Report ignores the Texas Department of Insurance's ("TDI") role in the rate-making process and eviscerates the filed rate doctrine, reducing it to little more than an easy-to-evade pleading standard and empowering private litigants to undermine TDI's authority to approve policies and rating schemes.[3]  The Report's striking departure from settled filed-rate jurisprudence also rests in large part on authority that was not cited by the parties and is readily distinguishable.  Second, the Report rejects FGI's alternative motion to stay under the doctrine of primary jurisdiction with virtually no analysis and without regard for the complex issues the Court will have to adjudicate if the case proceeds past the pleading stage.  The merits issues that must be resolved if Plaintiffs'

---

[1] For the reasons stated in FGI's concurrently-filed Motion for Oral Hearing (ECF No. 50), FGI respectfully requests that the Court conduct an oral hearing on these objections.

[2] All citations to "Compl., ¶ __" are to Plaintiffs' Class Action Complaint (ECF No. 1) (the "Complaint"), to "Mot. at __" are to the Motion, to "Opp. at __" are to Plaintiffs' Omnibus Response (ECF No. 29), to "Reply at __" are to FGI's Reply in Support of the Motion (ECF No. 31), and to "Surreply at __" are to Plaintiffs' Surreply in Opposition to the Motion (ECF No. 37). All citations to "Ex. __" are to the numbered exhibits attached to the Declaration of Doi Tran in Support of the Motion (ECF Nos. 17–2 to 17–6).

[3] A policy's rating scheme includes many variables, including but not limited to rating factors (e.g., age, type of vehicle, driving history), relativities for the rating factors, and the base rates to which the rating factors and relativities are applied.  A customer's premium is the dollar amount that customer pays as a result of the rate.  Mot. at 12 n.16.  For brevity, "rating schemes" shall hereinafter be referred to as "rates."

- 1 -

claim is allowed to go forward are precisely the sort of complex issues within the special competence and authority of TDI. And allowing TDI to address those issues—especially the question of whether there are coverage differences between FA2 and FSPA—is particularly appropriate in this case because TDI already conducted an in-depth study of this issue when it approved the policies and rates at issue. <u>Third</u>, the Report incorrectly concludes that Plaintiffs state a viable claim under Section 544.052 because they allege that FA2 and FSPA policies are "the same" and that FGI denied FA2 policyholders "access" to FSPA's generally lower rates. This conclusion rests entirely on Plaintiffs' conclusory allegation of sameness, an issue that Plaintiffs do not contest that TDI considered when it approved FSPA. It also hinges on an unprecedented reading of Section 544.052 that, if adopted, would dramatically expand its reach and upend decades of Texas common law holding that insurers have no duty to disclose potentially favorable policy alternatives to their customers.

For these reasons, and as explained in detail below, the Court should reject the Report and dismiss Plaintiffs' Complaint with prejudice, or, in the alternative, stay the litigation pending completion of a grievance hearing before TDI.

## II. <u>OBJECTIONS TO THE REPORT</u>

### A.   <u>Standard of Review</u>

This Court must consider de novo objections to the Report. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). It may accept, reject, or modify, in whole or in part, the recommendations and findings in the Report, receive further evidence, or resubmit the matter to Magistrate Judge Austin with instructions. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3).

### B.   <u>The Report Erroneously Concludes that the Filed Rate Doctrine Does Not Require Dismissal</u>

The Report concludes that Plaintiffs should be permitted to proceed with discovery in an attempt to prove that FGI is charging its FA2 customers more than its FSPA customers for what

is in fact "the same" policy.  Report at 6, 7.  But as the Report acknowledges, TDI approved both policies with distinct rates, and in so doing specifically considered the extent to which there were differences between the two.  *See id.* at 2.  Plaintiffs' Complaint thus rests on the premise that TDI got it wrong by failing to conclude that selling FA2 and FSPA policies with different rates is unfairly discriminatory.  *See* Compl., ¶ 2 (alleging "FSPA generally offers lower premiums than" FA2 "for the same or virtually the same coverage"); *id.* at 4 (alleging FA2 and FSPA are the same "except for the premiums charged").  The Report errs in not recognizing that Plaintiffs' claim undermines TDI's rate-making authority, and therefore, is barred by the filed rate doctrine.

   1.   *The Filed Rate Doctrine Bars Plaintiffs' Claim Because The Claim—and the Requested Relief—Undermines TDI's Regulatory Authority.*

   The Report's primary error is its failure to recognize how Plaintiffs' claims and requested relief undermine TDI's regulatory authority.  Two fundamental principles or "strands" underlie the filed rate doctrine: (1) the "nondiscrimination" strand, which prevents regulated companies from engaging in price discrimination between customers; and (2) the "nonjusticiability" strand, which "preserves the exclusive role of regulatory agencies in approving rates" by keeping courts out of the rate-making process (a function which the courts are less competent to perform).  *Winn v. Alamo Title Ins. Co.*, No. A-09-CA-214-SS, 2009 WL 7099484, at *4 (W.D. Tex. May 13, 2009) (Sparks, J.), *aff'd*, 372 Fed. Appx. 461 (5th Cir. 2010), *cert. denied*, 562 U.S. 890 (2010).  If either strand is implicated by a claim, the claim is barred.  *See, e.g.*, *McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 242 (3d Cir. 2012); *Marcus v. AT&T Corp.*, 138 F.3d 46, 59, 60 (2d Cir. 1998).  Regarding the nonjusticiability strand, "[t]he filed rate doctrine prevents more than judicial rate-setting; ***it precludes any judicial action which undermines agency rate-making authority***."  *Marcus*, 138 F.3d at 61 (emphasis added).  Accordingly, "'the focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on agency

procedures and rate determinations.'"  *Id.* at 59 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 954 F.2d 485, 489 (8th Cir. 1992)).

The filed rate doctrine is animated by concerns over undermining the relevant regulatory regime, but the Report does not discuss Texas' regulatory regime even once.[4]  As outlined in the Motion, Texas insurers are required to file their policy forms, and TDI must approve these forms before they can be used.   Tex. Ins. Code §§ 912.152(a)(3), 2301.006, 2301.052(a); 28 Tex. Admin. Code § 5.9320.  If a company plans to offer a new policy form for use with a new product, then TDI analyzes any overlap between the coverages afforded by the new product and any previously approved, similar product using a detailed coverage comparison chart.[5]  28 Tex. Admin. Code § 5.9320(c)(2)(A).  It stands to reason that TDI would not perform such an analysis without purpose, and the purpose plainly is to confirm whether the products are in fact the same. More generally, TDI also reviews policy forms to determine whether they violate any law or rule adopted under the Texas Insurance Code (the "Code").  *See* Tex. Ins. Code § 2301.007(a).

