**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

FILED
18 OCT 22 PM 2: 31
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

CHARLES GRIGSON, LISA HOING, and
DAVID KELLY, Individually and on behalf of
all others similarly situated,

    Plaintiffs,

v.

FARMERS GROUP, INC.,
a Nevada Corporation,

    Defendant.

Civil Action No.: 1:17cv88LY

**Jury Trial Demanded**

**First Amended Complaint-Class Action**

## FIRST AMENDED CLASS ACTION COMPLAINT

1

Plaintiffs Charles Grigson, Lisa Hoing, and David Kelly ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant Farmers Group, Inc. ("FGI" or "Defendant"). Plaintiffs' allegations are based upon personal knowledge, the investigation of counsel, and information and belief.

## I.   INTRODUCTION

1.     Plaintiffs bring this action on behalf of themselves and as many as one million other Farmers Texas County Mutual Insurance Company ("Farmers Texas") auto insurance policyholders whose loyalties to Farmers were decidedly betrayed through the illegal and discriminatory conduct described herein.

2.     In or around early 2016, facing declining business and market share, including in the Texas market, FGI (a non-insurer control corporation) introduced a new auto policy regime in Texas called the Farmers Smart Plan Auto ("FSPA"). FSPA generally offers lower premium rates than, for the same or virtually the same coverage as, FGI's existing Farmers Auto 2.0 and 2.5 (generally, "FA2") policy regimes.

3.     Rather than make the FSPA policies and correspondingly lower rates available to FA2 customers, FGI took several aggressive, deliberate, and highly deceptive steps to ensure that only new Texas customers would be made aware of FSPA and receive FSPA policies, and that FSPA would be hidden from existing FA2 policyholders and all or nearly all existing FA2 policyholders would continue to receive FA2 policies with generally higher rates.

4.     Among other things, FGI instructed Farmers Texas agents that the FSPA policies were to be written only for so-called "new business" while "current business" was to be continually renewed in the FA2 policies. FGI's communications to Farmers Texas Agents were designed to, and had the effect of, encouraging Farmers Texas agents to conceal the availability of substantially identical (except for the premiums charged) FSPA coverage to FA2 customers.  FGI implemented

this scheme by establishing an arbitrary, low ceiling for the number of existing FA2 policyholders who could be rewritten into FSPA policies (i.e., FA2>FSPA transfers), and intimidated agents about the consequences (including to their compensation and job security) of disclosing FSPA to existing FA2 policyholders and/or exceeding the arbitrary ceiling for FA2>FSPA rewrites.

5.    Making matters worse for the existing FA2 policyholders, in December 2015 (just weeks before launching FSPA in Texas), FGI *also* significantly increased the premium rates for FA2 policies, further exacerbating the difference between the already higher FA2 rates and the generally lower FSPA rates for which FA2 customers were eligible.

6.    In nearly all cases, the premium rate that an existing FA2 policyholder pays is higher than the premium rate a new customer would pay under FSPA for identical or virtually identical coverage. The rate difference between FSPA and FA2 can be as high as 20-40%, or even higher. In some cases, individuals and/or families may save more than $1,000 for every six (6) month policy period by switching to FSPA.

7.    By engaging in this conduct, FGI has unfairly discriminated against existing Farmers Texas FA2 policyholders in violation of Texas law, including Texas Insurance Code § 544.052. FGI's unfair discrimination was and is committed knowingly, without any actuarial basis, and in violation of Texas law.

8.    FGI's unfair discrimination has resulted in significant economic damages to Plaintiffs and other putative class members. Existing FA2 policyholders have paid, and continue to pay, higher premiums than they should. Through its unfair discrimination, FGI is forcing Farmers Texas's most loyal, existing FA2 policyholders to effectively subsidize the lower FSPA rates offered only to new Farmers Texas customers.

9.    In furtherance of this illegal scheme, FGI intimidates Farmers Texas agents into

2

hiding the FSPA eligibility from existing FA2 policyholders. Such efforts to conceal FSPA from existing FA2 policyholders has eroded, and if left unchecked, will continue to erode, the trust that has been carefully built between existing FA2 policyholders and their Farmers Texas agents – thereby resulting in irreparable harm.

10. Without appropriate injunctive relief, Plaintiffs and the putative class members will continue to suffer harm, including the irreparable harm to the agent/policyholder relationship that FGI continues to erode through its conduct of concealment and unfair discrimination.

11. Plaintiffs, on behalf of themselves and the proposed class, seek economic damages, injunctive relief, civil penalties, and other relief as set forth herein.

## II. PARTIES

12. Plaintiff Charles Grigson is a resident of Travis County, Texas, and at all material times had auto insurance that was created and underwritten by FGI, sold to Plaintiff through Farmers agents managed, supervised, and controlled by FGI, and provided through FGI's insurer affiliate Farmers Texas.

13. Plaintiff Lisa Hoing is a resident of Williamson County, Texas, and at all material times had auto insurance that was created and underwritten by FGI, sold to Plaintiff through Farmers agents managed, supervised, and controlled by FGI, and provided through FGI's insurer affiliate Farmers Texas.

14. Plaintiff David Kelly is a resident of Guadalupe County, Texas, and at all material times had auto insurance that was created and underwritten by FGI, sold to Plaintiff through Farmers agents managed, supervised, and controlled by FGI, and provided through FGI's insurer affiliate Farmers Texas.

