IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

2019 JUL -3 AM 8:27

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | |
|---|---|
| MICHAEL J WOODS pro se, § § | |
| Intervenor - Plaintiff § § | |
| v. § § | |
| CHARLES GRIGSON, LISA HOING, and DAVID KELLY, Individually and on behalf of all putative class members, § § § § § | |
| Plaintiffs, § | Civil Action No. 1:17-cv 00088-LY |
| § § | |
| v. § § | |
| FARMERS GROUP, INC., a Nevada corporation, § § § § | |
| Defendant. § § | |

# MICHAEL J. WOODS'
# PLEA IN INTERVENTION

COMES NOW, MICHAEL J. WOODS pro se, ("Woods"), who joins this class action proceeding pursuant to Rule 60, Texas Rules of Civil Procedure. Woods seeks the Courts protection for himself and his fellow Plaintiffs. Woods respectfully shows the Court the following and seeks appropriate relief:

1

## I. INTRODUCTION

Woods joins this class action in support of Class Certification for the reasons infra. Woods will abide by the Court's Protective Order previously entered in this case. Through personal knowledge and belief, Woods respectfully shows the following:

## II. STANDING

Woods has standing to intervene in this cause as a current Farmers Texas County Mutual Insurance Company ("Farmers Texas") policyholder who has been, and continues to be, discriminated against by Farmers Group, Inc. ("FGI").[1] Woods' held a Texas Farmers auto insurance policy known as Farmers Auto 2.0 ("FA2") which was in effect on January 4, 2016. On that date, FGI ceased issuing the FA2 policy and in its place, began issuing a lower priced version[2] of Woods' FA2 policy with nearly identical coverage. The lower priced policy is called Farmers Smart Plan Auto ("FSPA"). Woods did not receive the benefits of lower premiums beginning January 4, 2016 when the FSPA became available. As a result, Woods was economically harmed by paying a higher premium from January 4, 2016 until his FA2 policy was rewritten to the FSPA policy.

Additionally, FGI charged Woods a new business policy fee for the FSPA policy however, Woods did not receive the lower new business rates FGI offers to other new business FSPA customers. Alarmingly, Woods continues to be economically harmed by unfair practices incorporated into the rewrite process (rewriting an FA2

---

[1] FGI is a Nevada based corporation which manages the Farmers Insurance Group of Companies. FGI controls the Farmers' property and casualty insurers and the appointed Farmers' insurance agents. FGI has complete oversight of the insurance policies including the development, construction, underwriting, pricing, and issuing.

[2] Product Versioning is a rating methodology utilized by FGI in several lines of property casualty insurance including auto, home, business, and business auto insurance. Product Versioning is specifically designed to attract new business, by offering lower rates, while maintaining higher rates for existing policy renewals.

policyholder to the FSPA policyholder). In other words, even though Woods is paying less for his FSPA policy than he paid for his FA2 policy, Woods is still paying more for his FSPA policy than new business FSPA policyholders.

### III. REWRITE AOB TOOL

Defendant asserts the following: *"Defendant used the **Rewrite AOB** rating tool (which Plaintiffs have been provided) to demonstrate to the Court that if you assume several facts – including that every FA2 policyholder had the exact same credit and driving record in January 2016 as they did when purchased their FA2 policyholder – then at least one-third of FA2 policyholders would in fact have paid more for the FSPA policy if they had rewritten at launch."*
(DEFENDANT'S RESPONSE TO PLAINTIFFS' OPPOSED MOTION FOR ORDER ON PLAINTIFFS' THIRD MOTION TO COMPEL DISCOVERY, pages 5-6, emphasis added)

The name itself, **"Rewrite AOB"**, identifies the rating tool as specifically designed to produce rates an existing FA2 policyholder would pay if they were rewritten to the FSPA policy. However, FGI's rewrite process (rewriting an existing FA2 policyholder to the FSPA policy) does not provide the same discounts and rating factors as FGI's new business process (writing a new consumer to FSPA). FGI fails to explain that the **Rewrite** AOB is not the same as a **New Business** AOB. Simply put, FA2 policyholders who are rewritten to the FSPA policy pay a higher rate than a new business FSPA policyholder.

