# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| CHARLES GRIGSON, et al. | § | |
| | § | |
| v. | § | 1:17-CV-00088-LY |
| | § | |
| FARMERS GROUP, INC. | § | |

## ORDER

Before the Court are Plaintiff's Third Motion to Compel Discovery (Dkt. No. 105), Defendant's Response (Dkt. No. 107), and Plaintiff's Reply (Dkt. No. 109); and Plaintiff's Fourth Motion to Compel Discovery (Dkt. No. 140), Defendant's Response (Dkt. No. 151), and Plaintiff's Reply (Dkt. No. 154). The motions have been referred to the undersigned for resolution.

**A.      Third Motion to Compel (Dkt. No. 105)**

The case at hand is a putative class action in which Plaintiffs and other putative class members challenge the insurance premium rate setting practices of Farmers Group, Inc. ("FGI"). At issue is the alleged discrepancy between premiums charged under the Farmers Auto 2.0 and 2.5 policy regimes ("FA2") and the recently adopted Farmers Smart Plan Auto ("FSPA") regime. Plaintiffs allege that coverage under FA2 and FSPA is identical or virtually identical and that, despite this, premiums under FSPA are significantly lower. Plaintiffs further allege that when FGI rolled out FSPA in early 2016, it instructed its agents to only offer FSPA to new clients and to restrict access to existing clients who were covered under the FA2 regime, thereby requiring those customers to pay significantly more for the same or nearly identical coverage. Plaintiffs allege this is a discriminatory practice and illegal under Texas law.

In discovery, Plaintiffs have sought production of a number of rate change models FGI has produced internally. These tools, known as Auto Off Balance tools ("AOBs"), are models that take

into consideration a wide range of variables to help insurers set an adequate premium rate. FGI initially objected to producing certain AOB tools on the ground that they were created in anticipation of litigation and were covered by the work product doctrine. Plaintiffs challenged this assertion. Eventually, Plaintiff and FGI agreed that FGI would provide access to some of these AOBs. Dkt. 105, Ex. 1 at 9. FGI provided access to two AOBs, and Plaintiff served a 30(b)(6) deposition notice on FGI for a witness to testify regarding the tools. Prior to the deposition, FGI produced three more AOBs it had created for litigation purposes ("the produced AOBs"). Dkt. 105, Ex. 3; Ex. 4. At the deposition, Plaintiffs discovered the existence of an additional two AOBs ("the unproduced AOBs") also created by FGI at the direction of counsel. Dkt. 105, Ex. 4. Plaintiffs now seek production of these two unproduced AOBs, as well as the instructions from counsel and any other communications regarding the five total AOBs created for litigation ("the litigation AOBs").

Plaintiffs contend that by disclosing the produced AOBs, FGI waived its ability to assert work-product protection as to the unproduced AOBs, as all five AOBs relate to the same subject matter. Plaintiffs further argue that FGI's disclosure of the produced AOB tools also waived its attorney-client privilege as to any communications between defense counsel and FGI concerning the AOBs. Plaintiffs contend that FGI is attempting to use its privilege as both a sword and a shield, which itself is a ground to assert waiver. FGI, on the other hand, contends that Plaintiffs' argument conflates the attorney-client privilege and the work-product doctrine. FGI denies it has waived its attorney-client privilege, and argues that the production of the AOBs prior to the deposition did not constitute a subject matter waiver as to all AOBs, because subject matter waiver is only warranted when the quality or substance of the attorney's work is called into question by the party asserting the privilege. FGI denies that it has called into question the quality or substance of the work product

involved in the produced AOBs. FGI objects to production of the remaining AOBs and any communications between attorneys and FGI regarding the same.

Federal Rule of Civil Procedure 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." FED. R. CIV. P. 26(b). Discoverable information is not limited to admissible evidence, but includes anything "reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *see also Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991). Courts traditionally construed "relevance" broadly: information was considered relevant if it encompassed any matter that bore on, or that reasonably could lead to other matter that could bear on, any issue in the case. *Coughlin*, 946 F.2d at 1159. The amendment to Rule 26(b) to allow discovery only of matter relevant to a party's "claim or defense" was intended to narrow the scope of discovery. And it is well established that "matters relating to discovery are committed to the discretion of the trial court." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 347 (5th Cir. 2004).

There is no question that FGI waived its right to assert work product protection as to the three AOBs produced prior to the corporate representative deposition. The issue is whether by its purposeful disclosure of these AOBs produced for litigation purposes, FGI also waived work product or attorney-client protection as to other matters that are related to the produced AOBs. Unlike the attorney client privilege, the work product doctrine is governed, even in diversity cases, by the uniform federal standard embodied in Federal Rule of Civil Procedure 26(b)(3). *Dunn v. State Farm*, 927 F.2d 869, 875 (5th Cir. 1991) (applying state law to claims of attorney-client privilege but federal common law to work-product); *Davis v. United States*, 2006 WL 2883042 at n.1 (W.D. La. Oct. 4, 2006) (noting that federal law of work product doctrine applies in a diversity case).

