# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| CHARLES GRIGSON, LISA HOING, and DAVID KELLY, Individually and on behalf of all putative class members, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 1:17-cv-00088-LY |
| FARMERS GROUP, INC., a Nevada corporation, | § § § | |
| Defendant. | § § | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR DIRECTION OF NOTICE UNDER RULE 23(E) AND REQUEST FOR ORAL HEARING

# TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................................... 1

II.  BACKGROUND .................................................................................................... 3

    A.   Procedural History ...................................................................................... 3

    B.   Class Counsel's Investigation and Discovery ......................................... 5

    C.   Settlement Negotiations ............................................................................. 7

III. THE PROPOSED SETTLEMENT ...................................................................... 7

    A.   The Settlement Class .................................................................................. 8

    B.   $40 Million Settlement Amount for Distribution to the Settlement Class ............ 8

    C.   The Notice Plan ........................................................................................... 9

        1.   Direct Notice to Settlement Class Members ................................ 9

        2.   Settlement Website and Toll-Free Number ................................ 10

        3.   Opt-Out and Objection Procedures ............................................ 11

    D.   Payment of Administrative Costs ........................................................... 11

    E.   Payment of Attorneys' Fees, Expenses, and Service Awards. ............... 12

    F.   Release ......................................................................................................... 12

IV.  ARGUMENT ....................................................................................................... 12

    A.   Overview of the Class Action Settlement Approval Process ............... 12

    B.   The Proposed Settlement Meets the Standards for Preliminary Settlement Approval. ........ 13

        1.   The Settlement is the Product of Good Faith, Arms'-Length Negotiations, and Is Informed By Years of Intensive Litigation and Discovery. ........ 14

        2.   Plaintiffs and Class Counsel Have Zealously Represented the Class ........ 16

        3.   The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Risks, Complexities, and Likely Duration of Ongoing Litigation. ........ 17

        4.   The Settlement Treats Class Members Equitably ...................... 19

        5.   The Recommendation of Experienced Counsel Favors Approval ............. 19

    C.   The Court Should Provisionally Certify the Settlement Class. ............. 20

        1.   The Requirements of Rule 23(a) Are Satisfied ......................... 20

            a.   Numerosity (Rule 23(a)(1)) ........................................... 20

            b.   Commonality (Rule 23(a)(2)) ....................................... 20

Civil Action No. 1:17-cv-00088-LY—
Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and for Direction of Notice Under Rule 23(e)
1856503.10

Page

      c.    Typicality (Rule 23(a)(3)) ............................................................21

      d.    Adequacy (Rule 23(a)(4))..............................................................21

    2.    The Requirements of Rule 23(b)(3) are Satisfied........................................22

D.    The Proposed Class Notice and Notice Plan Will Provide The Best Notice Practicable and Should be Approved. ...............................................................23

E.    The Court Should Schedule a Fairness Hearing and Related Dates.....................24

V.    CONCLUSION ............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## <u>CASES</u>

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................22

*Boos v. AT & T, Inc.*,
   252 F.R.D. 319 (W.D. Tex. 2008), *modified* (Sept. 17, 2008) ................................23

*Butler v. Sears, Roebuck & Co.*,
   702 F.3d 359 (7th Cir. 2012) .........................................................................22

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ...................................................................................23

*Feder v. Elec. Data Sys. Corp.*,
   429 F.3d 125 (5th Cir. 2005) .........................................................................21

*Ibe v. Jones*,
   836 F.3d 516 (5th Cir. 2016) .........................................................................20

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) .........................................................................14

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012)...........................................................15

*James v. City of Dallas*,
   254 F.3d 551 (5th Cir. 2001) .....................................................................20, 21

*McNamara v. Bre-X Minerals Ltd.*,
   214 F.R.D. 424 (E.D. Tex. 2002) ...................................................................13

*Newby v. Enron Corp.*,
   394 F.3d 296, 300 (5th Cir. 2004) ..................................................................13

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ..............................................14, 19

*Serna v. Transp. Workers Union of Am.*,
   2014 WL 7721824 (N.D. Tex. Dec. 3, 2014).....................................................20

*Slade v. Progressive Sec. Ins. Co.*,
   856 F.3d 408 (5th Cir. 2017) .........................................................................21

*Stirman v. Exxon Corp.*,
   280 F.3d 554 (5th Cir. 2002) .........................................................................21

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ...............................................................................22

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...................................................................................20

*Yates v. Collier*,
   868 F.3d 354 (5th Cir. 2017) .........................................................................20

-iii-
Civil Action No. 1:17-cv-00088-LY—
Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and for Direction of Notice Under Rule 23(e)

1856503.10

## RULES

Farmers Rule 30(b)(6) ...................................................................................................6

Fed. R. Civ. P. 23(a) ...................................................................................................24

Fed. R. Civ. P. 23(a)(1) ..............................................................................................21

Fed. R. Civ. P. 23(a)(3) ..............................................................................................22

Fed. R. Civ. P. 23(a)(4) ..............................................................................................23

Fed. R. Civ. P. 23(b)(2) ................................................................................................8

Fed. R. Civ. P. 23(b)(3) ...........................................................................2, 21, 25, 27

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................25, 26

Fed. R. Civ. P. 23(e) ..............................................................................................1, 12

Fed. R. Civ. P. 23(e)(1) .........................................................................................13, 25

Fed. R. Civ. P. 23(e)(2) ..............................................................................................14

Fed. R. Civ. P. 23(e)(3) ..............................................................................................15

## OTHER AUTHORITIES

2 William B. Rubenstein, *et al.*, *Newberg on Class Actions* § 4:49 (5th ed. 2012) .....................22

-iv-
Civil Action No. 1:17-cv-00088-LY—
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Direction of Notice Under Rule 23(e)

1856503.10

COME NOW, Plaintiffs Charles Grigson, Lisa Hoing, and David Kelly ("Plaintiffs"), who file this Unopposed Motion for Preliminary Approval of Class Action Settlement and for Direction of Notice Under Federal Rule of Civil Procedure 23(e). Plaintiffs also request a preliminary approval hearing on December 16, 2019, also unopposed.