Insurers are also required to file their rates for each policy, and TDI must review the rates and supporting data and "shall" disapprove a rate that is excessive, inadequate, unreasonable, or unfairly discriminatory.  Tex. Ins. Code §§ 2251.052(b), 2251.101(a), 2251.103(a); 28 Tex. Admin. Code § 5.9334(f).  One of the primary purposes of the regulatory regime the Legislature adopted in Chapter 2251 of the Code is to enable TDI to guard against "excessive, inadequate, or unfairly discriminatory rates."  *See* Tex. Ins. Code § 2251.001(1).

---

[4] *See, e.g.*, *Winn*, 2009 WL 7099484, at *4 (emphasizing that the nonjusticiability strand aims to prevent interference of the courts that would "undermine the regulatory regime"); *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 21 (2d Cir. 1994) (affirming dismissal on filed rate grounds and noting that "[a]part from the institutional competency concern, allowing courts to become enmeshed in the rate-making process would undermine our current regulatory regime").

[5] The form approval process, and the "side-by-side comparison" insurers provide TDI for new policy forms that are similar to previously-approved forms, is helpfully summarized on TDI's website at  http://www.tdi.texas.gov/commercial/pcckautp.html  and  http://www.tdi.texas.gov/pubs/pc/pccpfme3.html#pautostat.

Plaintiffs' lawsuit violates the filed rate doctrine because it undermines TDI's authority under this regulatory framework.  Plaintiffs allege the rates they and all other FA2 customers paid are too high for the coverage they received because FSPA offers the same coverage at generally lower rates.  *See* Compl., ¶¶ 2, 31, 59, 87; *see also* Reply at 1, 6, 7, (alleging FA2 customers were "charged more" because their premiums were "higher" than under FSPA).  This ignores that TDI analyzed FA2 and FSPA and approved the use of a new policy that was sufficiently different to justify separate rates, and that the different rates for FA2 and FSPA rates are appropriate for their respective coverages.[6]  The nonjusticiability strand of the filed rate doctrine prohibits that kind of attack on TDI's approval procedures and undermining of its rate-making authority, barring Plaintiffs' claims.  *See Marcus*, 138 F.3d at 61.

Focusing on the relief Plaintiffs seek, the Report concludes that the filed rate doctrine is not implicated because there are two approved rates here, and Plaintiffs' remedy would simply mean substituting one approved rate (FSPA) for another (FA2).  Report at 13.  According to the Report, "[n]othing in the relief the Court would award . . . would require any review of TDI's ratemaking or review of either policy's rate."  *Id.* at 11.  But this substitution theory does not withstand scrutiny for two reasons.  First, if Plaintiffs were to prevail and all FA2 policyholders were to recover the difference between their FA2 rates and the allegedly lower rates under FSPA, then by judicial decree it would mean that the approved FA2 rates are not appropriate for FA2 policyholders despite TDI's conclusion to the contrary.  Such a result would challenge TDI's

---

[6] *See* Mot. at 7; Ex. 1 (TDI approved the FA2 policy forms and allowed the FA2 rates in 2010); Exs. 2, 4 (five years later, in assessing the new FSPA policy and rates, TDI considered the differences in coverages and rates afforded by the FSPA and FA2 policies); Exs. 2, 5 (TDI reviewed more than a thousand pages of actuarial support for the new FSPA rates, devoted many months to this review and the review of the FSPA policy forms, made numerous objections to the initial filed rates, and necessarily resolved any concerns because it did not disapprove the rates); Ex. 5 (TDI ultimately approved the separate policies with separate rates).  As noted in the Declaration of Doi Tran, non-confidential portions of the FSPA rule, rate, and form filings are available online through https://filingaccess.serff.com/sfa/home/TX.

decision, made after months of analyzing policy forms, rate manuals, and detailed actuarial support, that FA2 and FSPA are different and warrant different rates. It would also undermine TDI's recognition that the rates for both policies are reasonable and non-discriminatory, and amount to a judicial decree that TDI—the regulator who looks at complex coverage and rating issues on a daily basis—got it wrong. Second, the Report seems to suggest that if Plaintiffs prevail, then the Court could simply replace all putative class members' FA2 policies with FSPA policies, presumably on a retroactive basis. *See* Report at 11  But that remedy, which Plaintiffs do **not** seek in this lawsuit, is much different than awarding Plaintiffs the alleged difference between the two filed rates, and could have critical consequences for FA2 customers if the coverages afforded by the two policies are not identical in all respects.

Plaintiffs' requested relief cannot be granted without undermining TDI's decision to allow two separate policies with two separate rates. Accordingly, their suit implicates the nonjusticiability strand of the filed rate doctrine and is barred. *See Marcus*, 138 F.3d at 59, 60; *see also McCray*, 682 F.3d at 242 (nonjusticiability strand implicated where the District Court would be "second-guessing [the Department of Insurance's] rate determination").

2. *The Report's Characterization of the Filed Rate Doctrine is Erroneous.*

The Report also cannot be squared with applicable law on the nature and scope of the filed rate doctrine, which it construes both too narrowly and too rigidly.

In the first instance, the Report—*citing no authority*—finds that "seeking a refund of rates paid does not automatically implicate the doctrine." Report at 12. That is not the law. *See, e.g.*, *Medco Energi US v. Sea Robin Pipeline Co., L.L.C.*, 895 F. Supp. 2d 794, 816 (W.D. La. 2012) ("***Because the remedy sought herein would effectively refund a portion of the filed rate***, and thus, would have clear impact on the amounts paid under the 'tariff,' [plaintiff's] ***tort claims seeking such [a] remedy are barred***." (emphasis added)); *Marcus v. AT&T Corp.*, 938 F. Supp.

1158, 1170 (S.D.N.Y. 1996) ("As long as the carrier has charged and the plaintiff has paid the filed rate, what bars a claim is not the harm alleged, but the impact of the remedy sought. ***Any remedy that requires a refund of a portion of the filed rate***—whether an award of damages for fraud on an agency or an award of damages for fraud on consumers—***is barred***." (emphasis added)); *Sw. Bell Tel. Co. v. Metro-Link Telecom, Inc.*, 919 S.W.2d 687, 693 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ("Allowing a state court to award damages to a customer based on a rate lower than the filed rate ***would undermine the regulatory scheme***." (emphasis added)).