15. Defendant Farmers Group, Inc. ("FGI") is a Nevada corporation that maintains its principal place of business at 6303 Owensmouth Ave., Woodland Hills, California 91367. FGI

may be served through its Registered Agent in Texas: Corporation Service Company d/b/a CSC-Lawyers Inco, located at 211 E. 7th Street, Suite 620, Austin TX 78701. FGI describes itself as not being an insurance company, but rather as a company in the business of insurance. FGI maintains exclusive authority and control over virtually all aspects of Farmers Texas auto insurance business, including but not limited to: "product design" (i.e., the creation and implementation of different insurance policy types and policy regimes); actuarial and underwriting services; and controlling the Farmers Texas agents who sell Farmers Texas auto insurance policies throughout the State. It is undisputed that FGI is the "control" person in the "Farmers Insurance Group of Companies" and thereby controls and directs conduct of the officers and directors of Farmers Texas.

16.     FGI was and is responsible for, *inter alia*, designing and directing the implementation of the auto policy types and policy regimes at issue in this Complaint; performing underwriting functions and actuarial services with respect to the auto policies at issue in this Complaint; and creating and implementing the unfair discrimination  practices and other misconduct alleged in this Complaint. In exchange for performing these "services" it renders, FGI receives a percentage of policy premiums paid on all Farmers Texas auto policies.

### III.    JURISDICTION AND VENUE

17.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the proposed class is a citizen of a state different from that of Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the proposed class consists of more than 100 class members, and (d) none of the exceptions under the subsection apply to this action. *See* Dkt. No. 54 at 3-5 (Court concluding it has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

18.     This Court has personal jurisdiction over FGI because FGI is registered to do

business in Texas, has sufficient minimum contacts in Texas, and otherwise intentionally avails itself of the markets within Texas through its business activities, such that the exercise of jurisdiction by this Court is proper and necessary.

19.     Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff Charles Grigson resides in this District, FGI conducts substantial business in this District, and a substantial part of the events giving rise to Plaintiffs' and Class Members' claims occurred in this District. Furthermore, Section 544.054 of the Texas Insurance Code states that violations of Section 544.052 must be filed in a district court located in Travis County, Texas. This Court is a district court located in Travis County.

## IV.     FACTUAL ALLEGATIONS

### A. Farmers Texas Is Completely Controlled by FGI

20.     Upon information and belief, Farmers Texas has few if any employees of its own.

21.     Furthermore, upon information and belief, all or nearly all of Farmers Texas's officers are employees of FGI and/or other Farmers entities, and based in California, FGI's principal place of business. For example, the Vice President and Treasurer of Farmers Texas, Ron Myhan, is also the Chief Financial Officer of Farmers Insurance Exchange ("FIE"), an entity whose role is described in further detail *infra*. Likewise, the Secretary of Farmers Texas, Doren Eugene Hohl, is an attorney employed by FGI. And the President of Farmers Texas, Jim Swope, is also employed by FGI in what is known as a "Territory Head" role. Indeed, Farmers Texas's 2015 Annual Statement filed with the Texas Department of Insurance ("TDI") was signed by these three officers, and notarized in Los Angeles, California (where FGI is headquartered) on February 18, 2016.

22.     All of Farmers Texas's management and claims services are provided through a "service agreement" with FIE. Upon information and belief, Farmers Texas does not participate in

pooling agreements, but does reinsure one hundred percent (100%) of its business with FIE. Through this reinsurance arrangement, the risk of loss on policies written by Farmers Texas rests with FIE.

23.    FIE, in turn, has an "attorney-in-fact" relationship with FGI, whereby FGI conducts all or nearly all functions relevant to this lawsuit on behalf of FIE/Farmers Texas, including the functions relevant to this lawsuit. FGI has been described by the Farmers Texas Vice-President Treasurer as the "control person" within the Farmers Insurance Group of Companies which includes Farmers Texas.

24.    At a December 2013 investor conference, FGI presented the following simplified chart of the Farmers business model:



25.    As part of an application for insurance through Farmers Texas, prospective policyholders are required to sign an adhesive (i.e., cannot be refused) proxy agreement, which designates "the President of Farmers Texas County Mutual Insurance Company and his successor,

6

each with full power of substitution, to act as my proxy and in my absence vote for me at any membership meeting of the Company ...." FGI controls Farmers Texas by means of these mass proxy designations that effectively centralize power in the hands of the President of Farmers Texas (an FGI employee or former employee), combined with FGI's placement of other affiliated employees as other officers of Farmers Texas.

26.     Indeed, FGI peforms nearly all duties regarding Farmers Texas auto policies (except claims adjustment) as alleged herein, and is responsible for, and committed, the conduct that forms the basis for Plaintiffs' claim in this action.

27.     For example, in August 2016, FGI's "corporate litigation supervisor" provided corporate representative testimony regarding the attorney-in-fact relationship. FGI undertakes the following non-exclusive list of duties on behalf of subsidiary companies including Farmers Texas: (1) payroll; (2) accounting; (3) tax; (4) human resources; (5) actuarial/underwriting; (6) product design; (7) advertising; (8) marketing; (9) management of insurance agents; (10) corporate governance; and (11) legal. Thus, nearly all of Farmers Texas's insurance related functions (except claims adjustment) are performed by FGI for which FGI retains a significant portion of the premiums paid by Texas policyholders on Farmers Texas policies. In exchange for these services, FGI collects what is referred to as a "management fee" or "underwriting fee" that is calculated as a percentage of the premium for each Farmers Texas policy.