For example, FGI allows new business Farmers Texas customers the opportunity to receive an Early Shopping Discount which applies a 10% discount to the rate of a new business FSPA policy as defined in **Exhibit 1**.[3] FGI applies this discount to new customers who purchase a FSPA policy at least seven days prior to the effective date of the new FSPA policy.[4] However, FGI prohibits Farmers' agents from using a future date when rewriting an existing FA2 policyholder to an FSPA policy. FGI's strict

---

[3] LEVERAGE PRICING TO ATTRACT CONFIDENT PLANNERS- "FSPA discount factors** **available for new business: Early Shopping Discount** (Was a discount in FA) .........10%" (emphasis added)

[4] For instance, an FSPA applicant has an insurance policy with another carrier and the policy does not expire until August 15, 2019. The new business FSPA applicant may purchase (in advance) an FSPA policy which will take effect on August 15, 2019. If the consumer purchases the FSPA policy on or before August 8, 2019 (which is at least seven days in advance of the effective date of the FSPA), then the new business FSPA policyholder receives a 10% reduction on the FSPA's premium.

3

rewrite program only allows the Farmers' agent(s) to rewrite an FA2 policy on the day of the rewrite transaction (which is the day the FSPA policy is issued). Therefore, the FA2 policyholder is universally precluded from receiving the Early <u>Shopping</u> Discount if rewritten to FSPA.

FGI's unfair rewrite practices apply to other discounts such as, but not limited to, the Prior Insurance Transfer Discount ("Transfer Discount"). FGI applies a Transfer Discount **(Exhibit 1)**[5] to the new business FSPA policy if the applicant has maintained insurance with a standard or a preferred insurance company.[6] Again, FGI universally precludes existing Farmers' policyholders from receiving the Transfer Discount since 2010. **(Exhibit 2)**[7] This means an FA2 policyholder, such as Woods, who faithfully maintained continuous insurance with Texas Farmers and is rewritten to the FSPA policy pays a higher rate than a new business FSPA policyholder who maintained auto insurance with an insurer other than Farmers. Additionally, a current FA2 policyholder who qualified for (and receives) the Transfer Discount and/or the Early Shopping Discount on their FA2 policy, will lose the discount if they are rewritten to FSPA. A new business FSPA policyholder and a rewritten FSPA policyholder are not treated the same even though: they both have the same FSPA policy.

If just the discounts mentioned above were available to FA2 policyholders and if the discounts were included on the Rewrite AOB (when Defendant used the Rewrite AOB for demonstration purposes) then the number of FA2 policyholders who would pay a higher premium if rewritten to FSPA would certainly be lower than one-third.

---

[5] *"\*\*Items like Early Shopper, Transfer, and Continuous Insurance are rating factors. They can have a positive effect on premium even though they are no longer displayed as discounts and may not be apparent to the customer."*

[6] FGI separates insurance carriers into three categories which are generally non-standard insurers, standard insurers, and preferred insurers. Applicants who are currently insured with a non-standard company may not be eligible to receive the Transfer Discount while applicants who are currently insured with a standard or preferred insurance company are eligible to receive a Transfer Discount on the FSPA policy. The preferred carrier discount is higher than the standard carrier discount.

[7] May 18, 2010, *"Applicants whose prior insurance was a member of Farmers Insurance Group of Companies will **continue to be ineligible for the Transfer Discount....**"* (emphasis added)

4

## IV. AUTO RATING PLANS

By designing at least three different rating methods, (one for the new business FSPA policyholder, one for the existing FA2 policyholder, and one for rewriting existing FA2 policyholders to the FSPA policy) FGI is optimizing the amount of premium an existing FA2 policyholder pays on renewal while at the same time, limiting the amount an existing FA2 policyholder can save if rewritten to FSPA while at the same time, growing new business by offering new business FSPA policyholders the lowest available rates.