Work-product and attorney-client privileges are also distinct with respect to waiver, and waiver of one does not necessarily mean waiver of the other. *United States v. Nobles*, 422 U.S. 225, 239 (1975); *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) ("The work product privilege is very different from the attorney-client privilege."); *Doe 1 v. Baylor Univ.*, 320 F.R.D. 430, 435 (W.D. Tex. 2017). The attorney-client privilege promotes full and frank discussion between counsel and client. *Upjohn v. United States*, 449 U.S. 383, 389 (1981). Generally, "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999). Work-product privilege, on the other hand, protects the attorney's research, analysis, thought processes, and trial strategy from discovery prior to trial, thus supporting the adversarial judicial system. *Dunn*, 927 F.2d at 875. Work product typically constitutes "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . including the other party's attorney." FED. R. CIV. P. 26(b)(3).

Waiver in the work product context typically only applies to the document actually disclosed. *S.E.C. v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. 2006). A more general subject matter waiver is usually reserved for instances in which the quality or substance of the attorney's work product has been directly placed at issue in the litigation. *Baylor*, 320 F.R.D at 442; *Feld v. Fireman's Fund Ins. Co.*, 991 F.Supp.2d 242, 255 (D.D.C. 2013). In order to constitute subject matter waiver, work product must directly place at issue in litigation the quality or substance of an attorney's work. *Baylor*, 320 F.R.D. at 442. It is only when work product is the direct subject of litigation that disclosure of the product may constitute a subject matter waiver. *Id.*; *Feld*, 991 F.Supp.2d at 253.

Here, FGI has used the three produced AOBs to suggest that certain percentages of the proposed Class are undamaged. Dkt. No. 127-28. By doing so, FGI has waived the work product protection as to the subject matter of the Litigation AOBs as a whole. FGI has directly placed at issue in this current suit the quality and substance of the Litigation AOBs. By only producing some of the AOBs it has created in connection with this litigation, it appears to that FGI has "cherry picked" its claim of privilege as to the remaining AOBs, something courts do not permit.. *U.S. ex rel. Figueroa v. Covan World-Wide Moving, Inc.*, 2014 WL 5461995, at *3 (D.S.C. Oct. 27, 2014). For example, as Plaintiffs rightly note, in its briefing on the class action certification question FGI on more than one occasion underscores the results of the January 2016 Litigation AOB to argue that it is "undisputed" that one third of the putative class would have had higher premiums upon rewriting to FSPA and that this high number of undamaged class members should doom the Plaintiffs' request for class certification. Dkt. 127 at 2, 31; Dkt. 127-30 at ¶¶ 31-37. FGI has also used the results of the specific AOB iterations to argue that the AOB tools are not reliable enough to measure damages. Dkt. No. 127-28, at ¶ 72, Dkt. 127-30, at ¶ 34. Given this use of the Litigation AOBs, the Court finds that FGI has waived work product protection as to the other two AOBs, and therefore **GRANTS** Plaintiffs' Motion as it relates to the previously unproduced Litigation AOBs.

Plaintiffs also seek to compel FGI to produce instructions from counsel and internal correspondence regarding all five of the Litigation AOBs. Plaintiffs argue in part that they have not been able to learn the assumptions and/or directions that came from FGI's outside counsel relating to the Litigation AOBs that have already been produced and that they have no idea what assumptions are in the two unproduced Litigation AOBs. In addition, they argue that they are "entitled to understand the instructions that FGI received from its outside counsel in building these tools,

because they are critical to understanding the tools themselves and to analyzing and comparing the different tools." Dkt. No. 105, at 9. FGI, on the other hand, argues Plaintiffs are not entitled to attorney-client communications regarding the Litigation AOBs. The Court agrees with FGI.

Generally, a party waives attorney-client privilege when it voluntarily discloses privileged communications to a third party, including an adversary in litigation. *Reedhycalog UK, Ltd. v. Baker Hughes Oilfield Operations, Inc.*, 251 F.R.D. 238, 244 (E.D. Tex. 2008); *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 2002 WL 1592606, at *3 (N.D. Tex. July 17, 2002); *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) ("To retain the attorney-client privilege, the confidentiality surrounding the communications made in that relationship must be preserved."). The Fifth Circuit has held that "[a] client waives the attorney-client privilege . . . by failing to assert it when confidential information is sought in legal proceedings." *Nguyen*, 197 F.3d at 206. Subject matter waiver generally occurs only where the party holding the privilege seeks to gain some strategic advantage by disclosing favorable, privileged information, while holding back that which is unfavorable. *In re Sealed Case*, 676 F.2d 793, 809 & n.54 (D.C. Cir. 1982); *Graco Children's Products, Inc. v. Dressler, Goldsmith, Shore & Milnamow, Ltd.*, No. 95 C 1303, 1995 WL 360590, at *8 (N. D. Ill. 1995).