## I.     __INTRODUCTION__

After nearly three years of hard-fought litigation, the parties have reached an agreement to settle this case on a class basis.  Pursuant to the terms of the Settlement,[1] Defendant Farmers Group, Inc. ("Farmers") has agreed to pay forty million dollars ($40,000,000) to a Texas-only Settlement Class, which will be distributed to Settlement Class Members directly, via automatic account credits and mailed checks, without the need for Settlement Class Members to submit claims or take any other action.  The Settlement represents a strong result for the Settlement Class and is absolutely fair, reasonable, and adequate, and warrants preliminary approval under applicable standards and the circumstances of this case.

The Settlement presented for the Court's consideration is the product of extensive, arms-length, months-long negotiations between the parties, which included a long series of formal mediation sessions with the Hon. Deborah Hankinson (Ret.), formerly a Justice on the Supreme Court of Texas, and extensive follow-up negotiations through Justice Hankinson.  The Settlement also follows years of intense litigation—including extensive discovery, motions practice, and expert practice, and full briefing on class certification.  In negotiating the Settlement, the parties and their counsel were thus well informed about the issues, the relative strengths and weaknesses of their respective positions, and about the risks faced by each side of continued litigation.

---

[1] The Settlement Agreement ("Settlement") is filed herewith as Exhibit 1 to the accompanying Joint Declaration of Class Counsel ("Joint Decl.").  Capitalized terms not otherwise defined herein have the same meaning as set forth in the Settlement.

The Settlement also provides for a robust class notice program that includes direct notice to Settlement Class Members and the establishment of a dedicated, case-specific settlement website and toll-free telephone number where Settlement Class Members can obtain additional information.

In addition, Farmers has agreed to pay $12 million in attorneys' fees and expenses for Class Counsel, subject to court approval. The attorneys' fees and expenses awarded by the Court will be paid by Farmers separately from (*i.e.*, on top of) the $40 million settlement amount, meaning such award will not reduce the benefits provided to the Settlement Class. The negotiations regarding attorneys' fees and expenses took place only after the parties reached agreement on the class compensation.

Plaintiffs and their undersigned counsel believe the Settlement to be in the best interests of the Settlement Class Members and seek to begin the Court approval process that is required for all class action settlements. Plaintiffs therefore respectfully request that the Court review the Settlement and the other accompanying papers, and do the following:

(a) grant preliminary approval of the Settlement;

(b) provisionally certify for settlement purposes the Settlement Class, as defined in the Settlement, pursuant to Fed. R. Civ. P. 23(b)(3);

(c) appoint Plaintiffs Charles Grigson, Lisa Hoing, and David Kelly as class representatives;

(d) appoint the following counsel as Class Counsel: Michael L. Slack and John R. Davis of Slack Davis Sanger, LLP, Joe K. Longley of Law Offices of Joe K. Longley, and Roger N. Heller and Jonathan Selbin of Lieff Cabraser Heimann & Bernstein LLP;

(e) appoint Rust Consulting as Settlement Administrator, and direct Rust Consulting to carry out the duties of the Settlement Administrator specified in the Settlement;

(f) approve the parties' proposed Notice Plan—including the form and content of the Class Notice and the proposed method for distributing the Class Notice—and direct the Parties and the Settlement Administrator to implement the Notice Plan;

(h) stay all non-Settlement related proceedings in this litigation pending final approval of the Settlement; and

(i) set a Fairness Hearing and certain other dates in connection with the final approval of the Settlement.

## II.    BACKGROUND

### A.    Procedural History

This case was filed on February 8, 2017. The initial Complaint, filed by plaintiffs Charles Grigson and Robert Vale on behalf of themselves and a putative class of Farmers Texas FA2 customers, alleged that Farmers discriminated against existing customers (FA2 customers) vis-à-vis new customers (FSPA customers), in violation of Tex. Ins. Code § 544.052. (*See generally* Dkt. No. 1.) Plaintiffs alleged that Farmers' conduct resulted in FA2 customers being charged rates and premiums that were generally higher than the rates and premiums charged to FSPA customers for materially or essentially the same coverages, that Farmers concealed and otherwise precluded FA2 customers from accessing FSPA, and that Farmers lacked an actuarial justification for the alleged conduct. (*Id.*)

On April 3, 2017, Farmers filed two responsive motions. First, Farmers moved to dismiss the Complaint on the grounds that the alleged conduct was outside the substantive scope of Tex. Ins. Code. § 544.052 and that the claim was barred under the filed-rate doctrine. (Dkt. No. 17.) Second, Farmers moved, in the alternative, to stay the case and refer certain issues to

the Texas Department of Insurance based on the primary jurisdiction doctrine. (Dkt. No. 18.) Plaintiffs opposed both motions, Farmers filed replies, and the parties filed a surreply and sur-surreply, respectively, regarding the motion to dismiss. (Dkt. Nos. 29, 31, 32, 37, 39.) During the same time period, the parties also briefed an opposed motion to stay discovery filed by Farmers. (Dkt. Nos. 21, 24, 27.)

Farmers' motions were referred to Magistrate Judge Andrew W. Austin for a report and recommendation. Magistrate Judge Austin held oral argument on the motions on July 14, 2017. On October 18, 2017, Magistrate Judge Austin issued a Report and Recommendation, recommending that the Court deny Farmers' motions to dismiss and stay, and deny as moot Farmers' motion to stay discovery. (Dkt. No. 48.) On November 2, 2017, Farmers filed objections to Magistrate Judge Austin's Report and Recommendation, which the parties briefed to this Court. (Dkt. Nos. 49, 51, 53.) On January 19, 2018, this Court entered an order overruling the objections, adopting the Report and Recommendation, and denying Farmers' motions. (Dkt. No. 54.) The parties thereafter engaged in extensive discovery as described further below.

On October 22, 2018, plaintiff Charles Grigson and new plaintiffs Lisa Hoing and David Kelly filed a First Amended Complaint (Dkt. No. 101), asserting the same claim as the original Complaint, and adding some additional allegations and two new plaintiffs in place of former plaintiff Robert Vale.

After extensive fact and expert discovery detailed below, on February 22, 2019, Plaintiffs moved for class certification, and on March 12, 2019, Plaintiffs filed an amended motion for class certification. (Dkt. Nos. 111, 118.) On May 20, 2019, Farmers filed its opposition to class certification. (Dkt. No. 127.) On July 18, 2019, Plaintiffs filed their reply in support of class

certification. (Dkt. No. 146.) On August 6, 2019, Farmers filed a surreply in opposition to class certification. (Dkt. No. 159.) In connection with the class certification motion, the parties engaged in significant expert practice, including the submission of expert reports and/or supplemental expert reports from a total of six (6) experts, expert depositions, and the filing of two *Daubert* motions. The parties' filings associated with class certification totaled more than 2,000 pages of material for the Court's consideration, and addressed several complex issues of law and fact. With the class certification motion and *Daubert* motions fully briefed, and the hearing on those motions pending, and following extensive mediation efforts described below, the parties reached an agreement to resolve this case on a class-wide basis.

### B.     Class Counsel's Investigation and Discovery

Prior to filing suit, and continuing through the course of the litigation, proposed Class Counsel conducted an extensive investigation into the factual and legal issues raised in this case. These investigative efforts included reviewing voluminous rate filings and related Texas Department of Insurance submissions and correspondence, reviewing materials about the alleged practices and conducting follow up investigation regarding same, identifying and speaking with potential fact and expert witnesses, and speaking with affected policyholders about their experiences. Class Counsel also thoroughly researched and analyzed the legal issues regarding their claim and Farmers' defenses and potential defenses. (Joint Decl., ¶ 3.)

Moreover, the parties have conducted extensive discovery in this case, making them very well-informed about the relative strengths and weaknesses of their respective positions, and providing them with information needed to negotiate the proposed Settlement. Among other things, Class Counsel have reviewed more than 250,000 pages of documents and data produced

by Farmers,[2] deposed seven (7) Farmers fact witnesses (including a Farmers Rule 30(b)(6) corporate designee) and two (2) experts designated by Farmers, conducted third-party discovery of a consultant who assisted Farmers with relevant issues, and propounded extensive written discovery. With respect to the latter, Plaintiffs served on Farmers ninety-three (93) document requests, sixty-seven (67) requests for admission, and twenty-four (24) interrogatories.

Among the other areas of discovery in this case, Plaintiffs conducted extensive discovery regarding Farmers' development and roll-out of the FSPA policy and "open-closed" book model, Farmers' actuarial basis for the conduct at issue, and whether the FA2 and FSPA policies in fact provided materially similar coverages. The latter issue, in particular, significantly expanded the amount of discovery required, requiring Class Counsel to examine in detail and take targeted discovery regarding dozens of coverages and benefits offered in the two policies to determine whether differences existed, the nature of any such differences (i.e., were language differences such that they actually expanded or reduced coverage), and whether such differences were FSPA-favorable or not. Farmers contended that even a single difference would have doomed Plaintiffs' entire case.

Class Counsel also responded to numerous written discovery requests served by Farmers, and defended the depositions of the three (3) named Plaintiffs and three (3) of Plaintiffs' designated experts.

Throughout the course of discovery, the parties held frequent, often lengthy, meet and confer sessions, including regarding the specifics and scope of Farmers' electronic document search (including negotiating regarding the custodians and non-custodial files that would be

---

[2] Many of the files were produced by Farmers in native format. If those native files had been produced in pdf format, the total number of pages produced would have been significantly greater than 250,000 pages.

Civil Action No. 1:17-cv-00088-LY—
Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and for Direction of Notice Under Rule 23(e)
1856503.10

searched by Farmers) and to try to resolve various discovery disputes. Through those efforts, the parties were able to resolve the vast majority of their potential disputes without Court assistance, however the parties did litigate four motions to compel discovery as well as a motion for an order regarding one of those motions to compel (concerning Plaintiffs' argument that Farmers had waived work product protection for certain materials). (Joint Decl., ¶¶ 4-7.)

### C. <u>Settlement Negotiations</u>

The Settlement presented for the Court's consideration is the product of hard-fought, intensive, arms-length negotiations between the parties. Beginning in July 2019, the parties engaged in a long series of mediations with the Hon. Deborah Hankinson (Ret.), formerly a Justice on the Supreme Court of Texas. This included five in-person mediation sessions as well as extensive ongoing follow up negotiations through Justice Hankinson. Through those efforts, the parties reached an agreement in principle on the terms of a proposed settlement. After the parties reached an agreement in principle on class relief, the parties then negotiated regarding attorneys' fees and expenses through further mediation with Justice Hankinson. Through separate, arms-length mediation through Justice Hankinson, the parties reached an agreement on attorneys' fees and expenses, subject to Court approval. Since reaching an agreement in principle, the parties have worked diligently to draft the written settlement agreement and exhibits, including the proposed Notice Plan, working with the proposed Settlement Administrator. (Joint Decl., ¶¶ 13-14.)

## III. <u>THE PROPOSED SETTLEMENT</u>

The full Settlement terms are set forth in the Settlement Agreement, which is attached as Exhibit 1 to the accompanying Joint Decl. The following is a summary of the Settlement terms.

### A.     The Settlement Class

Plaintiffs seek provisional certification under Rule 23(b)(3), for settlement purposes only,

of a "Settlement Class," defined as:

> All persons insured under an active FA2 insurance policy with Farmers
> Texas in effect on or after January 4, 2016.
>
> Excluded from the Settlement Class are: (a) any Judge or Magistrate
> presiding over this Class Lawsuit, and members of their families; (b)
> Farmers and affiliated entities and their respective officers and directors; (c)
> Farmers Texas and affiliated entities and their respective officers and
> directors; (d) Farmers' legal representatives, assigns and successors; and (e)
> all persons who properly execute and submit a timely Exclusion Request by
> the deadline set by the Court. Settlement Class Members include, to the
> extent they are otherwise within the scope of this Settlement Class definition,
> Farmers Texas insurance agents who offered, sold or renewed FA2 or FSPA
> policies as well as their employees.

Farmers does not oppose certification of the above Settlement Class, for settlement

purposes only. (Settlement, §§ II.14, III.)

### B.     $40 Million Settlement Amount for Distribution to the Settlement Class

Under the Settlement, Farmers will issue $40 million in payments (the "Settlement

Amount") to the Settlement Class, which will be distributed directly (*via* automatic account

credits and mailed checks), without the need for Settlement Class Members to submit claims or

take any other action. The $40 million will be allocated proportionately among each of the FA2

policies in the Settlement Class, in amounts proportionate to their respective FA2 premiums paid

during the time period January 4, 2016[3] through October 18, 2019.[4] Payments will be initiated

within 45 days of the Effective Date of the Settlement. For current Farmers Texas customers,

payments will be made via automatic credits to their Farmers Texas accounts. For former

Farmers Texas customers, payments will be made via mailed checks sent by the Settlement

---

[3] January 4, 2016 is the first day that FSPA was offered in Texas.
[4] The average settlement payment is expected to be approximately $50.00, though payments will
be higher and lower than that amount, depending on the amount of each policy's FA2 premiums.

Administrator. For checks that are returned with forwarding address information, the Settlement Administrator will re-mail the check to the new address identified. For checks that are returned undeliverable without forwarding address information, the Settlement Administrator will conduct a "skip trace" to attempt to find updated address information and re-mail the check if an updated address is identified. (Settlement, § IV).

To the extent there are remaining Settlement Amount funds after the distribution—due to settlement payment checks that are uncashed or deemed undeliverable by the Settlement Administrator ("Residual Funds")—those Residual Funds will: (a) first, be used to reimburse Farmers for the administrative fees and expenses paid by Farmers to the Settlement Administrator pursuant to the Settlement and to pay any remaining fees and expenses of the Settlement Administrator pursuant to the Settlement (or partially reimburse such fees and expenses if the Residual Funds are not sufficient for full reimbursement); and (b) second, after payment of such reimbursed administrative costs, by agreement of the parties and not by operation of law, any remaining Residual Funds will be treated as unclaimed property of the corresponding Named Insureds subject to applicable state unclaimed property procedures.[5] (Settlement, § IV.6)

C.    **The Notice Plan**

 The parties proposed Notice Plan is set forth in Section V of the Settlement, and will consist of the following:

1.    **Direct Notice to Settlement Class Members**

Class Notice will be sent directly to Settlement Class Members. Within seven (7) days following entry of the Preliminary Approval Order, Farmers will provide the Settlement

---

[5] Such Named Insureds' respective unclaimed property amounts will be reduced *pro rata* based on the amount of the reimbursed administrative costs that were paid or reimbursed.

Administrator with a "Settlement Class List" that includes last known mailing address information for the Settlement Class Members. Within forty-five (45) days following entry of the Preliminary Approval Order (the "Notice Date"), the Settlement Administrator will mail the Class Notice, substantially in the form attached as Exhibit A to the Settlement, to Settlement Class Members via first class U.S. Mail. For Settlement Class Members identified as being current Farmers Texas customers, the Settlement Administrator will use the address included on the Settlement Class List. For Settlement Class Members identified as being former Farmers Texas customers, the Settlement Administrator will update their address information through the U.S. Postal Service National Change of Address Database, and mail the Class Notice to them at their address as updated. For Class Notices that are returned with forwarding address information, the Settlement Administrator will re-mail the Class Notice to the new address identified. For Class Notices that are returned undeliverable without forwarding address information, the Settlement Administrator will conduct a "skip trace" to attempt to find updated address information and re-mail the Class Notice if an updated address is identified. (Settlement, § V).

## 2.  Settlement Website and Toll-Free Number

The Settlement Administrator will also establish a dedicated, case-specific settlement website (www.farmerstexassettlement.com) where Settlement Class Members can obtain further information about the case and the Settlement. The settlement website will be optimized for display on mobile devices, and will include copies of key case documents, including but not limited to the Settlement Agreement and the operative First Amended Complaint. The settlement website will be live beginning no later than the Notice Date, and will be operational until at least one year after the initial mailing of settlement payment checks. (Settlement, § V.5)

The Settlement Administrator will also establish a toll-free telephone number that Settlement Class Members can call to receive additional information about the Settlement.

### 3.     Opt-Out and Objection Procedures

Any person within the Settlement Class definition may request to be excluded from the Settlement Class by sending a signed written request, including their contact information and stating their desire to be excluded, to the Settlement Administrator, postmarked or delivered by the deadline proscribed by the Class Notice.   (Settlement, § VI)[6]

Any Settlement Class Member who does not submit a timely and valid exclusion request may object to the Settlement, Class Counsel's application for attorneys' fees and expenses, and/or the request for Class Plaintiff service awards.   To be considered, an objection must be in writing, must be filed with or mailed to the Court, and mailed to the Settlement Administrator, at the addresses listed in the Class Notice, must be filed/postmarked by the deadline stated in the Class Notice,  and must include the information proscribed by the Class Notice.   (Settlement, § VII).

The parties propose that the deadline for exclusion requests and objections (the "Opt-Out Deadline" and "Objection Deadline") be set sixty (60) days after the Notice Date.

### D.     Payment of Administrative Costs

The fees and costs of the Settlement Administrator will be separately paid by Farmers (*i.e.*, on top of the $40 million Settlement Amount that will distributed to the Settlement Class), subject to potential reimbursement or partial reimbursement of such administrative costs from the residual settlement funds, as discussed above.  (Settlement, § V.1).

---

[6] A timely and valid exclusion request by a Named Insured will apply to all FA2 policies on which such Settlement Class Member is a Named Insured.  A timely and valid exclusion request by one Named Insured on a policy will bind any other Named Insured on that policy for that policy.

### E.    <u>Payment of Attorneys' Fees, Expenses, and Service Awards.</u>

Farmers will pay Class Counsel attorneys' fees and expenses in a total amount of $12 million, subject to Court approval. Any such attorneys' fees and expenses awards granted by the Court will be paid by Farmers in addition to (*i.e.*, on top of) the $40 million Settlement Amount that will be distributed to the Settlement Class, and thus will not reduce payments to Settlement Class Members. Class Counsel will also request service awards of $7,500 each for the three Class Plaintiffs, to compensate them for their commitment and time on behalf of the Settlement Class. Any service awards granted by the Court will be paid by Farmers in addition to (*i.e.*, on top of) the $40 million Settlement Amount. (Settlement, § X)

### F.    <u>Release</u>

In exchange for the consideration provided under the Settlement, Settlement Class Members will release Farmers and affiliated companies and agents from any claims about the issues in this case. FA2 policies will continue to be renewed at rates that may differ from FSPA, and the Settlement clarifies that the release covers any claim premised on different rates between FA2 and FSPA being unfairly discriminatory or unlawful because the policies are materially, substantially or essentially the same or similar, provided the conduct is of the nature and character of the Released Claims. (Settlement, § VIII)

## IV.    <u>ARGUMENT</u>

### A.    <u>Overview of the Class Action Settlement Approval Process</u>

Pursuant to Rule 23(e), a class action settlement must be approved by the court before it can become effective. The process for court approval is comprised of three principle steps:

(1)    Preliminary approval of the proposed settlement and direction to disseminate notice to the class, after submission to the court of a written motion for preliminary approval;

(2)     Dissemination of notice to the class; and

(3)     A final approval hearing, at which evidence and argument concerning the

fairness, adequacy, and reasonableness of the settlement are presented.

By this Motion, Plaintiffs respectfully ask the Court to take the first step in the approval

process and enter an order preliminarily approving the Settlement and directing class notice,

pursuant to the parties' proposed Notice Plan, under Rule 23(e)(1).

### B.     The Proposed Settlement Meets the Standards for Preliminary Settlement Approval.

The decision to grant preliminary approval of a class settlement is within the district

court's sound discretion.  *See Newby v. Enron Corp.*, 394 F.3d 296, 300 (5th Cir. 2004).   In

evaluating a motion for preliminary settlement approval, the court conducts a preliminary

assessment of the factors that will be evaluated at the final settlement approval stage.  *See* Fed. R.

Civ. P. 23(e)(1).  When a proposed class settlement "discloses no reason to doubt its fairness, has

no obvious deficiencies, does not improperly grant preferential treament to class representatives

or segments of the class, does not grant excessive compensation to attorneys, and falls within the

range of possible approval, the court should grant preliminary approval." *In re OCA, Inc. Secs.*

*& Derivative Litig.*, 2008 WL 4681369, at * 11 (E.D. La. Oct. 17, 2008); *see also McNamara v.*

*Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002).

The touchstone for the class settlement approval analysis is whether the proposed

settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  The Fifth Circuit has

adopted six factors—the "*Reed* factors"—for courts to use in determining whether a settlement is

fair, reasonable, and adequate: (1) the existence of fraud or collusion behind the settlement; (2)

the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and

the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5)

the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *In re Deepwater Horizon*, 739 F.3d 790, 820 (5th Cir. 2014). Additionally, Rule 23(e)(2) establishes factors for the Court's consideration which overlap considerably with the *Reed* factors. *See* Fed. R. Civ. P. 23(e)(2) (court must consider whether: (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, the terms of any proposed award of attorney's fees, including timing of payment, and any agreement required to be identified under Rule 23(e)(3); and (d) the proposal treats class members equitably relative to each other).

In applying and weighing these factors, the court should consider the strong public policy in favor of settlement. *In re Deepwater Horizon*, 739 F.3d at 807 (noting an "overriding public interest in favor of settlement that we have recognized [p]articularly in class action suits"); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *17 (N.D. Tex. Nov. 8, 2005) (recognizing the "public interest in favor of settlement of class action lawsuits").

As discussed below, the proposed Settlement here is absolutely fair, reasonable and adequate under the circumstances of this case and readily satisfies all applicable standards for preliminary settlement approval.

### 1. The Settlement is the Product of Good Faith, Arms'-Length Negotiations, and Is Informed By Years of Intensive Litigation and Discovery.

There is a strong presumption of fairness when a proposed class action settlement is reached through arm's-length negotiations between experienced counsel, following "meaningful discovery." *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F.

Supp. 2d 1040, 1063 (S.D. Tex. 2012). Here, the Settlement presented for the Court's consideration is the product of hard-fought, arms-length negotiations between the parties and their experienced and well-informed counsel. The parties participated in a long series of formal mediation sessions and extensive ongoing negotiations through an experienced and well-respected mediator—Hon. Deborah Hankinson (Ret.), former Justice of the Supreme Court of Texas—and were ultimately able to reach an agreement with the help of Justice Hankinson. During the past several weeks, the parties have been working diligently to finalize the settlement papers. Throughout these negotiations, the parties were represented by counsel with extensive experience in the prosecution, defense and settlement of class actions and other complex matters.

After the parties reached an agreement in principle on the class relief, the parties then negotiated regarding attorneys' fees and expenses through further mediation with Justice Hankinson. Through separate, arms-length mediation through Justice Hankinson, the parties reached an agreement on attorneys' fees and expenses, subject to Court approval.

Moreover, as discussed above, the Settlement here is informed by counsels' substantial investigation and discovery regarding the legal and factual issues in the litigation. Before filing the case, Class Counsel conducted an extensive investigation into the factual underpinnings of the claim and the applicable law. Class Counsel engaged in ongoing factual and legal investigation throughout the course of the litigation, including identifying and speaking with potential fact and expert witnesses and speaking with insureds about their experiences. Class Counsel have also conducted extensive formal discovery in this case, including: deposing seven (7) Farmers fact witnesses and two (2) Farmers-designated experts, reviewing and analyzing more than 250,000 pages of documents and data produced by Farmers, propounding and responding to written discovery requests, engaging in extensive meet and confers with Farmers'

counsel, and conducting third party discovery. Farmers, too, conducted significant discovery, including propounding document requests, interrogatories, and requests for admission, and deposing the Plaintiffs and three of Plaintiffs' designated experts. *See supra* §§ II.A-B.

Further, as the Court is aware, there has been significant motions practice in this case, including full briefing on: Farmers' motion to dismiss, Farmers' motion to stay based on the primary jurisdiction doctrine, Farmers' motion to stay discovery, Farmers' objection to Magistrate Judge Austin's Report and Recommendation, four separate litigated motions to compel (as well as a motion for an order regarding one of those motions to compel), *Daubert* motions filed by each side regarding class certification experts, and Plaintiffs' motion for class certification, which involved voluminous filings by both sides and was fully briefed and scheduled for oral argument at the time the parties reached an agreement. In negotiating the Settlement, the parties and their counsel were significantly informed by their work in briefing these motions and by the various Court rulings.

### 2.     Plaintiffs and Class Counsel Have Zealously Represented the Class

Plaintiffs and Class Counsel have prosecuted this action on behalf of the Settlement Class with vigor and dedication for almost three years. As detailed above, Class Counsel have thoroughly investigated the factual and legal issues involved, conducted extensive discovery, and engaged in considerable motions and expert practice in furtherance of prosecuting the claim here. Likewise, Plaintiffs themselves were actively engaged—each produced pertinent documents, responded to written discovery requests, had their depositions taken by Farmers, and communicated regularly with Class Counsel up to and including evaluating and approving the proposed Settlement. (Joint Decl., ¶ 17, Ex. 5-7.)

3.    **The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Risks, Complexities, and Likely Duration of Ongoing Litigation.**

The Settlement provides substantial monetary relief—$40 million—that is well-tailored to the alleged harm.  Plaintiffs in this case allege that Farmers engaged in insurance discrimination, resulting in FA2 customers paying higher rates and premiums than equivalent FSPA customers for materially the same coverages.  The Settlement addresses the alleged harm by providing monetary payments for each FA2 policy in the Settlement Class, in amounts proportionate to their respective FA2 premiums.

The $40 million Settlement Amount—which was reached pursuant to a mediator's proposal presented by Justice Hankinson following extensive mediation—represents a substantial portion of what realistically could have been achieved in this case, even assuming Plaintiffs were able to overcome the various remaining hurdles, successfully try this case to judgment, and hold onto that judgment through appeals.  Calculating the potential class damages in this case with precision is very difficult, as discussed at length in the parties' respective class certification filings and corresponding expert submissions.  Farmers, for its part, has vehemently disputed that it can be done at all.  Moreover, while there are multiple approaches (or "scenarios") that could theoretically be used for measuring class damages here, Farmers has consistently and steadfastly argued that only a "re-write" scenario is legitimately in play under the pertinent facts.  Based on an analysis of the class data and other pertinent information, a reasonable estimate of potential class damages in this case is approximately $150 million.

The $40 million Settlement Amount represents approximately 26.7% of that amount, a strong result for the Settlement Class, particularly in light of the significant risks and challenges, and the substantial complexity, of ongoing litigation.  If Farmers were to prevail on the issue of damages, alone, the practical result would quite possibly, if not likely, be no relief at all for the

Settlement Class. Plaintiffs would face significant ongoing hurdles on the liability front as well. Among other arguments that Farmers has made and/or indicated it would make if the litigation proceeded are: (a) the FA2 and FSPA rates were filed with and vetted by the Texas Department of Insurance; (b) the FA2 and FSPA policy forms were filed with and vetted by the Texas Department of Insurance; (c) the coverages under FA2 and FSPA are not materially the same; (d) Farmers had a sound actuarial basis for its conduct, thus providing a defense to the claim here under Tex. Ins. Code § 544.053; and (e) Farmers did not conceal FSPA from FA2 customers, or preclude them from accessing FSPA. The Court will also recall that Farmers moved to dismiss the case, at the outset, based on the filed-rate doctrine and re-raised the argument in its class certification papers. While that argument was rejected by this Court, Farmers has made clear its intent to appeal that issue to the Fifth Circuit. Farmers also submitted a robust opposition to certification of a litigation class, which was pending when the parties reached an agreement.

While Plaintiffs absolutely believe that these obstacles are not insurmountable, they are indicative of the substantial risks that Plaintiffs and the proposed Settlement Class would face if the litigation were to continue. The proposed Settlement provides considerable, appropriately-tailored relief while allowing Settlement Class Members to avoid the risks of unfavorable, and in some cases dispositive, rulings on these and other issues.

Moreover, the method for distributing the payments—direct payments via automatic account credits and mailed checks, without the need for Settlement Class Members to submit claims—further supports the reasonableness of the Settlement. Payments will be issued for all FA2 policies in the Settlement Class, and all of the $40 million will be issued to Settlement Class Members. Further, the money for the Settlement Class will not be reduced to pay Court-awarded

attorneys' fees and expenses for Class Counsel; rather, such amounts will be paid by Farmers separate from (*i.e.*, on top of) the amount that will be paid to the Settlement Class.

The Settlement also provides another significant benefit that would not be available if the litigation were to continue—prompt relief. Proceeding to trial could add years to the resolution of this litigation, given the legal and factual issues raised and likelihood of appeals.

### 4.     The Settlement Treats Class Members Equitably

The proposed Settlement does not grant preferential treatment to the Plaintiffs or to any segment of the Settlement Class. The settlement benefits will be distributed equitably. Specifically, the $40 million will be allocated proportionately among each of the FA2 policies in the Settlement Class, in amounts proportionate to their respective FA2 premiums paid from January 4, 2016 (the inception date of FSPA in Texas) through October 18, 2019. Moreover, class plaintiff service awards, such as those that will be requested for the three Plaintiffs here, are commonly awarded in class actions, are well-justified under the circumstances, and are appropriate in amount given the Plaintiffs' commitment and effort in the litigation.

### 5.     The Recommendation of Experienced Counsel Favors Approval

"[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically defer to the judgment of experienced trial counsel who has evaluated the strength of his case." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005) (citation and internal quotations omitted). Class Counsel in this case have extensive experience litigating and settling class actions and other complex matters,[7] have conducted extensive fact and expert discovery in this case, and have conducted an extensive investigation into the factual and legal issues raised. Based on their experience and knowledge about this case, Class Counsel have weighed the

---

[7] Joint Decl., Ex. 2-4.

benefits of the Settlement against the inherent risks, complexities, and expense of continued litigation, and they believe that the proposed Settlement is fair, reasonable, and adequate.[8] That qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate further supports approving the Settlement.

### C.     The Court Should Provisionally Certify the Settlement Class.

The Court should provisionally certify the Settlement Class for settlement purposes because the standards of Rule 23(a) and Rule 23(b)(3) are satisfied. Farmers does not oppose certification of the Settlement Class for settlement purposes only.

### 1.     The Requirements of Rule 23(a) Are Satisfied

#### a.     Numerosity (Rule 23(a)(1))

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no magic number for meeting this requirement. *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001); *Serna v. Transp. Workers Union of Am.*, 2014 WL 7721824, *2 (N.D. Tex. Dec. 3, 2014). Numerosity is readily satisfied here. The Settlement Class, as defined, includes approximately 729,000 Farmers Texas FA2 policies (some of which include multiple insureds on the policy).

#### b.     Commonality (Rule 23(a)(2))

Rule 23(a)(2) requires at least one common issue of fact or law "capable of class-wide resolution." *Yates v. Collier*, 868 F.3d 354, 361 (5th Cir. 2017) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). A single common question of law or fact is sufficient. *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (citing *Wal-Mart*, 564 U.S. at 350). This case raises multiple common questions, including whether the coverages under FA2 and FSPA are

---

[8] Joint Decl., ¶ 18

materially the same and whether Farmers' conduct at issue was based on sound actuarial principles. Commonality is satisfied here.

### c.    <u>Typicality (Rule 23(a)(3))</u>

Typicality, under Rule 23(a)(3), is satisfied if the representative plaintiffs' claims and those of the class arise out of the same course of conduct and share the same legal theory. *James*, 254 F.3d at 571; *Serna*, 2014 WL 7721824, at *4. Typicality does not require "complete identity of claims." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). Here, Plaintiffs, like the other Settlement Class Members, had FA2 policies in Texas during the relevant time period. Plaintiffs' and other Settlement Class Members' claims arise from the same alleged course of conduct, and are based on the same legal theory—that Farmers' alleged conduct constitutes unfair discrimination in violation of Tex. Ins. Code § 544.052.

### d.    <u>Adequacy (Rule 23(a)(4))</u>

Rule 23(a)(4) looks at: "(1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017); *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

Class Counsel here have extensive experience litigating and resolving class actions and other complex matters,[9] and are well qualified to represent the Class. Since filing this case, Class Counsel have vigorously litigated this action on behalf of the Settlement Class, conducted extensive investigation and discovery, negotiated the proposed Settlement, and have and will continue to fairly and adequately protect the interests of the Settlement Class.[10] Likewise, the

---

[9] Joint Decl., Ex. 2-4.
[10] *See supra* §§ II.A-B.

Plaintiffs have demonstrated their commitment to the Settlement Class, including by sitting for deposition and otherwise participating in discovery, regularly communicating with Class Counsel about the case, and reviewing and approving the proposed Settlement.[11]  Finally, Plaintiffs' interests are aligned with and are not antagonistic to the interests of the Settlement Class. Plaintiffs and the Settlement Class Members share an interest in obtaining relief from Farmers for the alleged statutory violation.

### 2.     The Requirements of Rule 23(b)(3) are Satisfied.

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must be satisfied.   Here, Plaintiffs seek certification of the Settlement Class, for settlement purposes, under Rule 23(b)(3), which requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted)).   At its core, "[p]redominance is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012).

Common questions predominate here.   Not only do the Settlement Class Members' claims all arise under the same Texas statute and alleged conduct, but under the proposed Settlement, there will not need to be a class trial, meaning there are no potential concerns about any individual issues, if any, creating trial inefficiencies.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only certification, a district

---

[11] Joint Decl., ¶ 17, Ex. 5-7.

court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there will be no trial.").

Moreover, class treatment is superior to other methods for the resolution of this case. Plaintiffs are not aware of any other actions against Farmers regarding the issues raised in this case. Given the size of each Settlement Class Member's damages—which would be dwarfed by the expense of prosecuting a separate individual case—they would be unlikely to pursue individual claims. *Boos v. AT & T, Inc.*, 252 F.R.D. 319, 326 (W.D. Tex. 2008), *modified* (Sept. 17, 2008). In all events, they remain free to exclude themselves from the Settlement Class if they wish to do so. Moreover, it would be far more efficient for the Court and the parties to have a single resolution (as with the proposed Settlement here), rather than multiple separate cases about the same issues.

### D. The Proposed Class Notice and Notice Plan Will Provide The Best Notice Practicable and Should be Approved.

Before a proposed class settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where certification of a Rule 23(b)(3) settlement class is sought, the notice must also comply with Rule 23(c)(2)(B), which requires:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974)).

The proposed Notice Plan here (Settlement, § V) was designed in consultation with the proposed Settlement Administrator and meets all applicable standards. The Notice Plan includes direct notice to Settlement Class Members sent via first class U.S. Mail, a dedicated settlement website where Settlement Class Members can obtain additional information about the Settlement and view key case documents, and a toll-free telephone number where Settlement Class Members can get additional information. Moreover, the proposed form of Class Notice (Settlement, Ex. A) informs Settlement Class Members, in clear and concise terms, about the nature of this case, the Settlement, and their rights, including all of the information required by Rule 23(c)(2)(B). The Court should approve the proposed Notice Plan.

### E.   The Court Should Schedule a Fairness Hearing and Related Dates.

The next steps in the settlement approval process are to notify Settlement Class Members of the proposed Settlement, allow Settlement Class Members an opportunity to exclude themselves or file comments or objections, and hold a Fairness Hearing on December 16, 2019. Towards those ends, the parties propose the following schedule:

| | |
|---|---|
| Last day for Farmers to provide the Settlement Class List to the Settlement Administrator | **[7 days after entry of Preliminary Approval Order]** |
| Notice Date | **[45 days after entry of the Preliminary Approval Order]** |
| Last day for: (a) Class Plaintiffs to file motion for final approval of the Settlement; and (b) Class Counsel to file their application for attorneys' fees, expenses and service awards | **[15 days after Notice Date]** |
| Opt-Out Deadline | **[60 days after Notice Date]** |
| Objection Deadline | **[60 days after Notice Date]** |
| Last day for the Parties to file any responses to objections, and any replies in support of motion for final settlement approval and/or Class Counsel's application for attorneys' fees, expenses and service | **[14 days before Fairness Hearing]** |

| awards | |
|---|---|
| Fairness Hearing | **[TBD]** |

## V.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court do the following:

(a) grant preliminary approval of the Settlement;

(b) provisionally certify for settlement purposes the Settlement Class, as defined in the Settlement, pursuant to Fed. R. Civ. P. 23(b)(3);

(c) appoint Plaintiffs Charles Grigson, Lisa Hoing, and David Kelly as class representatives;

(d) appoint the following counsel as Class Counsel:  Michael L. Slack and John R. Davis of Slack Davis Sanger, LLP, Joe K. Longley of Law Offices of Joe K. Longley, and Roger N. Heller and Jonathan Selbin of Lieff Cabraser Heimann & Bernstein LLP;

(e) appoint Rust Consulting as Settlement Administrator, and direct Rust Consulting to carry out the duties of the Settlement Administrator specified in the Settlement;

(f) approve the proposed Notice Plan—including the form and content of the Class Notice and the proposed method for distributing the Class Notice—and direct the Parties and Settlement Administrator to implement the Notice Plan;

(h) stay all non-Settlement related proceedings in this litigation pending final approval of the Settlement; and

(i) set a Fairness Hearing and certain other dates, as proposed herein, in connection with the final approval of the Settlement.

Dated: December 11, 2019

Respectfully submitted,

/s/ *John R. Davis*
Michael L. Slack (TX Bar 18476800)
John R. Davis (TX Bar 24099518)
SLACK DAVIS SANGER, LLP
6001 Bold Ruler Way, Suite 100
Austin, TX 78746
Tel.: 512-795-8686
Fax: 512-795-8787
mslack@slackdavis.com
jdavis@slackdavis.com

Joe K. Longley (TX Bar 00000114)
LAW OFFICES OF JOE K. LONGLEY
3305 Northland Drive, Suite 500
Austin, TX 78731
Tel.: 512-477-4444
Fax: 512-477-4470
joe@joelongley.com

Roger N. Heller (CA Bar 215348) (*pro hac vice*)
Jonathan Selbin (NY Bar 3948684) (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel.: 415-956-1000
Fax: 415-956-1008
rheller@lchb.com
jselbin@lchb.com

*Attorneys for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *John R. Davis*

## CERTIFICATE OF CONFERENCE

The undersigned counsel certifies that he conferred in with opposing counsel and that Farmers does not oppose the relief sought in this Motion, nor the scheduling of an oral hearing on December 16, 2019.

/s/ *John R. Davis*