Next, relying entirely on *Korte v. Allstate Ins. Co.*, 48 F. Supp. 2d 647 (E.D. Tex. 1999), the Report explains that the filed rate doctrine bars a plaintiff's claim when the claim implicates the reasonableness of a filed rate or would require retroactive alteration of the filed rate. *See* Report at 9. The plaintiff's claim in *Korte* ran afoul of the filed rate doctrine on those grounds. But the *Korte* opinion does not state, nor can it be read to stand for the principle, that the filed rate doctrine applies ***only*** if a claim implicates the reasonableness or requires alteration of a filed rate. *Korte*, 48 F. Supp. 2d at 652–53. To the contrary, the Fifth Circuit interprets the filed rate doctrine broadly. *See, e.g.*, *Winn*, 2009 WL 7099484, at *4 ("The Fifth Circuit has enunciated the doctrine in broad terms"); *see also, e.g.*, *Tex. Comm'l Energy v. TXU Energy, Inc.*, 413 F.3d 503, 507–08 (5th Cir. 2004) (stating the "[t]he filed rate doctrine bars judicial recourse against a regulated entity based upon allegations that the entity's 'filed rate' is too high, unfair or unlawful," and that "filed rates are "'per se reasonable ***and unassailable*** in judicial proceedings brought by ratepayers'" (emphasis added) (citations omitted)). Accordingly, courts analyzing the filed rate doctrine focus on whether a claim implicates "the validity of the rates," not just on whether it directly attacks the rates as unreasonable. *See Winn*, 2009 WL 7099484, at *9; *Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 440–41 (S.D. Tex. 2016) (the filed rate doctrine

barred plaintiffs' claims where they alleged that TDI-approved rates were illegal; the complaint did not raise the issue of whether the rates were "unreasonable").

The Report concludes this case is just about access to another policy or failure to disclose that policy.  But the Complaint proves otherwise.  Plaintiffs, on behalf of all FA2 policyholders, repeatedly allege that the FA2 rates they paid before switching to FSPA were too high, and seek a refund of this alleged "overcharge" as damages.  *See* Compl., ¶ 31 (alleging FSPA provides "the same coverage" but at lower rates); *id.* ¶ 111 (alleging damages for "all premium amounts" that FA2 policyholders paid "over and above the amounts they would have paid" for the same coverage under FSPA); *see also, e.g., id.* ¶¶ 5, 6, 8, 60, 65, 78, 93, 108.  This is exactly the type of claim the filed rate doctrine precludes.  *See Tex. Comm'l Energy*, 413 F.3d at 507; *Winn*, 2009 WL 7099484, at *3 (the filed rate doctrine "preclude[s] lawsuits asserting claims directly or indirectly attacking rates filed with the appropriate regulating authority").  Plaintiffs' request for damages based on the alleged difference in the FA2 and FSPA rates is a direct attack on the validity of the FA2 rates.

Pointing to *Marcus*, the Report also recognizes that if the relief sought would essentially excuse the plaintiffs from paying the filed rate, the nonjusticiability strand is implicated and the claim is barred.  *See* Report at 10.  Here, Plaintiffs' suit seeks to retroactively reduce their FA2 premiums for their FA2 policies below the only filed rate for that policy.  This would improperly excuse Plaintiffs and the putative class from paying the filed rate for the product they purchased. Plaintiffs demand a rate refund, but they want it to be based on the filed rate for a policy they do not have.  Consequently, the filed rate doctrine bars Plaintiffs' claims.  *See Marcus*, 138 F.3d at 61; *Sw. Bell Tel. Co.*, 919 S.W.2d at 693 ("The filed rate doctrine prohibits a customer from claiming a lower rate than the rate the regulated entity has filed with the regulatory agency"). The Report attempts to distinguish *Marcus* on the basis that the plaintiffs there challenged only a

portion of the filed rate (Report at 10), but that is a distinction without a difference. *See*, *e.g.*, *Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, 220 (S.D.N.Y. 2010) (a "piecemeal attack on a filed rate is barred just as is a claim against a rate as a whole"). But in fact *Marcus* is directly on point, as it rejects the precise argument made here: that Plaintiffs can avoid the filed rate doctrine by characterizing their claim as based solely on concealment:

> Plaintiffs assert that their claims do not engage the filed rate doctrine *because they attack AT&T's non-disclosure of its residential long-distance rates rather than the reasonableness of those rates*. In essence, plaintiffs challenge the application of AT&T's rates to them in light of AT&T's billing and advertising practices, as opposed to the reasonableness of the rates absent any allegedly misleading conduct. But Supreme Court case law illustrates that *the filed rate doctrine applies as stringently to claims challenging the individual application of the filed rate, as it does to claims challenging the general integrity of that rate*.

*Marcus*, 938 F. Supp. at 1170 (emphasis added).

3.      *The Report Relies on Case Law Not Cited by the Parties that is Plainly Distinguishable.*

In concluding that the filed rate doctrine does not apply here, the Report relies heavily on a case cited by neither party, *Lentini v. Fidelity Nat'l Title Ins. Co. See* Report at 11. But *Lentini* is distinguishable on two principal grounds.

<u>First</u>, the plaintiff in *Lentini* claimed his insurer failed to disclose that he was eligible for a discounted rate for his title insurance policy. 479 F. Supp. 2d 292, 296–97 (D. Conn. 2007). The rate manual for the policy, which was filed with and approved by the Connecticut Insurance Department, provided for a "regular rate" and a "reduced rate" for certain refinance transactions. *Id.* at 296, 300. The thrust of the plaintiff's claim was that the insurer had failed to charge the discounted filed rate applicable to his refinance transaction. *Id.* at 296, 297. Thus, if the Court ultimately found in the plaintiff's favor, it would simply be enforcing the rate approved by the regulator for the title policy at issue based on the approved eligibility criteria as applied to the plaintiff. In so doing, the court would not be undermining a decision of the regulator. Rather, it

would simply be requiring the insurer to charge the filed rate applicable to the plaintiff.  It was for this reason that his complaint was viewed as a permissible attempt to require the entity to adhere to its approved rate, not an impermissible attempt to pay less than the approved rate.  *See id.* at 301, 302.  This case is different because: (1) TDI approved two different policies with two different rates; (2) Plaintiffs were charged the only approved rates for the FA2 policies they received; and (3) through this lawsuit, they are seeking to pay a lower rate than the one approved for that policy.  Contrary to the Report, a decision in Plaintiffs' favor necessarily conflicts with TDI's decision to approve two different policies with two different rates.  Applying the allegedly lower FSPA rates to all policyholders with FA2 policies is in no way equivalent to applying a discounted price for a single product to a subset of insureds who are eligible for that discount. Thus, this case does not merely present "a choice between two filed rates."  *See* Report at 13.

Second, the *Lentini* court's conclusion on filed rate was also based on a finding that, under Connecticut law, "whether a defendant was under a duty to disclose eligibility for the lower rate to the consumer presents an issue of fact."  *Lentini*, 479 F. Supp. 2d at 301–02.  Texas law is the complete opposite.  As discussed below, there is no duty to disclose the existence of alternative policies in Texas—an issue the Report never acknowledges.  *See also* Reply at 1–4.

The Report also cites *Robinson v. Fountainhead Title Group Corp.* and *Kunzelmann v. Wells Fargo Bank, N.A.*, two other cases not previously cited by the parties.  Neither supports the Report's conclusions.  In *Robinson*, the issue was whether the plaintiff should have paid the allegedly lower filed rate of two different entities, one of which was a sham company set up by the other to collect (and kick back) additional title charges.  447 F. Supp. 2d 478, 482, 487–88 (D. Md. 2006).  There is no discussion of the relevant regulatory regime or of the filed rates of the two entities such that one could determine whether or how the nonjusticiability prong of the filed rate doctrine was implicated.  *Kunzelmann* was a force-placed insurance case that has been

undercut by its own subsequent history.  As one court explained: "[T]he court in *Kunzelmann* denied a Motion to Dismiss on the basis that plaintiff was not challenging the actual insurance rates. But, in a subsequent order, that court concluded that the filed rate was an issue and denied class certification."  *Alpert v. Nationstar Mortg. LLC*, 243 F. Supp. 3d 1176, 1182 n.3 (W.D. Wash. 2017) (citations omitted).  Ultimately, neither *Lentini*, *Robinson*, nor *Kunzelmann* support the Report's conclusion on applicability of the filed rate doctrine.

## C.    The Report Erroneously Denied FGI's Motion to Stay on Primary Jurisdiction Grounds With Only Conclusory Analysis

Apart from the Motion to Dismiss, FGI filed a separate Motion to Stay this case pending completion of a grievance hearing before TDI under the doctrine of primary jurisdiction. "[P]rimary jurisdiction 'comes into play whenever enforcement of the claim requires the resolution of issues [which, under a regulatory scheme, have been placed] within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.'"  *Penny v. Sw. Bell Tel. Co.*, 906 F.2d 183, 187 (5th Cir. 1990) (quoting *Sw. Bell Tel. Co. v. Pub. Util. Com'n of Tex.*, 735 S.W.2d 663, 670 (Tex. App.—Austin 1987, no writ)).  Although "no fixed formula exists for applying the doctrine of primary jurisdiction,"[7] courts "should defer to appropriate administrative agencies when (1) the agency is staffed with experts trained in handling complex problems within the agency's purview, and (2) great benefit is derived from the agency's uniform interpretation of laws within its purview and the agency's rules and regulations when courts and juries might reach differing results under similar fact situations." *In re Sw. Bell Tel. Co.*, 226 S.W.3d 400, 403 (Tex. 2007).

---

[7] *United States v. W. Pac. R. Co.*, 352 U.S. 59, 64 (1956).

The Report gave short shrift to the doctrine of primary jurisdiction, disposing of it with only the following cursory analysis:

> However, the Court disagrees that the question before it requires the certification to TDI. At this point, there is no "great benefit" derived by the agency addressing the questions first. This problem before the Court does not require interpretation of a complex administrative scheme, but instead is focused on whether FGI's rules on the two policies at issue discriminated against a class of insureds. Courts frequently grapple with such detailed fact issues and questions of law, and this case is no different.

Report at 14.

      1.    *The Report Overlooks the Great Benefit of Experience and Uniformity TDI Can Supply.*

The Report does not address the great benefits of TDI's uniform interpretation of whether FGI's actions here are discriminatory.  Directly on point, the Fifth Circuit held—in a decision extensively cited by FGI, but not mentioned by the Report—that a regulator authorized to prohibit discrimination in rates is both more experienced with adjudicating these claims, and also confers the *great benefit of uniform standards for other discrimination claims*:

> Since the PUC has **specific authority to prohibit such discrimination, it is more accustomed to adjudicating this type of issue than is a federal district court**. . . . **It should also aid in creating more uniform standards to be followed when evaluating other claims for discrimination.** Hence, by allowing the PUC to determine this issue, concerns for uniformity and specialized knowledge are met.

*Penny*, 906 F.2d at 187–88 (emphases added).

Even if the Report were correct that Plaintiffs' claim is simply one for "access" to the FSPA policy or rates, TDI's expertise, and the need for uniform regulatory guidance, are squarely implicated.  In another on-point case overlooked by the Report, the California Supreme Court found that the primary jurisdiction doctrine mandated staying a case, where the plaintiffs claimed insurers had violated the California anti-discrimination statute by "refusing to offer a 'Good Driver Discount policy' to all eligible applicants." *Farmers Ins. Exch. v. Superior Court*,

2 Cal. 4th 377, 381, 399–400 (1992).[8]  Just like this case, the plaintiffs were demanding access to a different policy (one with lower rates) than the policy they had.  *Id.*  The court found that the regulator's expertise was needed, and that there would be great benefit to a stay:

> The resolution of these questions mandates exercise of expertise presumably possessed by the Insurance Commissioner, and poses a risk of inconsistent application of the regulatory statutes if courts are forced to rule on such matters without benefit of the views of the agency charged with regulating the insurance industry. [. . .]

> It is readily apparent that a court would benefit immensely, and ***uniformity of decisions would be greatly enhanced, by having an expert administrative analysis available before attempting to grapple with such a potentially broad-ranging and technical question of insurance law.***

*Id.* at 399–400 (emphasis added).[9]

The same is true here.  If FGI's alleged policies regarding access FA2 are impermissible under Section 544.052—which they are not—then ***TDI should be allowed to make that determination, and if so, create uniform regulations going forward***.  The Report precludes that benefit, contrary to binding precedent, *Penny*, 906 F.2d at 187–88; *In re Sw. Bell Tel. Co.*, 226 S.W.3d at 403, and the on-point guidance of *Farmers Insurance Exchange*.

### 2.   *The Report Fails to Consider TDI's Expertise, and the Difficult Task it Now Sets for this Court.*

The Report also glosses over the two difficult tasks the Report will set for the Court in deciding, on the merits, "whether FGI's rules on the two policies at issue discriminated against a class of insureds."  Report at 14.  Namely, the Court will have to determine: (1) whether the FA2

---

[8] California has a statute that entitles all persons who meet certain criteria to purchase a "Good Driver Discount" policy with a rate at least 20% below the rate the insured would otherwise have been charged for the same coverage if he or she did not meet the criteria.  *Id*. at 385.

[9] *See also id.* (emphasizing that to address the plaintiff's claim, "one must inquire into the insurer's ratemaking process in order to determine what the rate would be for a given driver without the discount," and "[t]hereafter one must discern whether the rate offered on a given Good Driver Discount policy is 20 percent below what the insured would otherwise have been charged," which "calls for exercise of administrative expertise preliminary to judicial review").

and FSPA policies are in fact the same, and (2) whether the FA2 and FSPA rates are actuarially justified.  If the policies are not the same,[10] *or* if the rates are actuarially justified,[11] then no discrimination has occurred.  These two questions are indisputably the bread and butter of the regulator, and binding Texas Supreme Court[12] and Fifth Circuit[13] precedents (that the Report ignored) mandate a stay pending a ruling by TDI.  Indeed, Texas and federal courts routinely hold that questions of insurance regulation in particular are an especially technical and complex subject area, appropriate for application of the primary jurisdiction doctrine.  *See, e.g.*, *Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 272 (Tex. App.—Austin 2002, no pet.); *Forte v. Wal-Mart Stores, Inc.*, No. 02:07-CV-155, 2007 WL 2461831, at *4 (S.D. Tex. Aug. 26, 2007).

a.     TDI is better able to determine if the coverages are "the same"

This determination is squarely within the competence of TDI.  In simply approving the FSPA policy forms, TDI spent *over seven months*, and required approval of *over twenty different forms* (many of which are highly complex, technical insurance documents), a *review of a 35-page chart comparing over 140 different provisions of FA2 and FSPA, coverage-by-coverage*, and *nine rounds of objections from TDI and responses from FGI*.  *See* Ex. 5, FSPA Policy Form Filing Excerpts, at 3–5.

The Report is correct that federal courts routinely decide complex issues.  And those complex issues often include construing particular terms of an insurance contract, such as an

---

[10] *See* Report at 6–7.

[11] Plaintiffs may argue that the actuarial justification defense will be somehow limited to the alleged denial of "access" to the FSPA policy or rates.  That is incorrect, particularly considering that Plaintiffs never pled a denial of "access."  But even if the Court does limit the actuarial inquiry to access, TDI again should be heard first.  As Plaintiffs concede in their Complaint, TDI was fully aware of FA2 when it approved the sale of FSPA with different rates.  TDI approved this plan, and should be allowed to re-confirm that approval in light of Plaintiffs' allegation, thereby ensuring uniform regulatory treatment.

[12] *In re Sw. Bell Tel. Co.*, 226 S.W.3d at 403.

[13] *Penny*, 906 F.2d at 187–88.

individual exclusion, or the validity of a particular coverage decision. But federal courts have no experience weighing two voluminous, multi-faceted policies side-by-side, and determining they are "the same" as to:

- Coverages, such as medical expenses and under/uninsured motorist, and reasonable expenses
- Exclusions, such as damages caused by criminal acts or omissions, or while using the car for ride-share services (e.g., Uber or Lyft)
- Limits of liability
- Deductibles
- Insured values
- Benefits, such as accident forgiveness and guaranteed renewal
- Definitions
- Other provisions, such as recovery of the insured's medical payments if those are covered by a third-party.

Only TDI has the expertise, knowledge, and practical experience to answer that question in a uniform manner that can inform the entire industry, not litigants in a single lawsuit. Yet the Report glosses over that burden, and fails to discuss any of the numerous precedents that instruct the Court to avail itself of TDI's expertise before proceeding.

        b.      TDI is better able to determine if the rates are actuarially sound

Plaintiffs repeatedly allege that FA2 and FSPA offer the "same coverage." *See, e.g.*, Compl., ¶¶ 2, 31, 59, 87. As explained below, the Report improperly credits this conclusory and implausible allegation. *See* Report at 7. But even if the allegation was well pled, the Report fails to recognize that if two policies in fact have the "same coverage," then actuarial soundness becomes an absolute defense to a claim for unfair discrimination. Tex. Ins. Code § 544.053(a) ("A person does not violate Section 544.052 if . . . the charging of an individual a rate that is different from the rate charged another individual for the same coverage is based on sound actuarial principles."). This inquiry into the actuarial basis of the FSPA and FA2 rates is a

highly technical one that TDI has already undertaken.  *See id.* §§ 2251.051(d), 2251.052(b), 2251.103(a) (TDI must disapprove a rate that "is not based on sound actuarial principles").

Indeed, before allowing the FSPA rates, TDI reviewed nearly two-dozen filings totaling more than 1,000 pages, including:

- Actuarial Support
- Filing Memorandum (Rates)
- Expenses
- Filing Support
- Rate Filing Checklist
- Territory Variation by County
- Standard Carrier List
- Address Validation Code Mapping
- Percentage Change – FSPA vs FA2
- Loss Development
- Comp Deductible Factor
- Statistical Output
- Correlation Matrix Summary
- Limit and Deductible Factor Justification
- Rate Filing Exhibits
- Vehicle Symbol Assignments
- FSPA Rule Manual

*See* Ex. 2, FSPA Rate Filing Excerpts, at 6–7.[14]  Thus, if Plaintiffs were ultimately correct in their bald assertion that the FSPA and FA2 coverages are the same (they are not), then they have pled themselves into a realm requiring complex rating and actuarial analyses that any court would be ill-equipped to undertake.  Under the primary jurisdiction doctrine, this is a matter that should be committed to TDI in the first instance.

---

[14] TDI also considered six rounds of objections and responses.  *Id.*

Ultimately, the only reason a stay would not be called for here would be if the Court finds that TDI has already precluded Plaintiffs' claim by approving the forms and allowing the rates, as FGI has demonstrated in the filed-rate discussion above.

**D.  The Report Erroneously Concludes that Plaintiffs' Complaint States an Actionable Discrimination Claim Under Section 544.052**

The Report concludes the Complaint states a viable discrimination claim under Section 544.052 because Plaintiffs sufficiently allege that: (1) FA2 and FSPA policies are "the same"; (2) FSPA premiums are generally lower; and (3) FA2 policyholders were denied "access" to FSPA's generally lower premiums.  Report at 2, 6–7, 10–11.  That conclusion is incorrect in several respects, and Plaintiffs' Complaint should also be dismissed for failure to state a claim.

1.  *The Report Hinges on the Incorrect Finding that Plaintiffs Plausibly Allege that FA2 and FSPA Policies are "The Same."*

The Report's conclusion that Plaintiffs state a claim under Section 544.052 rests entirely on the threshold finding that Plaintiffs plausibly allege that FA2 and FSPA policies are the same. *Id.* at 7 ("Plaintiffs have sufficiently alleged that the two policies offer the same coverage"); *id.* at 6 ("*[S]o long as the two policies offer the same coverage*, the fact that an insurer has created two or more policies *does not preclude application of the statute*." (emphasis added)).  In other words, the Report concedes that even under its expansive reading of the statute (as discussed below), Plaintiffs' claims fail absent well-pleaded facts showing sameness.  The Report's finding that Plaintiffs have met this standard is unsupported by the allegations in Plaintiffs' Complaint.

In the first instance, the Report applies the incorrect legal standard in analyzing Plaintiffs' conclusory allegation that FA2 and FSPA policies are the same.  *See id.* at 7 (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  As the Supreme Court made clear after *In re Katrina* was decided, a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Critically, this means that pleading mere "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" will not suffice.  *Id.*   This is especially true when a conclusory allegation is contradicted by documents properly before the Court at the pleading stage.  *See, e.g.*, *Cox v. Bank of Am., N.A.*, No. CV H-16-2624, 2017 WL 1622043, at *2 (S.D. Tex. May 2, 2017).  In ruling on motions to dismiss, courts must first disregard allegations that are legal conclusions, and then, "[w]ith respect to any well-pleaded allegations . . . assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Jabary v. City of Allen*, 547 F. App'x 600, 604 (5th Cir. 2013).  A claim is facially plausible only if the plaintiff "pleads ***factual content*** that allows the court to draw the ***reasonable*** inference that the defendant is liable for the misconduct alleged."  *Id.* (emphasis added).  *Iqbal*, 556 U.S. at 678.

The Complaint insists that FA2 and FSPA are the same, but pleads no facts whatsoever in support of that naked assertion.  *See* Compl., ¶ 31 (alleging FSPA provides "the same coverage found in FA2"), *id.* ¶ 87 (alleging FSPA provides "the same coverage" at lower rates).[15]  By way of example, Plaintiffs allege no facts concerning the nature of the coverages available under FA2 or FSPA or whether there are any differences in endorsements or riders.  Plaintiffs also did not attach either policy as an exhibit to the Complaint, provide the Court with a policy comparison, or plead any facts concerning TDI's analysis of FA2 and FSPA in connection with its approval of the FSPA policy form and rates.  Rather, Plaintiffs' claim hinges entirely on the naked averment that FA2 and FSPA are the same, which the Report makes clear is central to the Plaintiffs' claims.  *See* Report at 6, 7.  For this reason alone, Plaintiffs' allegation of sameness is

---

[15]  The Complaint also repeatedly characterizes FA2 and FSPA as offering "essentially," "virtually," and "substantially" identical coverages.  *See, e.g.*, *id.*, ¶¶ 2, 4, 6, 32, 56.  Even setting aside that the Report's conclusion that Plaintiffs state an actionable claim requires the two policies to be "the same" (Report at 6), Plaintiffs' allegations of "essential" identity are no less conclusory than their allegations that the policies are "the same."  *See also* footnote 20, *infra*.

not entitled to a presumption of veracity at the pleadings stage, and the finding that Plaintiffs sufficiently allege the policies provide the same coverages is erroneous.[16]

But the problem with the Report's acceptance of Plaintiffs' allegation of sameness goes well beyond the fact that it is conclusory. Under the correct pleading standard, even if an allegation is well-pleaded, and thus taken as true, it nevertheless must support a plausible claim for relief. *See Iqbal*, 556 U.S. at 678. Even if the allegation of sameness is taken as true for purposes of the Motion, the Complaint still fails to state a ***plausible*** claim. Plaintiffs admit, and the Report acknowledges, that during the approval process TDI "initially objected to the FSPA policy" by "questioning what, if any, differences existed between it and the FA2 policy." Report at 2.[17] In other words, it is undisputed that the regulator tasked with determining whether policy forms and rates meet all legal requirements was fully aware of FA2, considered whether it was sufficiently different from FSPA, and decided to allow the two different policies with two different rates. *See Mot. at 14–15.* Faced with this conflict between Plaintiffs' conclusory allegation that the policies are the same and TDI's approval of FA2 and FSPA with different rates, the Report errs in concluding it is plausible that Plaintiffs are correct. Report at 6–7.

The Report not only disregards Plaintiffs' failure to allege any facts regarding coverages under the two policies, but ignores the obvious alternative explanation: TDI approved both the FA2 and FSPA policy forms and allowed them to be sold with two distinct rates because the two policies *are not the same*. *See Iqbal*, 556 U.S. at 681–82 (the inquiry into whether a complaint

---

[16] *See, e.g.*, *Rios v. Randolph Brooks Fed. Credit Union*, No. 5:13-CV-946-DAE, 2014 WL 3897806, at *3 (W.D. Tex. Aug. 8, 2014) (dismissing Fair Credit Reporting Act claim where the plaintiff alleged only conclusory factual allegations in support of required elements); *Desperado Motor Racing & Motorcycles, Inc. v. Robinson*, No. CIV.A. H-09-1574, 2010 WL 2757523, at *3 (S.D. Tex. July 13, 2010) (same for business disparagement claim); *Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 692 (E.D. Tex. 2009) (same for breach of contract claim).

[17] Plaintiffs did not object to the evidence filed by FGI in support of its Motion, which was properly subject to judicial notice and considered by Magistrate Judge Austin at the pleadings stage. *See Mot. at 7–8; Report at 2.*

states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense," and when an "***obvious alternative explanation***" suggests lawful conduct can be inferred, a contrary conclusion urged by plaintiffs may not be plausible (emphasis added)).  The Report's conclusion thus rests on a finding that it is plausible that TDI—the entity specifically charged under Texas' regulatory regime with determining whether rates are unfairly discriminatory—"question[ed] what, if any differences existed between" the two policies, "conducted an analysis comparing rates" for the two policies, and then "approved" the sale of FSPA with different rates despite the fact that it provides the same coverages as FA2.  *See* Report at 2, 6–7.

This finding strains credulity.  And as a result, adopting the Report would lead to the extraordinary result that Plaintiffs can use Section 544.052 to challenge TDI's approval of FSPA and its rates.  This is not and cannot be the law.

2. *The Report Errs in Concluding that an Alleged Failure to Offer or Grant "Access" to an Alternative Policy is Actionable Under Section 544.052.*

Plaintiffs urge that despite seeking damages for being overcharged for their policies, they are not challenging the TDI-allowed rates for FA2 or FSPA.  Rather, they insist their claims arise solely from FGI's "concealment" of the lower rates under FSPA.  *See* Opp. at 2, 3, 19, 21.[18]  The Report agrees, and finds that under certain circumstances, Section 544.052 makes actionable the alleged failure to offer a customer the opportunity to purchase a different policy.  Report at 7, 10–11.  That conclusion is incorrect, unprecedented, and should not be adopted by this Court.

---

[18] The Report characterizes this as a denial of "access" to FSPA, a word that does not appear in the Complaint.  *See* Report at 10–11.  It also states that "Plaintiffs eventually were allowed to switch to FSPA policies, but only after significant effort to discover their existence."  *Id.* & n.1. But that allegation also is not found in the Complaint, and even if it were, the Report states it as fact.  Out of an abundance of caution in light of the Report's warnings and the legal authorities cited therein, FGI respectfully submits that this statement is also erroneous, and, to the extent it can be construed as a "factual finding," FGI specifically objects to same.  *See* Report at 14–15.

On its face, the statute prohibits unfair discrimination with respect to the amount charged for, benefits payable under, or terms and conditions of a policy or contract of insurance. Tex. Ins. Code. § 544.052. It does not speak to whether, much less under what circumstances, an insurer must offer a particular policy to its customers. The statute has existed in essentially the same form in Texas for more than fifty years, and similar statutes have existed in many states for just as long.[19] However, as explained in FGI's briefs (and as Plaintiffs do not dispute), there is no authority whatsoever for the proposition that Section 544.052 creates a duty to disclose potential policy alternatives or provide customers with access to potentially lower rates. *See* Mot. at 10; Reply at 1. Moreover, there is long-standing authority in Texas holding that insurers and their agents are not fiduciaries of their customers, and have no duty at common law or under any other Texas statute or regulation to disclose the existence of or offer access to a potentially cheaper or otherwise more favorable alternative policy. *See, e.g.*, *May v. United Servs. Ass'n of Am.*, 844 S.W.2d 666, 669 (Tex. 1992); *Lexington Ins. Co. v. N. Am. Interpipe, Inc.*, No. CIV.A. H-08-3589, 2009 WL 1750523, at *2–3 (S.D. Tex. June 19, 2009); *Aspen Specialty Ins. Co. v. Muniz Eng'g, Inc.*, 514 F. Supp. 2d 972, 983 (S.D. Tex. 2007); *see also Penn-Am. Ins. Co. v. Zertuche*, 770 F. Supp. 2d 832, 844 (W.D. Tex. 2011); *Webb v. UnumProvident Corp.*, 507 F. Supp. 2d 668, 683 (W.D. Tex. 2005).

The Report does not even address this issue, despite the fact that it was a major subject of the parties' briefs. *See id.*; Surreply at 1–4. Yet it nevertheless endorses for the first time the extraordinary proposition that Section 544.052 makes actionable "concealment" of an alternative policy option. The fact that the Report contains no discussion regarding the conflict between reading the statute to give rise to a duty to disclose and the Texas cases showing that such a duty

---

[19] *Compare* Act of May 8, 1957, 55th Leg., R.S., ch. 198 § 1, sec. 4(7) (1957 version), *with* Tex. Ins. Code Art. 21.21–8 (1995 version), and Tex. Ins. Code. § 544.052 (enacted in 2003).

does not exist—all of which were decided with the unfair discrimination statute on the books—strongly undermines the Report's unprecedented, expansive reading of the statute. The Report also does not address the sole decision from any court squarely addressing whether an unfair discrimination statute similar to Section 544.052 imposes a duty to inform customers of potentially cheaper alternatives—and rejecting that proposition. *See* Reply at 3–4 (discussing *Pitts v. Jackson Nat'l Life Ins. Co.*, 574 S.E.2d 502 (S.C. Ct. App. 2002)).

In an effort to bypass Texas law on an insurer's duties and avoid dismissal, Plaintiffs insisted that their claims rest not on a "general duty to disclose," but on FGI's efforts to "categorically conceal" FSPA from FA2 policyholders. *See* Surreply at 2. That distinction is without difference, as it is evident that concealing information cannot be actionable absent some affirmative legal duty to disclose it. But Plaintiffs did not contradict or distinguish the ample authority cited by FGI holding that no such duty exists for insurance policies. And neither does the Report. Nor does the Report undertake to explain the contours of its newly-recognized theory of liability under Section 544.052, despite the fact that it occasions a major shift in Texas insurance law. As a result, if the Report is adopted, then Texas insurers will be left to speculate whether the statute now overrides Texas common law with respect to the relationship between insurers and policyholders, the nature and extent of the newly-recognized duty to disclose, and the circumstances under which the duty might arise. This lack of clarity is rendered even more problematic by the fact that the Report arguably leaves open the possibility that a duty to disclose (and, therefore, potential liability for "concealment"), can arise even if two policies are not "the same" but are "essentially" identical. Report at 6, 7.[20]

---

[20] To the extent the Report contemplates the latter, it means that courts will have to adjudicate the extent to which insurance policies are "essentially" identical—precisely the sort of inquiry that the TDI is required and best equipped to resolve. But in addition, if liability can attach in cases involving only "essential" identity between two policies, then the statutory "sound actuarial basis" defense would be rendered meaningless. *See* Tex. Ins. Code § 544.053 ("A

If the Court decides to make an *Erie*-guess as to whether the Texas Supreme Court would recognize either the "access" claim the Report created, or the statutorily implied duty Plaintiffs now posit, it should consider that canons of construction militate otherwise: Section 544.052 identifies types of discrimination that (if not actuarially justified) are actionable.  While the list is non-exclusive, it is not boundless.  Under *ejusdem generis*, "when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation."  *Hilco Elec. Co-op., Inc. v. Midlothian Butane Gas Co., Inc.*, 111 S.W.3d 75, 81 (Tex. 2003).  In *Hilco*, the court considered similarly expansive general language ("any lawful purpose") to that relied on by Plaintiffs here ("in any manner").  111 S.W.3d at 81.  But applying the canon, *Hilco* held "the phrase 'any lawful purpose,' . . . is **limited to purposes similar in kind or class** to the twenty-one [statutorily] identified categories."  *Id.* (emphasis added).  For the same reason, there is no implied duty to disclose, because such a duty is not similar in kind or class to the categories identified in Section 544.052, all of which relate to the substance of policies, rates, coverages, and premiums (and with respect to a single policy, not across policies).[21]

> ### 3.      *The Report Errs in Concluding that Alleged Inter-Policy Discrimination is Actionable Under Section 544.052.*

The Report is fundamentally flawed in its conclusion that the unfair discrimination statute can be applied across two separate insurance policies, each approved for use with different rates

---

person does not violate Section 544.052 if the refusal to insure or to continue to insure, the limiting of the amount, extent, or kind of coverage, or the charging of an individual a rate that is different from the rate charged another individual **for the same coverage** is based on sound actuarial principles." (emphasis added)).  In other words, liability would attach and yet a core defense would be unavailable.  This further underscores the extent to which the Report's findings about the scope of liability under Section 544.052 find no support in the language of the statute.

[21] In enacting and re-enacting laws, the legislature is also presumed to know the state of the common law relevant to the act.  *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 596 (Tex. 2001).  That insurers have no duty to disclose other policies was well-established when the Legislature enacted Section 544.052.  *See* Reply at 1–4 (citing cases).

by TDI.  *See* Report at 7.  It reaches this conclusion by reasoning that "it is difficult to see how an individual could receive 'greater benefits' than another if the two had identical policies with identical language," and that the statute would be toothless if it did not apply to discrimination across policies.  *Id.* at 6.  This is simply wrong.

First, there are countless ways an insurer could unfairly discriminate in the payment of benefits to two people insured by identical policies with identical language.  For example, an insurer could require cheaper aftermarket parts for auto repairs for some groups while allowing other groups to use more expensive original parts.  *See, e.g., Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005) (reversing a class action judgment based on use of aftermarket parts).  An insurer could also use more favorable estimating assumptions for some groups of policyholders than others.  *See, e.g.*, *Vought Aircraft Indus., Inc. v. Falvey Cargo Underwriting, LTD.*, 729 F. Supp. 2d 814, 835–36 (N.D. Tex. 2010) (explaining that a general contractor's fee should be included in a repair estimate if reasonably needed).

Second, the Report attempts to bolster its reading of the statute by noting that if it "only prohibited discrimination between two persons issued the same policy, insurers could simply create two identical policies with two different names, charge two different rates for them, and never violate the anti-discrimination statute."  Report at 6.  This reading completely disregards the role of TDI in regulating the business of insurance, as TDI is required by statute to approve new policies before they are used and must assess new filed rates to determine whether they are excessive or unfairly discriminatory.  *See* Motion at 4–6.[22]

---

[22] That Plaintiffs contend TDI should not have allowed Farmers Texas to sell FA2 and FSPA with different rating schemes is of no moment, because the filed rate doctrine bars litigants from using the courts to undermine the regulator's ability to discharge its statutory mandate.  *See* Sections II(A)(1–3), *supra*.

As explained in detail in FGI's briefs, there is simply no authority for the proposition that Section 544.052 makes actionable discrimination across two different policies, and reading the statute to allow cross-policy claims does not comport with the language of the statute or with Texas' regulatory regime.  *See* Mot. at 8–13; Reply at 1–5.  For these reasons, the Report errs in concluding that Plaintiffs state a viable claim.

### III. <u>CONCLUSION</u>

For the reasons set forth herein and in its Motion to Dismiss, Reply in Support of the Motion to Dismiss, Sur-Surreply in Support of Motion to Dismiss, Motion to Stay, and Reply in Support of Motion to Stay, FGI respectfully requests that the Court reject the conclusions set forth in the Report and (1) dismiss Plaintiffs' Complaint with prejudice, or (2) in the alternative, stay this action pending completion of a grievance hearing by the TDI under the doctrine of primary jurisdiction.

Dated:  November 2, 2017                    Respectfully submitted,

                                            /s/ Scott Incerto
                                            _____

                                            NORTON ROSE FULBRIGHT US LLP

                                                M. Scott Incerto
                                                Texas Bar No. 10388950
                                                scott.incerto@nortonrosefulbright.com
                                                Adam Schramek
                                                Texas Bar No. 24033045
                                                adam.schramek@nortonrosefulbright.com
                                                James Hughes
                                                Texas Bar No. 24074453
                                                james.hughes@nortonrosefulbright.com
                                                William Patrick Courtney
                                                Texas Bar No. 24087351
                                                patrick.courtney@nortonrosefulbright.com
                                            98 San Jacinto Boulevard, Suite 1100
                                            Austin, Texas 78701
                                            Telephone:   (512) 474-5201
                                            Facsimile:   (512) 536-4598

                                                Peter H. Mason (admitted *pro hac*)
                                                California Bar No. 71839
                                                peter.mason@nortonrosefulbright.com
                                                Cristina Longoria
                                                Texas Bar No. 24070165
                                                cristina.longoria@nortonrosefulbright.com
                                            555 South Flower Street, Forty-First Floor
                                            Los Angeles, California 90071
                                            Telephone:   (213) 892-9200
                                            Facsimile:   (213 892-9494

                                            ATTORNEYS FOR DEFENDANT
                                            FARMERS GROUP, INC.


## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2017, a true and correct copy of the foregoing

document was served on all counsel of record via the CM/ECF system.

                                            /s/ Scott Incerto
                                            _____
                                            Scott Incerto