28.     TDI has no regulatory jurisdiction over FGI because FGI is not, and never has been a licensed insurer in any state. FGI, though not an insurer, is however in the insurance business in Texas based upon its total control of Farmers Texas and retention of a significant portion of premiums paid on Farmers Texas auto policies. FGI is engaging "in the business of insurance" in the State of Texas through performing various insurance-related functions described herein.

**B. Farmers Texas Is a Major Auto Insurance Provider in Texas and Auto Insurance Is a Significant Household Cost**

29.     According to statistics maintained by the Texas Department of Insurance ("TDI"), current as of July 2016, FGI's insurer-affiliate Farmers Texas provides insurance for over 1.3 million automobiles in the State of Texas, accounting for approximately 7.84% of the Texas auto insurance market.

30.     Auto insurance is the main form of driver responsibility legally required of Texas drivers, and is a significant expenditure for individuals and families. For many insureds/families, auto insurance premiums represent a significant percentage of annual household income.

**C. Facing Declining Market Share and Corresponding Declining Fees, FGI Rolls Out FSPA in Texas**

31.     In the years leading up to 2016, Farmers saw a significant decline in business and market share with respect to its auto insurance products, including in the Texas market.  Because FGI's management fee revenues are directly tied to the premiums paid by the insureds, this decline in business resulted in a corresponding decline in FGI's revenues. Indeed, FGI's securities filings have stated "the ongoing financial performance of the Company [FGI] depends on the volume of business written" by the Farmers Insurance Group of Companies.

32.     In an attempt to ebb and/or reverse these revenue losses, in early 2016, FGI introduced FSPA, which FGI believed would bring in new business due to FSPA's significantly lower premium rates for identical or substantially identical coverage found in FA2.  FGI rolled out FSPA in Texas on or around January 4, 2016.  FSPA was created and introduced in Texas by FGI as a new insurance product at a time when  all or nearly all Farmers Texas insureds were insured by FA2 policies.

33.     As confirmed by materials submitted by FGI to TDI and FGI's internal records, premium rates under FSPA are generally significantly lower than the rates under FA2 for the same

or materially the same coverage. In fact, in nearly all cases, the premium rates a new customer would pay under FSPA are lower than what the same customer (with the exact same risk profile and other details) would pay under an FA2 policy for identical or virtually identical coverage.

34. An October 2015 FGI analysis of 100,000 actual FA2 policies for existing Farmers Texas policyholders, confirmed that, on average, these same FA2 policyholders would have been charged 8.5% less in an apples-to-apples comparison, had their policies been issued under FSPA. This analysis was apparently based on FA2 rates in place as of October 2015. FA2 rates were apparently increased in or around December 2015, prior to the FSPA rollout in Texas.

35. The 8.5% differential discussed above significantly understated the differences between FSPA and FA2 rates. In fact, upon information and belief, FGI introduced FSPA with rates that were on average 20% lower than FA2 rates for identical or virtually identical coverage. Upon information and belief, this updated premium differential was not shared with TDI.

D. **FGI Takes Aggressive, Deliberate Steps to Preclude Existing FA2 policyholders From FSPA.**

36. From the very moment FGI conceived of the FSPA, all the way through to the present, FGI has employed aggressive, deliberate, and highly-deceptive measures to preclude existing FA2 policyholders from FSPA and its corresponding lower rates. As a matter of internal company policy, FGI has implemented a multi-faceted scheme that deliberately resulted in existing FA2 policyholders paying higher premiums than otherwise identically-situated new policyholders for the same or virtually identical coverages. FGI concocted an internal company policy whereby FGI systematically discriminated against existing policyholders, precluding them from the lower FSPA rates provided to all new customers. FGI instructed FGI personnel and Farmers agents to categorically conceal and direct the concealment of the lower FSPA rates only from existing policyholders, otherwise categorically precluded existing policyholders from the FSPA rates, and

repeatedly threatened Farmers agents to prevent deviation from the discriminatory policy.

37.     Among other things, in furtherance of this scheme, FGI has aggressively and strictly limited and prohibited any FSPA "rewite" activity, and hidden the existence of FSPA and its corresponding lower rates from Farmers Texas existing FA2 policyholders. FGI's unfair discrimination, in effect, results in the FA2 policyholders subsidizing the lower FSPA rates offered only to new customers.

38.     Farmers Texas auto policies are generally six (6) months in duration. With over one million Farmers Texas insured vehicles in the State, several thousand existing Farmers Texas policies, on average, are subject to policy renewal every day.

39.     FGI has deliberately adopted, and implemented through various measures, a policy of concealing FSPA from existing FA2 policyholders, including during the critical time at which FA2 customers' policies come up for renewal every six months.

40.     FGI's unfair discrimination against existing Farmers Texas FA2 policyholders is arbitrary and without any actuarial basis.

41.     It is FGI's intent to extend FSPA policies (and the FSPA lower rates) only to new Farmers Texas customers.  FGI has implemented its unfair discrimination by, among other things, keeping existing FA2 policyholders in the dark about FSPA and its corresponding lower rates, and continuing to renew all or nearly all existing Farmers Texas FA2 policyholders in FA2 policies. This has been made clear to FGI's affiliated employees and Farmers Texas agents. For example, the "Farmers Smart Auto Plan Agency Guide," a manual issued to Farmers Texas agents by FGI, states the following:

> [E]xisting households will remain in FA[2] rather than converting
> to the new rating plan. In order for our auto growth strategy to work,
> we will maintain two auto rating plans going forward: one for new
> business [FSPA] and one for existing business [FA2]. Without two

books, we would have to convert FA[2] to FSPA, causing significant premium disruption due to segmentation changes.

42.     In a January 2016 FGI email titled "New Smart Auto Plan Rewrites," the President of Farmers Texas, Jim Swope, explicitly implemented FGI's unfair discrimination practices by instructing the following to all Farmers Texas agents: "we [cannot] rewrite our current customers at this rate."

43.     Similarly, in an FGI document titled "Farmers Smart Plan Auto[SM] FAQs" the following question was posed and answered:

> "**Q.** How long will Farmers sustain the FA2/2.5 and the FSPA books?
>
> **A.** We plan to sustain both books for many years; we have no plans to non-renew or roll the FA2/2.5 book into FSPA."

44.     These materials establish that FGI has denied existing Farmers Texas FA2 policyholders the FSPA's lower rates -- and seeks to continue such unfair discrimination into the foreseeable future.

45.     FGI conceals FSPA from existing Farmers Texas FA2 policyholders, and precludes FA2 policyholders from FSPA, as an unlawful means to have loyal existing policyholders unwittingly subsidize the lower rates being charged to new FSPA customers.

46.     As part of its unfair discrimination, FGI has admonished Farmers Texas Agents not to rewrite FA2 customers into FSPA except "only in very select circumstances." FGI's arbitrary re-write ceiling and its threats to Farmers Texas agents underscore FGI's conduct as unfairly discriminatory and without an actuarial basis.

47.     Other documents and direction provided by FGI to agents were designed to relay the message to agents that their customer retention rate (and, correspondingly, the agent's bonus) will be negatively impacted by any "re-writes" to FSPA (i.e., where a customer is transferred from

FA2 to FSPA).

48.     Farmers Texas agents, as well as other agents nationwide, have gotten clear instructions and threats that they are not rewrite FA2 policyholders to FSPA or even to disclose FSPA and the corresponding lower FSPA rates to their existing FA2 policyholders. The following was published in the Summer 2016 issue of The Voice (a publication for Farmers insurance agents):

> Here we are in 2016 and Smart Plan Auto and Smart Plan Home are rolling out. **Agents throughout the U.S. are being instructed not to rewrite more than five percent of their book or face termination** … Don't be surprised if the big bad team [of Farmers lawyers] gets called in to defend for unfair discrimination ….
>
> (Emphasis added.)

49.     Likewise, Farmers agents have recognized the serious ethical problem that FGI has created.  The Winter 2015-2016 Issue of The Voice contains an open letter to FGI by a "[a] Very, Very Concerned Agent" that reads:

> Is it **Ethical** and **Moral** to charge new customers less than existing clients? …. [Farmers] just keep charting the higher rate when in fact they know that their actuarial risk data shows the policyholder should pay less. Is that **Ethical**? Is that **Moral**? … Farmers will not allow the agent to rewrite their current policyholders to the new "Smart" policies because even though the existing customer should be assessed the proper underwriting rate, <u>Farmers would rather keep them in a separate program for "Policy Premium Preservation"</u>. The problem with that scenario is the existing policyholders are subsidizing the new policyholders and not being charged the proper rate.
>
> (Underlined emphasis added.)

50.     Upon information and belief, every existing Farmers Texas policyholder has an agent assigned to them, either by prior relationship or simply by territory.

51.     Furthermore, in the event that an existing Farmers Texas FA2 policyholder attempts to contact FGI directly (for example, by dialing FGI's toll free customer service numbers) to

inquire about rates or renewals, FGI's customer service representatives ("CSRs") are trained to simply refer such inquiries to the assigned agent. In such fashion, the existence of FSPA is not disclosed. As alleged *infra*, a similar exchange occurred when Plaintiff Grigson attempted to reach FGI's customer service department.

52.     While FGI's *internal* policies regarding precluding existing FA2 policyholders from FSPA have been made clear to FGI's affiliated employees and Farmers Texas agents, at no point did FGI inform TDI that it would attempt to hide, conceal, and actively as a matter of internal company policy preclude current FA2 policyholders from the cheaper FSPA when their FA2 policies came up for renewal.

53.     To the contrary, FGI falsely told TDI that FSPA would be easily accessible to existing FA2 policyholders.

54.     In order to further constrain agents from switching existing FA2 policyholders to FSPA, FGI has implemented a laborious procedure to even obtain an FSPA quote for a current customer, which process requires, among other things, specific FGI-level approval.

55.     Even for those lucky few FA2 policyholders who manage to learn about FSPA, they are nevertheless precluded from FSPA pursuant to FGI's internal policy of preclusion. And even for those lucky few FA2 policyholders who manage to learn about FSPA *and* get an FSPA quote, FGI deceptively and unfairly tries to dissuade them, right to the very end, from making the switch to FSPA.

56.     Before being switched, as a final step, FGI requires the existing FA2 policyholder to execute a "Policyholder Cancellation and Rewrite Agreement." The Agreement includes statements from FGI designed to discourage existing FA2 policyholders from going through with enrollment in FSPA.

57.     For example, FGI arbitrarily penalizes existing FA2 policyholders who, in rare instances, have been able to be rewritten into FSPA. These penalties are fabricated by FGI for the unfair and improper purpose of dissuading FA2>FSPA switches. For example, FGI imposes a "new business policy fee" despite the fact that these existing, loyal policyholders are simply attempting to maintain their business with Farmers Texas at the lowest rates to which they are entitled. Noncoincidentally, the "new business policy fee" was implemented on November 17, 2015, less than two (2) months before FGI launched FSPA in Texas.

58.     Furthermore, upon switching into FSPA, FGI deprives existing policyholders of loyalty benefits and/or discounts that have accrued through their longstanding relationship with Farmers, such as Farmers Auto Rewards and other "certain discounts" as described in the Policyholder Cancellation and Rewrite Agreement. In the context of an illegal scheme that depends upon abusing the loyalties of existing FA2 policyholders, FGI penalizes these very policyholders by depriving them of loyalty-accrued benefits when they manage to be rewritten into FSPA.

59.     In addition, FGI's Policyholder Cancellation and Rewrite Agreement misleadingly states: "Your new policy will be written on a different contract of insurance than your current policies, and there are coverage differences between the two." In reality, the FA2 and FSPA policies contain the identical or virtually identical coverages. For example, in a document titled "Texas Smart Plan Auto Policy Contract Clarification," it was stated that "[t]he new Smart Plan Auto contract is very similar to the old [FA2] contract" and further stated that any differences were "subtle[.]" And in presenting FSPA to the Farmers agents, FGI emphasized that FSPA provided "better coverage" despite also admitting that "Rewrites [from FA2 to FSPA] … [t]ypically reduce customers' premium."

60.     Only after signing the Policyholder Cancellation and Rewrite Agreement may an

existing FA2 customer have his/her policy rewritten into an FSPA policy – and thereby obtain the significant cost savings resulting from the switch.

### E. FGI Increased FA2 Rates Just Before Introducing FSPA

61.    To make matters worse for existing FA2 policyholders, in December 2015 (just weeks before launching FSPA in Texas), FGI significantly increased the Farmers Texas auto premium rates under FA2. It was the largest rate increase FGI had taken in years, and only exacerbated the already-existing price gap between FA2 and FSPA.

62.    On information and belief, the fact that previous (pre-increase) FA2 rates were used in FGI's 100,000 policy sample analysis, described above (*see supra* at ¶¶ 33-34), partially explains why such analysis may have grossly understated the true differences between FSPA and FA2 rates for the same or virtually identical coverage.

### F. FGI's Discriminatory Misconduct Has Harmed, and Continues to Harm, Hundreds of Thousands of Existing FA2 policyholders, and Has Greatly Enriched FGI

63.    As a result of FGI's unfair discrimination and unfair practices in the business of insurance alleged herein, Plaintiffs and as many as one million existing Farmers Texas customers have sustained economic damages in the form of higher policy premiums than what they would have paid for identical or virtually identical coverage had they been placed into FSPA on or after January 4, 2016.

64.    As a direct result of FGI's unfair discrimination FGI has been unjustly enriched through its receipt of millions of dollars in additional fees and revenues.

65.    Plaintiffs and the proposed class are entitled to recover economic damages and injunctive relief for FGI's unfair discrimination in violation of § 544.054 Texas Insurance Code.

66.    Further, because FGI's unfair discrimination conduct was knowingly committed, the Court should impose statutory civil penalties under Texas Insurance Code 544.054.

67.     Each day there are several thousand Farmers Texas auto policies up for renewal. Thus, every day that FGI's misconduct alleged herein continues unabated, thousands of existing Texas FA2 policyholders are victimized and re-victimized. To end the unfair discrimination and to mitigate the economic damages to each class member, prompt injunctive relief is necessary and appropriate under these circumstances.

68.     Prompt injunctive relief is necessary and appropriate here for the additional reason that FGI's strong-arm conduct in threatening agents and concealing FSPA from existing FA2 policyholders not only results in existing FA2 policyholders paying higher premiums than they should, it also has significantly corrupted, and left unchecked will continue to corrupt, the very relationship between Farmers agents in Texas and the Texas policyholders whom these agents serve. FGI has intimidated these Farmers agents into non-disclosure to their FA2 policyholders of their eligibility for potential lower premiums provided in the FSPA Plan are causing irreparable harm to the relationship between Farmers Texas agents and the FA2 policyholders they serve.

## V.     PLAINTIFFS' INDIVIDUAL FACTS

### A. Plaintiff Charles Grigson

69.     Plaintiff Charles Grigson has been a Farmers Texas auto policyholder since approximately 1981.

70.     On or about January 4, 2016 and for several months thereafter, Plaintiff Grigson was insured through two FA2 policies (policy numbers 04501-30-31 and 0448-78-26) created, underwritten, marketed, and sold by FGI and insured through FGI's affiliate Farmers Texas.

71.     Plaintiff Grigson was not advised or made aware on or after January 4, 2016: of FSPA or the lower premium rates available under FSPA; that FGI was only making FSPA available to new customers; and that Plaintiff Grigson and other existing FA2 policyholders were being unfairly discriminated against and were being forced to subsidize FGI's FSPA "growth plan"

to enrich FGI through additional fees.

72.    On or about April 12, 2016 (04501-30-31), and May 4, 2016 (0448-78-26), respectively, after the launch of FSPA, Plaintiff Grigson received "Auto Insurance Renewal Offer" letters from Defendant FGI offering renewal under FA2 for both of Plaintiff Grigson's policies. The letters stated that FGI "appreciate[d] the opportunity to provide continued coverage for you and your family" and purported to reward Plaintiff Grigson by offering certain benefits, including Incident Forgiveness and Guaranteed Renewal, "in recognition of your continued business with Farmers." The quoted six-month FA2 rates were $1568.00 (04501-30-31) and $1485.00 (0448-78-26), respectively, for a total of $3053.00 for six months.

73.    In early May 2016, Plaintiff Grigson learned of the existence of FSPA and the potential for lower auto insurance rates for which he might be eligible.

74.    On or about May 19, 2016, Plaintiff Grigson dialed FGI's customer service line and spoke to a customer service representative ("CSR") named Susan. CSR Susan asked Plaintiff Grigson whether he was a new or existing policyholder. Once she determined that Plaintiff Grigson was an existing policyholder, she referred Plaintiff Grigson back to his agent. When Plaintiff Grigson asked CSR Susan about FSPA, she stated that Plaintiff Grigson should direct those questions to his agent.

75.    Next, Plaintiff Grigson approached his Farmers Texas agent, Ms. Shelley Adam, and inquired about lowering his premium through being rewritten into FSPA.

76.    On or about May 26, 2016, Plaintiff Grigson's agent, Ms. Shelley Adam, retrieved through a FGI web-based platform a side-by-side comparison of (a): Plaintiff Grigson's then-current FA2 premium and coverages; and, (b) a quote using FGI's rating algorithm for an FSPA premium with identical or materially the samecoverages. While Plaintiff Grigson's FA2 premium

was $3053.00, his quote for identical or materially the same coverage under FSPA was $2440.60. In other words, switching into the FSPA would save him $612.40 (or approximately 20%) for a single policy period.

77.     On information and belief, had Plaintiff Grigson's FA2 policy been rewritten under FSPA instead of FA2 (for materially identical coverage) as of January 4, 2016, Plaintiff Grigson's premium from January 4, 2016 through May 2016 would have been significantly lower than the FA2 premium rate he actually paid during that period.

78.     Although FGI communicated the more expensive FA2 renewal offer to Plaintiff Grigson, FGI did not affirmatively apprise Plaintiff Grigson of the significantly reduced FSPA rates or even FSPA's existence.

79.     On or about May 26, 2016, Plaintiff's Grigson's agent informed Plaintiff that she was instructed by FGI that FSPA was only for new customers, but that FGI had made arrangements for it to be available to Plaintiff Grigson as an exception to this rule.

80.     Plaintiff Grigson enrolled in FSPA on or about June 2, 2016, and was required to sign the Policyholder Cancellation and Rewrite Agreement.

81.     As a result of Defendant's misconduct alleged herein, Plaintiff Grigson has been economically harmed by paying higher premium rates in and after January 2016.

**B.  Plaintiff Lisa Hoing**

82.     Plaintiff Lisa Hoing has been a Farmers Texas auto policyholder since at least early 2015.

83.     At all times material to this case, Plaintiff Hoing was insured through an FA2 policy (policy number 04572-73-04) created, underwritten, marketed, and sold by FGI and insured through FGI's affiliate Farmers Texas.

84.     Plaintiff Hoing's FA2 policy has been subject to renewal or expiration at least five

(5) times since the January 2016 launch of FSPA, the first of which occurred in May 2016.

85.     Pursuant to FGI's internal scheme to preclude Plainitff Hoing and other FA2 policyholders' access to FSPA, Plaintiff Hoing was not made aware of the existence of FSPA, nor was she switched to FSPA at the time of her policy renewal.

86.     Upon information and belief, had Plaintiff Hoing's FA2 policy been issued either as of January 4, 2016 or at renewal in May 2016 under FSPA instead of FA2, Plaintiff Hoing's premium would have been significantly lower than the FA2 premium rate she actually paid.

87.     At no time was Plaintiff advised or made aware of the existence of the FSPA or the lower premium rates available, and that FGI was only making FSPA available to new customers. Further, Plaintiff Hoing and other existing FA2 policyholders were being unfairly discriminated against and were being forced to subsidize FGI's FSPA "growth plan" to enrich FGI through additional fees.

88.     To the contrary, FGI addressed a renewal offer letter to Plaintiff Hoing that suggested  she was being financially rewarded for maintaining her business with Farmers. That letter thanked Plaintiff Hoing for the "opportunity to provide continued coverage for you and your family" and indicated that Plaintiff Hoing was being financially rewarded for his "continued business with Farmers."

89.     Had Plaintiff Hoing been advised of FSPA and the corresponding lower FSPA rates, and been offered to switch to FSPA, Plaintiff Hoing would have switched to FSPA as of January 2016 to receive lower rates for identical or materially the same coverage.

90.     Upon information and belief, had Plaintiff Hoing's FA2 policy been rewritten under FSPA instead of FA2 (for materially identical coverage) either as of January 2016 or at renewal in May 2016, Plaintiff Hoing's premium would have been significantly lower than the FA2 premium

rate she actually paid.

91.     As a result of Defendant's misconduct alleged herein, Plaintiff Hoing has been economically harmed by paying higher premium rates since January 2016.

### C. **Plaintiff David Kelly**

92.     Upon information and belief, Plaintiff David Kelly has been a Farmers policyholder since approximately 1996.

93.     On or about January 4, 2016 and until approximately November 2017, Plaintiff Kelly was insured through an FA2 policy (policy number 04499-91-31) created, underwritten, marketed, and sold by FGI and insured through FGI's affiliate Farmers Texas.

94.     For each FA2 renewal period since FSPA's January 2016 launch, and beginning on or about March 16, 2016, Plaintiff Kelly received "Auto Insurance Renewal Offer" letters from Defendant FGI offering renewal under FA2 for Plaintiff Kelly's policy. These letters stated that FGI "appreciate[d] the opportunity to provide continued coverage for you and your family" and purported to reward Plaintiff Kelly by offering certain benefits, including Accident Forgiveness, Incident Forgiveness and Guaranteed Renewal, "in recognition of your continued business with Farmers."

95.     During this time period from January 2016-November 2017, Plaintiff Kelly's FA2 policy was renewed on multiple occasions. Plaintiff Kelly's FA2 premiums during this time period ranged between $879-$1064 for each six month policy period.

96.     In or around November 2017, Plaintiff Kelly learned of the existence of FSPA. Plaintiff Kelly's agent, Mr. Michael Woods, retrieved through a FGI web-based platform a side-by-side comparison of (a): Plaintiff Kelly's then-current FA2 premium and coverages ($1,064.00); and, (b) a quote using FGI's rating algorithm for an FSPA premium identical or materially the same coverages. While Plaintiff Kelly's FA2 premium was $1064.00, his quote for identical or

materially the same coverages under FSPA was $370.00 with a $30.00 new policy fee. In other words, Plaintiff Kelly learned that switching into the FSPA would save him $664.00 (or approximately 62%) for a single policy period.

97.    On information and belief, had Plaintiff Kelly's FA2 policy been rewritten under FSPA instead of FA2 (for materially identical coverage) either as of January 4, 2016 or at his first renewal after January 4, 2016, Plaintiff Kelly's premium through November 2017 would have been significantly lower than the FA2 premium rate he actually paid during that period.

98.    Although FGI communicated the more expensive FA2 renewal offer to Plaintiff Kelly, FGI did not affirmatively apprise Plaintiff Kelly of the significantly reduced FSPA rates or even FSPA's existence.

99.    Plaintiff Kelly enrolled in FSPA on or about November 28, 2017, and was required to sign the Policyholder Cancellation and Rewrite Agreement.

100.    As a result of Defendant's misconduct alleged herein, Plaintiff Kelly has been economically harmed by paying higher premium rates since January 2016.

## VI.    CLASS ACTION ALLEGATIONS

101.    Plaintiffs bring this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) against FGI on their own behalf and on behalf of the Class defined below:

> All Farmers Texas auto policyholders who had an active FA2 (or 2.5) policy in effect on or after January 4, 2016.

102.    Excluded from the Class are: (a) any Judge or Magistrate presiding over this action, and members of their families; (b) FGI and affiliated entities, including but not limited to FIE and Farmers Texas, within the Farmers Insurance Group of Companies, their employees, officers, directors, and licensed agents; (c) FGI's legal representatives, assigns and successors; and (d) all

persons who properly execute and file a timely request for exclusion from any Court-approved class.

103.    Plaintiffs reserve the right to narrow or expand the foregoing class definition, or to create subclasses as the Court deems necessary.

104.    Plaintiffs meet the prerequisites of Rule 23(a) to bring this action on behalf of the Class.

105.    **Numerosity**: While the exact number of Class Members cannot be determined without discovery, they are believed to consist of as many as one million Farmers Texas auto policyholders. The exact number of Class Members can readily be determined upon review of policy information and other records maintained by FGI. The Class Members are therefore so numerous that joinder of all members is impracticable.

106.    **Commonality**: Common questions of law and fact exist as to all Class Members, including but not limited to:

a.    Whether FGI is a "person" within the meaning of Section 544.052 of the Texas Insurance Code;

b.    Whether FGI, through its conduct alleged herein, has engaged in unfair discrimination between individuals of the same class and of essentially the same hazard in the amounts of premiums, policy fees, or rates associated with the FA2 and FSPA policies;

c.    Whether FGI, through its conduct alleged herein, has permitted the unfair discrimination between individuals of the same class and of essentially the same hazard in the amounts of premiums, policy fees, or rates associated with the FA2 and FSPA policies;

d. Whether there is a premium rate differential between the premium rates Plaintiffs and Class Members paid under FA2, and the premium rates they would have paid for identical or virtually identical coverage under FSPA;

e. Whether Plaintiffs and Class Members are entitled to damages and/or restitution;

f. Whether Plaintiffs and Class Members are entitled to equitable relief against FGI, including an injunction stopping FGI's alleged misconduct; and

g. Whether FGI's conduct alleged herein was committed knowingly.

107. **Typicality**: Plaintiffs' claims are typical of Class Members' claims. Plaintiffs and Class Members were all subject to FGI's conduct alleged herein. Plaintiffs have substantially the same interest in this matter as all other Class Members, and their claims arise out of the same set of facts and conduct as all other Class Members.

108. **Adequacy of Representation**: Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in insurance, insurance discrimination, class action, and federal court litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of Class Members. Plaintiffs' claims are coincident with, and not antagonistic to, those of the other Class Members they seek to represent. Plaintiffs have no disabling conflicts with Class Members and will fairly and adequately represent the interests of Class Members.

109. The elements of Rule 23(b)(2) are met. Absent injunctive relief, FGI will continue to commit the violations alleged. FGI has acted on grounds that apply generally to Class Members so that preliminary and/or final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

110. The elements of Rule 23(b)(3) are met. Here, the common questions of law and fact enumerated above predominate over the questions affecting only individual Class Members, and

a class action is the superior method for fair and efficient adjudication of the controversy. Although many other Class Members have claims against FGI, the likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is furthermore not efficient, timely or proper. Timing concerns are especially appropriate where, as here, thousands of Class Members are being victimized on a daily basis by FGI's illegal conduct. Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. In addition, individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. Plaintiffs' counsel, highly experienced in insurance, class action, and federal court litigation, foresee little difficulty in the management of this case as a class action.

## SOLO CAUSE OF ACTION
### VIOLATION OF TEXAS INSURANCE CODE § 544.052
### (INDIVIDUALLY AND ON BEHALF OF THE CLASS)

111.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

112.    Section 544.052 of the Texas Insurance Code states that "[a] person may not in any manner engage in unfair discrimination or permit unfair discrimination between individuals of the same class and of essentially the same hazard, including unfair discrimination in … the amount of premium, policy fees, or rates charged for a policy or contract of insurance."

113.    Section 544.054 of the Texas Insurance Code states that "[a] person who has sustained economic damages as the result of a violation of Section 544.052 may maintain only in a Travis County district court an action against the person who violated that section."

114.    FGI is a "person" within the meaning of the statute.

115.    Plaintiffs and the Class Members are "of the same class and essentially of the same

24

hazard" as otherwise identical Farmers Texas policyholders who received FSPA policies. More generally, existing Farmers Texas auto insurance customers are "of the same class and essentially of the same hazard" as otherwise identical new Farmers Texas policyholders. There is no legitimate actuarial justification or basis for charging an existing auto insurance customers higher premiums than an otherwise identical new auto insurance customer.

116. Through FGI's actions alleged herein, FGI has engaged in, directed, supervised, managed, and permitted, unfair discrimination with respect to premium, policy fees, or rates charged between individuals of the same class and of essentially the same hazard.

117. FGI's discriminatory conduct and differential treatment alleged herein was not based on sound actuarial principles. Texas Insurance Code § 544.053.

118. As a result of these violations, FGI is liable to Plaintiffs and Class Members for any and all premium amounts that Plaintiffs and Class Members paid for their FA2 policies, renewed on or after January 4, 2016, over and above the amounts they would have paid for identical or materially identical coverage had their policies been renewed on the same date under FSPA.

119. FGI is also liable for statutory penalties pursuant to Texas Insurance Code § 544.054, which provides that "[i]f the trier of fact finds that that the defendant knowingly committed an act prohibited by Section 544.052, the court may award a civil penalty in an amount of not more than $25,000 for each claimant."

120. FGI's illegal conduct alleged herein was committed knowingly and deliberately.

121. Further FGI was specifically aware that its conduct violated unfair discrimination laws. FGI has sophisticated counsel who are certainly well-versed in insurance unfair discrimination laws in Texas and elsewhere.

122. FGI is also liable for costs, attorneys' fees, expert witness fees, as explicitly

provided for by Section 544.054 of the Texas Insurance Code, as well as any other relief allowable in law or equity.

123. Finally, the Court should award preliminary and/or final injunctive relief against the practices alleged herein, which is expressly permitted pursuant to applicable federal and state law, including but not limited to, Federal Rule of Civil Procedure 65 and Texas Insurance Code Section 544.052(c)(2).

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all causes of action so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following judgment:

A. An Order certifying this Action as a class action;

B. An Order appointing Plaintiffs as Class Representatives, and appointing undersigned counsel as Class Counsel to represent the Class;

C. A Declaration that FGI's conduct described herein constitutes unfair discrimination in violation of the Texas Insurance Code § 544.052;

D. An Order awarding appropriate preliminary and/or final injunctive relief against the conduct of FGI described herein;

E. Payment to Plaintiffs and Class Members of all damages and/or restitution associated with the unfair discrimination for all causes of action in an amount to be proven at trial;

F. An award of attorneys' fees, expert witness fees, and costs, as provided by Texas Insurance Code § 544.054(c) and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class Members;

G. An award of statutory penalties, up to the maximum of $25,000 per Class Member claimant, for FGI's knowing violations of Texas Insurance Code § 544.054(e);

H. Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

I. Such other and further relief as this Court may deem just, equitable, or proper.

Dated: October 22, 2018.

RESPECTFULLY SUBMITTED,

/s/ Michael L. Slack

Michael L. Slack (TX Bar 18476800)
John R. Davis (TX Bar 24099518)
SLACK DAVIS SANGER, LLP
2705 Bee Cave Road, Suite 220
Austin, TX 78746
Tel.: 512-795-8686
Fax: 512-795-8787
mslack@slackdavis.com
jdavis@slackdavis.com

Joe K. Longley (TX Bar No. 0000014)
LAW OFFICES OF JOE K. LONGLEY
3305 Northland Dr. Suite 500
Austin, Texas 78731
Tel.: 512-477-4444
Fax: 512-477-4470
joe@joelongley.com

Roger N. Heller (CA Bar 215348) (*pro hac vice* anticipated)
Jonathan D. Selbin (NY Bar 3948684) (*pro hac vice* anticipated)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel.: 415-956-1000
Fax: 415-956-1008
rheller@lchb.com
jselbin@lchb.com

## CERTIFICATE OF SERVICE

I hereby certify that on ~~October 22, 2018~~, I ~~electronically~~ filed the foregoing with the Clerk of Court ~~using the CM/ECF system which~~ and will send notification of such filing to all counsel of record. through appropriate service means.

/s/ John R. Davis