The Rewrite AOB is nothing more than a manufactured distraction designed to divert the focus from the issue of discrimination. If FGI were offering the same rates to all policyholders, there would only be one rating plan. Even if there were a substantive difference between the FA2 policy and the FSPA policy, **which there is not,** (but if there were a difference) there would only be one rating plan for each policy and no reason to develop a rewrite rating plan. Since there is not a substantive difference between the FA2 and the FSPA, there should only be one rating plan for all policyholders not three (or more) different rating plans.

## V. FARMERS AUTO REWARDS

Defendant attempts to differentiate the FA2 policy from the FSPA policy by emphasizing that Farmers Auto Rewards ("Auto Rewards") are included on the FA2 policy but are not included on the FSPA policy.

*"For certification purposes, Farmers focuses on three differences between the policies that are meaningful to consumers. **First, the FA2 policy has Auto Rewards,** a set of three benefits FA2 policyholders automatically receive so long as they do not exceed a certain number of accidents or traffic tickets in any given period. **The Auto Rewards are Accident Forgiveness** (a policyholder's first accident over a three-year period will not result in a rate increase), **Incident Forgiveness** (minor traffic violations will not result in a rate increase), and Guaranteed Renewal (filing one or more claims will not lead to cancellation or non-renewal of the policyholder's auto insurance)."*
(DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, emphasis added, footnotes excluded, page 23)

5

Unquestionably, FA2 policyholders lose the benefits of Auto Rewards when rewritten to the FSPA policy, therefore FA2 policyholders cannot waive an existing accident if they are rewritten to the FSPA policy. However, FGI makes exceptions for Farmers' policyholders (other than FA2 policyholders) as demonstrated in Exhibit 3: *"...we will allow a customer **to continue to waive a qualifying accident on their new FSPA** policy when they move to one of the States shown above..."* (emphasis added)

Texas is one of the States on this list. Therefore, any existing Farmers' policyholder moving to Texas may utilize the Auto Reward of Accident Forgiveness and waive an accident to receive lower rates on their new FSPA policy. True to form, FGI universally precludes existing FA2 policyholders from receiving the same opportunity. In other words, Accident Forgiveness is available on the FSPA policy, just not for current Texas residents.

Defendant's also emphasize the value of incident forgiveness to differentiate the FA2 policy from the FSPA policy. Historically, after the initial underwriting of new business or, after the rewriting of a policy, FGI rarely (if ever) obtained a Motor Vehicle Report ("MVR")[8] on an insured after the policy was issued. Therefore, all traffic violations were automatically forgiven since all traffic violations were unknown to FGI.

It was not until more than a year after the launch of the FSPA, and well after Grigson's Class Action Complaint was filed, did FGI realize that they can't charge an FSPA policyholder for a traffic violation if they continue to not know about it. To put it another way, in order to remove incident forgiveness from the FSPA policy, FGI would need to obtain MVR's on FSPA policyholders to find out if there is an incident.

---

[8] An MVR is a consumer report, usually obtained from a third-party vender, which shows moving and non-moving traffic violations associated with the applicant. FGI requires Farmers' agents to obtain MVR's prior to FGI's issuance of a new business policy or when rewriting a policy. If the applicant purchases the insurance policy, FGI will reimburse the agent. However, if the applicant declines to purchase the policy, the Farmers' agent is not reimbursed for the cost of the MVR.

6

To correct this oversight, FGI announced that beginning December 2017, MVR's will be ordered for FSPA policyholders when the policy renews, which effectively removed Incident Forgiveness from the FSPA policy starting December 2017.

## VI. AUTO POLICY VERSIONING

To justify the open-book of business for FSPA policyholders and the closed-book of business for FA2 policyholders, Defendant's explain how disruptive a new version of the auto policies can be to existing policyholders:

*"In 2010, Farmers updated the Texas auto policy and created a new rating plan called Farmers Auto 2.0 ("FA2") for use by Farmers Texas...The FA2 policy was launched in Texas by non-renewing existing auto policies and offering customers an FA2 policy priced under the new rating plan. In the insurance industry, this is known as a "book roll. Book rolls can be very disruptive for an insurance company, its agents, and its policyholders, and the FA2 book roll was no exception."* **(DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION page 3)**

Undeniably, introducing a new version of an existing policy can be extremely disruptive to existing policyholders if you start out with a new rating plan that prohibits existing customers from receiving the same lower rates as new customers. That's exactly what happened in 2010 with the FA2 roll out as previously shown in **Exhibit 2:** *"Applicants whose prior insurance was with a member of the Farmers Insurance Group of Companies will continue to be ineligible for the Transfer Discount..."* (emphasis added)

In 2010, FGI rewrote all Farmers' policyholders to the new FA2 policy but didn't allow the rewritten policyholder to receive all available discounts on their new policy. As a result, a great many policyholders received a much higher rate on their new FA2 policy which caused a great deal of disruption to the Farmers' agents and policyholders.

Fast forward from 2010 to 2016 when FGI again introduces a new version (FSPA) of the Texas auto policy: *"Pursuant to TDI's determinations, Farmers Texas*

7

*launched the new FSPA policy in Texas on January 4, 2016."* (DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION p 7)

Not unsurprisingly, FGI again prohibited existing policyholders from obtaining the lower rates offered to new business customers. But with this policy launch, FGI attempted to avoid disruption by simply leaving existing Texas Farmers' policyholders with the higher priced FA2 policy. Although some FA2 policyholders, like Woods, did receive lower rates when rewritten to the FSPA policy, they are still denied access to the lowest rates.

## VII. CONCLUSION

Without exception, every FA2 policyholder (whether they were rewritten to the FSPA or they remain an FA2 policyholder) has been, and continues to be, economically harmed by FGI's discriminating practice of premium optimization. FGI intentionally denied every single person who owned an FA2 policy on January 4, 2016 access to the same discounts as new business FSPA policyholders. Just by designing two different rating plans for the FSPA policy (the discount included new business rating plan and the discount excluded rewrite rating plan) shows that FGI uniformly discriminates against all FA2 policyholders by universally precluding FA2 policyholders from receiving the same discounts offered to new business FSPA applicants.

FGI shouldn't be allowed to disguise the unfair treatment of FA2 policyholders by demonstrating a Rewrite AOB tool which itself unfairly discriminates against the FA2 policyholder. Nor should FGI be permitted to claim that the introduction of (another) new version of the Texas Auto policy justifies the unfair treatment of existing Texas Farmers policyholders.

## VIII. PRAYER

Woods prays for the Court's protection for himself and all Texas Farmers FA2 policyholders who have been (and continue to be) harmed by unfair discrimination and prays the Court Certifies a Class (or Classes) to protect all FA2 policyholders and that the Court provide relief to which Woods may show himself justly entitled.

Respectfully submitted,

MICHAEL J. WOODS
INTERVENOR pro se

*[signature]*

Michael J. Woods
12701 West Avenue Apt. 627
San Antonio, TX 78216
210-508-4523 Phone

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2019, I filed the foregoing with the Clerk of Court in person.

*Michael J. Woods*

Michael J. Woods

I hereby certify that on July 3, 2019, a true and correct copy of the foregoing document was served on all counsel of record via electronic mail.

*Michael J. Woods*

Michael J. Woods

# EXHIBIT 1

# TEXAS

Farmers Smart Plan Auto discounts and rating factors are designed to target New Business opportunities and Confident Planners. Automatic Bank Payments, ePolicy and Good Payer discounts are important to confident planners. The deeper you sell into the household, the more competitive the pricing becomes for the confident planners.

FSPA pricing creates value and opportunities to win by aligning options with the preferences of confident planners and other customers. Auto pricing will be most competitive when all lines of business are packaged together and all applicable discounts and rating factors are applied from the very first New Business quote, since discounts stack on top of one another.*

**FSPA discounts and factors** available for new business:**

- Early Shopper Factor (Was a discount in FA) .............................................. 10%
- Affinity Discount ................................................................................. 5%
- EFT Discount ..................................................................................... 2%
- Paid In Full Discount............................................................................ 5%
- ePolicy Discount ................................................................................. 2%
- Auto/Business Insurance Discount ......................................................... 2%
- Auto/Home Discount* ......................................................................... 20%
- Auto/Renters Discount* ....................................................................... 7%
- Auto/Mobile Home Discount* ............................................................... 8%
- Auto/Brokered Discount* ..................................................................... 8%
- Auto/Specialty Boat Discount ................................................................ 3%
- Auto/Specialty Motorcycle .................................................................... 2%
- Auto/Specialty Off Road Vehicles ........................................................... 5%
- Auto/Specialty Motorhome/Travel Trailer Discount ................................. 5%
- Auto/Umbrella Discount....................................................................... 2%
- Auto/Life Discount .............................................................................. 3%
- Multi Car and Homeowner Discounts..................................................... 6-20%
- Safe Driver Discount ............................................................................ 13% (avg.)
- Youthful HH Discount (available after 1 year in FSPA) ............................... 1-4%
- Good Student Discount ....................................................................... 7-15%
- Distant Student Discount .................................................................... 10%
- On Your Own Discount......................................................................... 10%
- Shared Family Car Discount .................................................................. 5%
- Good Payer Discount ........................................................................... 2%



*Customers with more than one residential policy receive only one discount – the highest applicable.

**Items like Early Shopper, Transfer, and Continuous Insurance are rating factors. They can have a positive impact on premium, even though they are no longer displayed as discounts and may not be apparent to the customer.



UNIVERSITY of FARMERS®

# TEXAS



### DISCOUNTS AND RATING FACTORS

- Multicar & Homeowner discount (6-20%) and Auto/Home discount (20%) stack, creating a discount for insuring multiple vehicles, ownership of a home, and an additional discount for insuring with Farmers®
- New stackable auto multi-line discounts for Umbrella (2%), Business (2%), Specialty (2-5%) and Brokered Home business through Kraft Lake® (8%)
- Early Shopping rating factor of 10%, decreases starting in month 13 by 0.5% for 6-month policies (1% for 12-month policies) at each renewal
- Better pricing for newer full coverage vehicles that are owned outright vs. financing or leasing
- Good Payer discount of 2% at New Business; removed at renewal if late payment occurs
- On Your Own discount of 10% for youthful drivers under 25 moving out of parents' household, decreases starting in month 13 by 0.5% for 6-month policies (1% for 12-month policies) at each renewal. Requires 12 months policy tenure and youthful driver must have been rated on the parent's policy
- Shared Family Car (Occasional Youthful) discount of 5% when driver is under age 21 and there are more drivers than cars in the household

### COVERAGE CHANGES

- All Farmers Smart Plan Auto policies will be issued with a single pay plan, regardless of the number of vehicles or policies in the household
- New policy contract better aligned with the industry, with fewer endorsements
- Not all coverage, limits and deductibles previously grandfathered in Farmers Auto will be available in Farmers Smart Plan Auto

**Eliminated coverage in FSPA:**
- K1, K2, rented camper/trailer, extended theft for stereo/tapes
- K3 as a separate coverage, features automatically included in K4 and K5
- Combined Single Limit liability options

**Available coverage in FSPA:**
- Rental car coverage $30, $50, or $100 per day
- K4: $25 per day, up to maximum of $500 (K4 will automatically include K3)
- K5: $50 per day, up to a maximum of $1,000, including Car Return Expense
- OEM and New Car Replacement sold as two separately rated endorsements
- Limited Mexico coverage expanded to up to 50 miles and added to the base contract at no additional cost
- New 250K limit option for Property Damage
- New $1,500 deductible options for Comprehensive and Collision

### THINGS YOU NEED TO KNOW

**Customer pain points addressed:**
- Discounts like Auto/Home, EFT and Paid in Full will be a consistent, flat percentage across all coverage and have no interactions with other discounts
- Amended rating rules that cause premium increases for the removal of a car or upon the death of a driver in the household
- Fewer instances of mature drivers, retirees or recent transfers being adversely affected by "No Hit" or "Thin Files"
- For trucks and SUVs, reduced pricing for 2WD vs. 4WD
- Larger trucks like Ford 450s are allowed if they are personal use cars

**Other**
- Preferred pricing structure for customers from standard carriers, previously offered as a Transfer discount
- Transfer discount and continuous insurance are now factors and will no longer be displayed as discounts; they are now components of the UW Tier Calculation

32-9642  8-15

# EXHIBIT 2

WOODS' PLEA IN INTERVENTION

 **FARMERS**

# Breaking
# *News*

Date: May 18, 2010

No: 10-0365

Co: Auto

ServicePoint: Austin

States: Texas

To: Agents and district managers

https://eAgent.farmersinsurance.com

Have you read this week's e-Achiever for the rest of the news that affects you?
*Click here.*

Subject: We're expanding the list of prior insurance carriers from which Farmers new-business Auto applicants may be eligible for the Transfer Discount.

Effective: Immediately

Synopsis: We've expanded the list of prior insurance carriers from which Farmers new-business Auto applicants may be eligible for the FA2 Transfer Discount.

Background: We're considering Farmers new-business Auto applicants with prior insurance with more carriers in determining eligibility for the Transfer Discount in Farmers Auto 2.0 (FA2).

In the past, applicants for Farmers new-business Auto had to qualify for a Transfer Discount based in part on the identity of their particular prior insurance carrier. As of May 17, applicants for Farmers new-business Auto may be eligible for a Transfer Discount if their prior insurance carrier was a member of a certain group of insurers.

For example, prior to May 17, an applicant for Farmers new-business Auto with prior insurance with Colonial County Mutual was not eligible for a Farmers Transfer Discount. As of May 17, Farmers will consider new-business Auto applicants with prior insurance with all insurers that belong to the Nationwide group of insurers for the Transfer Discount, including Colonial County Mutual.

*Discriminating against existing Farmers customers*

Applicants whose prior insurance was with any member of the Farmers Insurance Group of Companies will continue to be ineligible for the Transfer Discount. The exception is 21st Century, which is eligible for the Transfer Discount.

This change will be prospective only; we will not allow the Transfer Discount to be applied retroactively. Also, the validation process for the Transfer Discount will remain unchanged — documentation showing the applicant's prior insurance carrier must be scanned into the Image Center if we're unable to electronically verify the identity of the prior carrier. These documents should be scanned to "Prior Insurance – Standard Carrier" in the Image Center.

If you have questions, contact ServicePoint at (888) FARMERS or (888) 981-6377. For those using Voice over Internet Protocol (VoIP), dial (888) 327-6390.

John Henle
State Executive Director

Jim Swope
State Executive Director

Bulletins are retained for reference on the Agency Dashboard.
The information in this bulletin is confidential. Under no circumstances is it to be disclosed to anyone except as required by law or judicial process.

# EXHIBIT 3




https://eAgent.farmersinsurance.com

No.: 16-0479

Line of Business: Auto – Farmers Smart Plan Auto

Subject: Honoring Farmers Auto Rewards for Interstate Farmers Transfers

States: AL, AR, AZ, CO, CT, GA, IA, ID, IL, IN, KS, MD, MI, MN, MO, MT, ND, NE, NJ, NM, NV, OH, OK, OR, PA, SD, TN, TX, UT, VA, WI, WY

Effective: August 15, 2016

Background: Currently, customers with Farmers Auto Rewards (FAR) who move to a state that offers Farmers Smart Plan Auto (FSPA) will lose this benefit.

Based on agent feedback and a desire to retain valuable business, we will allow a customer to continue to waive a qualifying accident on their new FSPA policy when they move to one of the states shown above. In order for the accident to be waived, accident forgiveness must be purchased on their new policy.

### New Process:
- During the quoting process, when Farmers is returned as the immediate prior carrier, the system will prefill the prior carrier name as 'Other-No Discount'.
- You will be prompted to select the prior Farmers state (Quote tab) and enter their previous policy number (Buy tab).
- Upon submission, the policy will be referred to Underwriting to determine eligibility to override the prior accident.

The goal of these changes are to allow you to more effectively compete for this business and to provide a better experience for our customers.

If you have any questions, please contact us at (800) 909 - 7777.

Head of Territory

Published August 15, 2016

Bulletins are retained for reference on the Agency Dashboard.
The information in this bulletin is confidential. Under no circumstances is it to be disclosed to anyone except as required by law or judicial process.