Here, there is no evidence to suggest that FGI waived the attorney-client privilege. While it is certainly true that FGI allowed its employee to be deposed about the nature of the AOB tool, there is nothing in the parties' briefs to suggest that FGI did not assert its privilege. In fact, FGI's outside counsel during Ms. Tai's deposition stated:

> So I'm going to object. Let me tell you the line we're drawing here. As far as our communications about what scenarios are possible, what could be done, those discussions we're claiming privilege over of course. But as far as what does the tool do, what are the changes, how is it different, what scenario is it looking at, you can

6

> ask all those questions without saying, "Is that—well, is that something that Adam told you to do, or is that something someone else told you to do?" As far as what does the tool do, how it works, how it runs, any assumption, you're free to ask how the tool works. But as far as our discussions about the tool, we're claiming privilege over that.

Dkt. 105, Ex. 4 at 11, 20. FGI's counsel preserved the confidentiality surrounding the communications between counsel and employees at FGI, and hence, the attorney-client privilege has not been waived by FGI as to any communications related to the Litigation AOBs. Despite Plaintiffs' contention, they are not "entitled" to have access to any instructions FGI received from outside counsel. Nevertheless, while Plaintiffs may not have access to instructions FGI received from outside counsel regarding the AOB tools, there is nothing inhibiting Plaintiffs from accessing **purely internal, non-counsel** related communications related to all the Litigation AOBs. Plaintiffs argue that the universe of purely internal communications related to the Litigation AOBs should be relatively small and there is nothing in the briefs to suggest otherwise. The Court will therefore **GRANT** the Plaintiffs' Third Motion to Compel as to internal, non-counsel related communications concerning all of the Litigation AOBs, but **DENY** the motion as to any attorney-client communications

**B.      Fourth Motion to Compel (Dkt. No. 140)**

In this motion—filed after Judge Yeakel instructwed the parties to limit discovery to that which is necessary to provide meaningful argument and briefing as to class certification—Plaintiffs challenge FGI's objection to producing information related the coverage differences FGI claims exist between FA2 and FSPA policies. In their Sixth Request for Production of Documents, Fourth Set of Interrogatories, and Fourth Request for Admission, Plaintiffs request information and documents regarding these claimed coverage differences, arguing that FGI has put these facts in issue in its

7

Response in Opposition to Class Certification. Dkt. No. 127 at 28. Plaintiffs maintain that the requests are therefore relevant and proper discovery requests notwithstanding Judge Yeakel's limit on permissible pre-certification discovery. FGI has objected to production on the grounds that the requests are overly broad and unduly burdensome, contending that they go beyond what is necessary to meaningfully argue class certification. Furthermore, FGI argues that its certification briefing only mentions three coverage differences: Auto Rewards, Mexico coverage, and rental car coverage. It contends that it has and is continuing to produce records responsive to those differences, which are the only ones necessary to meaningfully argue class certification.

The scope of discovery is limited, in pertinent part, to that which is relevant considering "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). Discovery is a powerful and wide-ranging tool, but the court retains discretion to narrow its scope. *Freudensprung*, 379 F.3d at 347. The Court must, in fact, limit discovery if it determines that the discovery sought is outside the scope or if the party seeking it has had ample opportunity to obtain the information sought by other discovery. FED. R. CIV. P. 26(b)(2)(C).

This Court exercised its discretion to narrow the scope of discovery for purposes of class certification, "to what you-all realistically and honestly need, not what would be nice in a best-of-all-worlds situation, to present good briefs to me and meaningful argument on why I should or should not certify the class." Dkt. No. 151 at 5. In its Response to Class Certification, FGI has only raised a "coverage difference" argument as to three items, and has provided discovery on these issues. Dkt. No. 151 at 6-7; Dkt. No. 127 at 23; Dkt. No. 151, Ex. H.. Plaintiffs' requests, on the other hand, span all possible differences in coverage FGI mentioned in its Response to Class Certification. Dkt.

8

140, Ex. 2, RFP Nos. 68, 69. Responding to such requests will likely require an extensive review of numerous personnel and agent files. Dkt. No. 151, Exs. A, B, E. As FGI has been responsive with regard to the three briefed coverage differences and claims to have spent over $1 million on discovery already, the Court concludes that the additional requests are overly broad and unduly burdensome given the current, pre-certification "needs of the case." FED. R. CIV. P. 26(b)(1).

In reaching this conclusion, the Court has found particularly instructive Plaintiffs' statement that it has "already gathered substantial evidence strongly supporting that the coverages are the same or materially the same." Dkt No. 118 at 30. As such, the Court, at this point, does not see a reason to prolong discovery in the way Plaintiffs ask here. Because FGI has been and is continuing to be responsive to requests pertaining to the three coverage differences still at issue, compelling discovery as to the 140 issues no longer at issue would have no substantial effect on the arguments to be presented on class certification and is outside the scope of discovery as it stands now. Plaintiffs may continue to seek discovery as to the three coverage differences at issue, but because FGI has been responsive on these issues, there is no need for the Court to compel it to do so. Thus, Plaintiffs' Fourth Motion to Compel is **DENIED**.

Based on the preceding discussion, Plaintiffs' Third Motion to Compel Requests for Production (Dkt. No. 105) is **GRANTED IN PART AND DENIED IN PART** as set forth above, and Plaintiffs' Fourth Motion to Compel (Dkt No. 140) is **DENIED**.

SIGNED this 12[h] day of August, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE