**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| CHARLES GRIGSON, LISA HOING, and DAVID KELLY, Individually and on behalf of all putative class members, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 1:17-cv-00088-LY |
| FARMERS GROUP, INC., a Nevada corporation, | § § § | |
| Defendant. | § § | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  BACKGROUND ...................................................................................................2

    A.  Procedural History .........................................................................................2

    B.  Class Counsel's Investigation and Discovery ...............................................4

    C.  Settlement Negotiations.................................................................................6

    D.  Preliminary Settlement Approval ..................................................................6

III.  THE SETTLEMENT ...........................................................................................7

    A.  The Settlement Class .....................................................................................7

    B.  $40 Million for Distribution to the Settlement Class ....................................7

    C.  Separate Payment of Attorneys' Fees, Expenses, and Service Awards. ........8

    D.  Payment of Administrative Costs ..................................................................9

    E.  Opt-Out and Objection Procedures ...............................................................9

    F.  Release.........................................................................................................10

IV.  NOTICE HAS BEEN DISSEMINATED TO THE SETTLEMENT CLASS PURSUANT TO THE COURT-APPROVED NOTICE PROGRAM. ..........................10

    A.  Direct Notice to Settlement Class Members ...............................................10

    B.  Settlement Website and Toll-Free Number .................................................11

V.  THE RESPONSE FROM THE CLASS HAS BEEN VERY POSITIVE.......................11

VI.  ARGUMENT .....................................................................................................11

    A.  The Class Action Settlement Approval Process ..........................................11

    B.  The Settlement is Fair, Reasonable and Adequate and Should be Approved. ......................................................................................................12

        1.  The Settlement is the Product of Extensive, Arms-Length, Non-Collusive Negotiations  (*Reed* Factor 1; Fed. R. Civ. P. 23(e)(2)(B)) ...........................................................................................13

        2.  The Advanced Stage of the Proceedings and the Very Substantial Amount of Discovery and Litigation In This Case, Further Support Approval (*Reed* Factor 3) .........................................................................14

## TABLE OF CONTENTS
### (continued)

Page

3.  The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Risks, Complexities, and Likely Duration of Ongoing Litigation (*Reed* Factors 2, 4 and 5; Fed. R. Civ. P. 23(e)(2)(C)) ...................................................................15

4.  The Recommendation of Experienced Counsel, and the Positive Reaction from the Settlement Class, Favor Approval (*Reed* Factor 6)..........................................................................................................17

5.  Plaintiffs and Class Counsel Have Zealously Represented the Class (Fed. R. Civ. P. 23(e)(2)(A) ......................................................19

6.  The Settlement Treats Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D)) ......................................................................................19

C.  The Court Should Reaffirm Certification of the Settlement Class.......................20

1.  The Requirements of Rule 23(a) Are Satisfied ......................................20

    a.  Numerosity (Rule 23(a)(1))...........................................................20

    b.  Commonality (Rule 23(a)(2))........................................................21

    c.  Typicality (Rule 23(a)(3)) .............................................................21

    d.  Adequacy (Rule 23(a)(4))..............................................................21

2.  The Requirements of Rule 23(b)(3) are Satisfied...................................22

VII.  CONCLUSION ..........................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ....................................................................................................23

*Boos v. AT & T, Inc.*,
    252 F.R.D. 319 (W.D. Tex. 2008), *modified* (Sept. 17, 2008) ..................................23

*Butler v. Sears, Roebuck & Co.*,
    702 F.3d 359 (7th Cir. 2012) ......................................................................................23

*Colton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ....................................................................................18

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ..............................................................................18

*Feder v. Elec. Data Sys. Corp.*,
    429 F.3d 125 (5th Cir. 2005) ......................................................................................21

*Ibe v. Jones*,
    836 F.3d 516 (5th Cir. 2016) ......................................................................................21

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) ......................................................................................12

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) .................................................................13, 19

*In re Oil Spill*,
    910 F.Supp.2d 891 (E.D. La. 2012) ............................................................................19

*James v. City of Dallas*,
    254 F.3d 551 (5th Cir. 2001) ..................................................................................20, 21

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ......................................................................................12

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ........................................................12, 17, 19

*Serna v. Transp. Workers Union of Am. AFL-CIO*,
    2014 WL 7721824 (N.D. Tex. Dec. 3, 2014) ..........................................................20, 21

*Slade v. Progressive Sec. Ins. Co.*,
    856 F.3d 408 (5th Cir. 2017) ......................................................................................21

*Stirman v. Exxon Corp.*,
    280 F.3d 554 (5th Cir. 2002) ......................................................................................21

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ................................................................................................22

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................................................21

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Welsh v. Navy Fed. Credit Union*,
  2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ..................................................................13, 14

*Yates v. Collier*,
  868 F.3d 354 (5th Cir. 2017) ....................................................................................................21

## STATUTES

28 U.S.C. § 1715 ..........................................................................................................................19

Tex. Ins. Code § 544.052 .........................................................................................................2, 21

Tex. Ins. Code § 544.053 .............................................................................................................16

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(a)(1) ................................................................................................................20

Fed. R. Civ. P. 23(a)(2) ................................................................................................................21

Fed. R. Civ. P. 23(a)(3) ................................................................................................................21

Fed. R. Civ. P. 23(a)(4) ................................................................................................................21

Fed. R. Civ. P. 23(b)(3) ................................................................................................................22

Fed. R. Civ. P. 23(e) ......................................................................................................................6

Fed. R. Civ. P. 23(e)(2) ................................................................................................................12

Fed. R. Civ. P. 23(e)(3) ................................................................................................................13

COME NOW, Plaintiffs Charles Grigson, Lisa Hoing, and David Kelly ("Plaintiffs"), who file this Motion for Final Approval of Class Action Settlement.

## I.   __INTRODUCTION__

The Court has preliminarily approved the proposed class Settlement reached by the parties in this action, and approved the parties' proposed notice program.  (Dkt. No. 178.) Notice has been disseminated to the Settlement Class as directed by the Court.  By this motion, Plaintiffs respectfully request that the Court conduct a final review of the Settlement, and approve the Settlement as fair, reasonable and adequate.[1]

As the parties previously reported, the Settlement here is the product of extensive, arms-length negotiations between the parties and their experienced and well-informed counsel, achieved through mediation with the Hon. Deborah Hankinson (Ret.), and is absolutely fair, reasonable, and adequate given the benefits provided, the claims, and the parties' respective positions and litigation risks.

Pursuant to the terms of the Settlement, Farmers has agreed to pay $52 million, including: (a) $40 million in settlement payments to the Texas-only Settlement Class, the entirety of which will be issued to Settlement Class Members directly, via automatic account credits and mailed checks, without the need for Settlement Class Members to submit claims or take any other action; plus (b) $12 million in attorneys' fees and expenses, subject to Court approval, on top of (i.e., in addition to) the $40 million in settlement payments to the Settlement Class.[2]  Moreover, the

---

[1] The Fairness Hearing, when this motion is scheduled to be heard, is set for May 22, 2020. (Dkt. No. 178, ¶ 31.)

[2] Farmers has also agreed to separately pay service awards to the three Plaintiffs, subject to Court approval.  In addition, Farmers has agreed to separately pay the costs of notice and other costs of the Settlement Administrator, subject to potential reimbursement or partial reimbursement of such administrative costs if there are uncashed or undeliverable settlement payment checks.

Settlement provides for a robust notice program, including direct mail notice to Settlement Class Members, which has been implemented by the Settlement Administrator and the parties.

The Settlement represents a strong result for the Settlement Class, as reinforced by, *inter alia*, the very positive reaction from the Settlement Class thus far.  The deadline for Settlement Class Members to opt-out or object is March 30, 2020.  As of February 13, 2020, only 79 persons have requested to be excluded from the Settlement Class and only 2 objections have been submitted.

For the foregoing reasons and the other detailed below, the Settlement meets the standards for final settlement approval and should be approved.

## II.   <u>BACKGROUND</u>

### A.   <u>Procedural History</u>

This case was filed on February 8, 2017.  The initial Complaint, filed by Plaintiffs Charles Grigson and Robert Vale on behalf of themselves and a putative class of Farmers Texas FA2 customers, alleged that Farmers discriminated against existing customers (FA2 customers) vis-à-vis new customers (FSPA customers), in violation of Tex. Ins. Code § 544.052. (*See generally* Dkt. No. 1.)  Plaintiffs alleged that Farmers' conduct resulted in FA2 customers being charged rates and premiums that were generally higher than the rates and premiums charged to FSPA customers for materially or essentially the same coverages, that Farmers concealed and otherwise precluded FA2 customers from accessing FSPA, and that Farmers lacked an actuarial justification for the alleged conduct.  (*Id.*)

On April 3, 2017, Farmers filed two responsive motions.  First, Farmers moved to dismiss the Complaint on the grounds that the alleged conduct was outside the substantive scope of Tex. Ins. Code. § 544.052 and that the claim was barred under the filed-rate doctrine.  (Dkt. No. 17.)  Second, Farmers moved, in the alternative, to stay the case and refer certain issues to

the Texas Department of Insurance based on the primary jurisdiction doctrine.  (Dkt. No. 18.)

Plaintiffs opposed both motions; Farmers filed replies; and the parties filed a surreply and sur-

surreply, respectively, regarding the motion to dismiss.  (Dkt. Nos. 29, 31, 32, 37, 39.)  During

the same time period, the parties also briefed an opposed motion to stay discovery filed by

Farmers.  (Dkt. Nos. 21, 24, 27.)

     Farmers' motions were referred to Magistrate Judge Andrew W. Austin for a report and

recommendation.  Magistrate Judge Austin held oral argument on the motions on July 14, 2017.

On October 18, 2017, Magistrate Judge Austin issued a Report and Recommendation,

recommending that the Court deny Farmers' motions to dismiss and stay, and deny as moot

Farmers' motion to stay discovery.  (Dkt. No. 48.)  On November 2, 2017, Farmers filed

objections to Magistrate Judge Austin's Report and Recommendation, which the parties briefed

to this Court.  (Dkt. Nos. 49, 51, 53.)  On January 19, 2018, this Court entered an order

overruling the objections, adopting the Report and Recommendation, and denying Farmers'

motions.  (Dkt. No. 54.)  The parties thereafter engaged in extensive discovery as described

further below.

     On October 22, 2018, Plaintiff Charles Grigson and new Plaintiffs Lisa Hoing and David

Kelly filed a First Amended Complaint (Dkt. No. 101), asserting the same claim as the original

Complaint, and adding some additional allegations and two new plaintiffs in place of former

plaintiff Robert Vale.

     After extensive fact and expert discovery detailed below, on February 22, 2019, Plaintiffs

filed a Motion for Class Certification, and on March 12, 2019, Plaintiffs filed an Amended

Motion for Class Certification.  (Dkt. Nos. 111, 118.)  On May 20, 2019, Farmers filed its

Opposition to class certification.  (Dkt. No. 127.)  On July 18, 2019, Plaintiffs filed their Reply

in support of class certification. (Dkt. No. 146.) On August 6, 2019, Farmers filed a Surreply in opposition to class certification. (Dkt. No. 159.) In connection with the class certification motion, the parties engaged in significant expert practice, including the submission of expert reports and/or supplemental expert reports from a total of six (6) experts, expert depositions, and the filing of two fully-briefed *Daubert* motions, one by Plaintiffs and one by Farmers. The parties' filings associated with class certification totaled more than 2,000 pages of material for the Court's consideration, and addressed numerous complex issues of law and fact. With the class certification motion and *Daubert* motions fully briefed, and the hearing on those motions pending, and following extensive mediation efforts described below, the parties reached an agreement to resolve this case on a class-wide basis.

### B.    Class Counsel's Investigation and Discovery

Prior to filing suit, and continuing through the course of the litigation, Class Counsel conducted an extensive investigation into the factual and legal issues raised in this case. These investigative efforts included reviewing voluminous rate filings and related Texas Department of Insurance ("TDI") submissions and correspondence, reviewing materials about the alleged practices and conducting follow-up investigation regarding same, identifying and speaking with potential fact and expert witnesses, and speaking with affected policyholders about their experiences. Class Counsel also thoroughly researched and analyzed the legal issues regarding their claim and Farmers' potential defenses. (*See* **Ex. 1** (Declaration of John R. Davis and Attachs., at ¶¶ 9-15 ("Davis Declaration")).)

Moreover, the parties have conducted extensive discovery in this case, making them very well-informed about the relative strengths and weaknesses of their respective positions, and providing them with information needed to negotiate the proposed Settlement. Among other things, Class Counsel have reviewed more than 250,000 pages of documents and data produced

by Farmers,[3] deposed seven (7) Farmers fact witnesses (including a Farmers Rule 30(b)(6) corporate designee) and two (2) experts designated by Farmers, conducted third-party discovery of a consultant who assisted Farmers with relevant issues, and propounded extensive written discovery.  With respect to the latter, Plaintiffs served on Farmers ninety-three (93) document requests, sixty-seven (67) requests for admission, and twenty-four (24) interrogatories.

Among the other areas of discovery in this case, Plaintiffs conducted extensive discovery regarding Farmers' development and roll-out of the FSPA policy and "open-closed" book model, Farmers' actuarial basis for the conduct at issue, and whether the FA2 and FSPA policies in fact provided materially similar coverages.  The latter issue, in particular, significantly expanded the amount of discovery required, requiring Class Counsel to examine in detail and take targeted discovery regarding dozens of coverages and benefits offered in the two policies to determine whether differences existed, the nature of any such differences (i.e., were any language differences such that they actually expanded or reduced coverage), and whether such differences were FSPA-favorable or not.  For its part, Farmers contended that even a single difference would have doomed Plaintiffs' entire case.

Class Counsel also responded to numerous written discovery requests served by Farmers, and defended the depositions of the three (3) named Plaintiffs and three (3) of Plaintiffs' designated experts.

Throughout the course of discovery, the parties held frequent, often lengthy, meet and confer sessions, including regarding the specifics and scope of Farmers' electronic document search (including negotiating regarding the custodians and non-custodial files that would be

---

[3] Many of the files were produced by Farmers in native format.  If those native files had been produced in pdf format, the total number of pages produced would have been significantly greater than 250,000 pages.

searched by Farmers) and to try to resolve various discovery disputes.  Through those efforts, the parties were able to resolve the vast majority of their potential disputes without Court assistance, however the parties did litigate four fully-brief Motions to Compel Discovery as well as a Motion for an Order regarding one of those Motions to Compel (concerning Plaintiffs' argument that Farmers had waived work product protection for certain materials).  (Davis Decl., ¶¶ 9-15.)

### C.   Settlement Negotiations

The Settlement is the product of hard-fought, intensive, arms-length negotiations between the parties.  Beginning in July 2019, the parties engaged in a long series of mediations with the Hon. Deborah Hankinson (Ret.), formerly a Justice on the Supreme Court of Texas.  This included five in-person mediation sessions as well as extensive ongoing follow up negotiations through Justice Hankinson.  Through those efforts, the parties reached an agreement in principle on the terms of a proposed settlement.  After the parties reached an agreement in principle on class relief, the parties then negotiated regarding attorneys' fees and expenses through further mediation with Justice Hankinson.  Through separate, arms-length mediation through Justice Hankinson, the parties reached an agreement on attorneys' fees and expenses, subject to Court approval.  After reaching an agreement in principle, the parties worked diligently to draft the written settlement agreement and exhibits, including the proposed notice program, working with the proposed Settlement Administrator.  (Davis Decl., ¶¶ 9-15.)

### D.   Preliminary Settlement Approval

On December 16, 2019, the Court granted preliminary approval of the Settlement, provisionally certified the proposed Settlement Class for settlement purposes, and directed that class notice, under Fed. R. Civ. P. 23(e), be disseminated pursuant to the parties' proposed notice program.  (Dkt. No.  178.)

III.   **THE SETTLEMENT**

The full Settlement terms are set forth in the Settlement Agreement, which was attached

as Exhibit 1 to the previously-filed Joint Declaration of Class Counsel. (Dkt. No 174-1.)   The

following is a summary of the Settlement terms.

A.   **The Settlement Class**

The Settlement Class, as provisionally certified by the Court, is defined as:

> All persons insured under an active FA2 insurance policy with Farmers
> Texas in effect on or after January 4, 2016.

> Excluded from the Settlement Class are: (a) any Judge or Magistrate
> presiding over this Class Lawsuit, and members of their families; (b)
> Farmers and affiliated entities and their respective officers and directors; (c)
> Farmers Texas and affiliated entities and their respective officers and
> directors; (d) Farmers' legal representatives, assigns and successors; and (e)
> all persons who properly execute and submit a timely Exclusion Request by
> the deadline set by the Court.   Settlement Class Members include, to the
> extent they are otherwise within the scope of this Settlement Class definition,
> Farmers Texas insurance agents who offered, sold or renewed FA2 or FSPA
> policies as well as their employees.

(Settlement, §§ II.13, III)

B.   **$40 Million for Distribution to the Settlement Class**

Under the Settlement, Farmers will issue $40 million in payments (the "Settlement

Amount") to the Settlement Class, which will be distributed directly (*via* automatic account

credits and mailed checks), without the need for Settlement Class Members to submit claims or

take any other action.   The $40 million will be allocated proportionately among each of the FA2

policies in the Settlement Class, in amounts proportionate to their respective FA2 premiums paid

during the time period January 4, 2016[4] through October 18, 2019.   Payments will be initiated

within 45 days of the Effective Date of the Settlement.   For current Farmers Texas customers,

payments will be made via automatic credits to their Farmers Texas accounts.   For former

---

[4] January 4, 2016 is the first day that FSPA was offered in Texas.

Farmers Texas customers, payments will be made via mailed checks sent by the Settlement Administrator. For checks that are returned with forwarding address information, the Settlement Administrator will re-mail the check to the new address identified. For checks that are returned undeliverable without forwarding address information, the Settlement Administrator will conduct a "skip trace" to attempt to find updated address information and re-mail the check if an updated address is identified. (Settlement, § IV)

To the extent there are remaining Settlement Amount funds after the distribution—due to settlement payment checks that are uncashed or deemed undeliverable by the Settlement Administrator ("Residual Funds")—those Residual Funds will: (a) first, be used to reimburse Farmers for the administrative fees and expenses paid by Farmers to the Settlement Administrator pursuant to the Settlement and to pay any remaining fees and expenses of the Settlement Administrator pursuant to the Settlement (or partially reimburse such fees and expenses if the Residual Funds are not sufficient for full reimbursement); and (b) second, after payment of such reimbursed administrative costs, by agreement of the parties and not by operation of law, any remaining Residual Funds will be treated as unclaimed property of the corresponding Named Insureds subject to applicable state unclaimed property procedures.[5] (Settlement, § IV.6)

### C.   <u>Separate Payment of Attorneys' Fees, Expenses, and Service Awards.</u>

Farmers will also pay Class Counsel attorneys' fees and expenses in a total amount of $12 million, subject to Court approval. Class Counsel are filing herewith their application for attorneys' fees and expenses. Class Counsel's fee application also requests service awards of $7,500 for each of the Plaintiffs. Any attorneys' fees, expenses, and service awards awarded by

---

[5] Such Named Insureds' respective unclaimed property amounts will be reduced *pro rata* based on the amount of the reimbursed administrative costs that were paid or reimbursed.

the Court will be paid by Farmers in addition to (*i.e.*, on top of) the $40 million in settlement payments that will be distributed to the Settlement Class, and thus will not reduce the payments to Settlement Class Members.  (Settlement, § X)

### D.      Payment of Administrative Costs

The fees and costs of the Settlement Administrator will be separately paid by Farmers (*i.e.*, on top of the $40 million Settlement Amount that will distributed to the Settlement Class), subject to potential reimbursement or partial reimbursement of such administrative costs from the residual settlement funds, as discussed above.  (Settlement, § V.1)

### E.      Opt-Out and Objection Procedures

Any person within the Settlement Class definition may request to be excluded from the Settlement Class by sending a signed written request, including their contact information and stating their desire to be excluded, to the Settlement Administrator, postmarked or delivered by the opt-out deadline of March 30, 2020.[6]  (Settlement, § VI; Dkt. No. 178)

Any Settlement Class Member who does not submit a timely and valid exclusion request may object to the Settlement, Class Counsel's application for attorneys' fees and expenses, and/or the request for Class Plaintiff service awards.  To be considered, an objection must be in writing, must be filed with or mailed to the Court, and mailed to the Settlement Administrator, must be filed/postmarked by the objection deadline of March 30, 2020, and must include the information prescribed by the Class Notice.  (Settlement, § VII; Dkt. No. 178)

---

[6] A timely and valid exclusion request by a Named Insured will apply to all FA2 policies on which such Settlement Class Member is a Named Insured.  A timely and valid exclusion request by one Named Insured on a policy will bind any other Named Insured on that policy for that policy.

F.      **Release**

In exchange for the consideration provided under the Settlement, Settlement Class Members will release Farmers and affiliated companies and agents from any claims about the issues in this case.  FA2 policies will continue to be renewed at rates that may differ from FSPA, and the Settlement clarifies that the release covers any claim premised on different rates between FA2 and FSPA being unfairly discriminatory or unlawful because the policies are materially, substantially or essentially the same or similar, provided the conduct is of the nature and character of the Released Claims.  (Settlement, § VIII)

IV.     **NOTICE HAS BEEN DISSEMINATED TO THE SETTLEMENT CLASS PURSUANT TO THE COURT-APPROVED NOTICE PROGRAM.**

The notice program approved by the Court in the Preliminary Approval Order (Docket No. 178) has been, and is being, implemented by the parties and the Settlement Administrator. Such notice program included direct mail notice to the Settlement Class Members, a dedicated settlement website (www.farmerstexassettlement.com), and an informational toll-free telephone number.  (*See generally* **Ex. 7** (Declaration of Joel Botzet, Rust Consulting Inc. ("Botzet Decl."), filed herewith; Settlement, § V).)

A.      **Direct Notice to Settlement Class Members**

Pursuant the Court-approved notice program, Farmers utilized its records to compile and provide to the Settlement Administrator a "Settlement Class List," which included the last known mailing address information for the Settlement Class Members.  By January 30, 2020 (the "Notice Date" set by the Court, *see* Dkt. No. 178, ¶ 31), the Settlement Administrator: (a) updated the mailing addresses, for Settlement Class Members who are identified as being former Farmers Texas customers, through National Change of Address Database; and (b) mailed the

Class Notice to each Settlement Class Member via first-class U.S. mail, with appropriate steps being taken to re-mail Class Notices returned undeliverable.  Botzet Decl., ¶ 13; Settlement, § V.

### B.      Settlement Website and Toll-Free Number

As directed by the Court, the Settlement Administrator also timely established a Settlement Website, www.farmerstexassettlement.com, where Settlement Class Members can obtain further information about the case and the Settlement and view key case documents, including the Settlement Agreement.  The Settlement Administrator also timely established a toll-free telephone number that Settlement Class Members can call to receive additional information about the Settlement.  Botzet Decl., ¶¶ 14-17; Settlement, § V. 5.

## V.      THE RESPONSE FROM THE CLASS HAS BEEN VERY POSITIVE

The response from the Settlement Class thus far has been very positive.  The deadline for Settlement Class Members to opt-out or object is March 30, 2020.  The Settlement Administrator reports that as of February 13, 2020, only 79 persons have requested to be excluded from the Settlement Class and only 2 objections have been submitted.[7]  (Botzet Decl., ¶¶ 19-20.)

## VI.     ARGUMENT

### A.      The Class Action Settlement Approval Process

Pursuant to Rule 23(e), a class action settlement must be approved by the court before it can become effective.  The process for court approval is comprised of three principle steps:

(1)      Preliminary approval of the proposed settlement and direction to disseminate notice to the class, after submission to the court of a written motion for preliminary approval;

(2)      Dissemination of notice to the class; and

---

[7] The final numbers of opt-outs and objections will be provided to the Court in advance of the May 22, 2020 Fairness Hearing.  Pursuant to the procedure established by the Court in the Preliminary Approval Order, the parties will address in their reply papers any objections that may be submitted before the March 30, 2020 objection deadline.  (*See* Docket No. 178, ¶ 31.)

(3)     A final approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

In granting preliminary approval of the Settlement and directing that notice be disseminated to the Settlement Class, the Court took the first step in the process, and the Settlement Administrator has taken the second step by implementing the class notice program directed by the Court.   (Dkt. No. 178; Botzet Decl., ¶¶ 4-13.)   By this motion, Plaintiffs respectfully request that the Court take the third and final step in the settlement approval process by granting final approval of the proposed Settlement.

## B.     The Settlement is Fair, Reasonable and Adequate and Should be Approved.

The law favors the compromise and settlement of class action suits.  *See In re Deepwater Horizon*, 739 F.3d at 807 (5th Cir. 2014) (recognizing an "overriding public interest in favor of settlement that we have recognized [p]articularly in class action suits"); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *17 (N.D. Tex. Nov. 8, 2005) (recognizing the "public interest in favor of settlement of class action lawsuits").  The touchstone for the class settlement approval analysis is whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

The Fifth Circuit has adopted six factors—the "*Reed* factors"—for courts to use in determining whether a settlement is fair, reasonable, and adequate: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.  *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Deepwater Horizon*, 739 F.3d at 820.  Additionally, Rule 23(e)(2) establishes factors for the Court's consideration which overlap considerably with the *Reed* factors.  *See* Fed. R. Civ. P. 23(e)(2) (court must consider whether: (a) the class representatives

and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, the terms of any proposed award of attorney's fees, including timing of payment, and any agreement required to be identified under Rule 23(e)(3); and (d) the proposal treats class members equitably relative to each other).

As discussed below, the proposed Settlement here is absolutely fair, reasonable and adequate under the circumstances of this case and readily satisifes all applicable standards for final settlement approval.

### 1.  The Settlement is the Product of Extensive, Arms-Length, Non-Collusive Negotiations  (*Reed* Factor 1; Fed. R. Civ. P. 23(e)(2)(B))

There is a strong presumption of fairness when a proposed class action settlement is reached through arm's-length negotiations between experienced counsel, following "meaningful discovery."  *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012); *Welsh v. Navy Fed. Credit Union*, 2018 WL 7283639, at * 12 (W.D. Tex. Aug. 20, 2018) ("Courts may presume that a proposed settlement is fair and reasonable, and lacking fraud or collusion, when it is the result of arms-length negotiations."). Here, the Settlement is the product of hard-fought, arms-length negotiations between the parties and their experienced and well-informed counsel.  The parties participated in a long series of formal mediation sessions and extensive ongoing negotiations through an experienced and well-respected mediator—Hon. Deborah Hankinson (Ret.), former Justice of the Supreme Court of Texas—and were ultimately able to reach an agreement with the help of Justice Hankinson. Throughout the negotiations, the parties were represented by counsel with extensive experience in the prosecution, defense and settlement of class actions and other complex matters.

After the parties reached an agreement in principle on the class relief, the parties then negotiated regarding attorneys' fees and expenses through further mediation with Justice Hankinson. Through separate, arms-length mediation through Justice Hankinson, the parties reached an agreement on attorneys' fees and expenses, subject to Court approval.

> ### 2. The Advanced Stage of the Proceedings and the Very Substantial Amount of Discovery and Litigation In This Case, Further Support Approval (*Reed* Factor 3)

"In applying this factor, courts ask whether the parties have obtained sufficient information to evaluate the merits of the competing positions…and whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about'" settlement." *Welsh*, 2018 WL 7283639, * 14 (citation omitted). The parties here were very well informed and thus well situated to evaluate the strengths and weaknesses of their respective positions and to negotiate the Settlement.

As discussed above, the Settlement here is informed by Class Counsel's substantial investigation and discovery regarding the legal and factual issues in the litigation. Before filing the case, Class Counsel conducted an extensive investigation into the factual underpinnings of the claim and the applicable law. Class Counsel engaged in ongoing factual and legal investigation throughout the course of the litigation, including identifying and speaking with potential fact and expert witnesses and speaking with insureds about their experiences. Class Counsel also conducted extensive formal discovery in this case, including: deposing seven (7) carefully-selected Farmers fact witnesses and two (2) Farmers-designated experts, reviewing and analyzing more than 250,000 pages of documents and data produced by Farmers, propounding and responding to written discovery requests, engaging in extensive meet and confers with Farmers' counsel, and conducting third party discovery. Farmers, too, conducted significant discovery, including propounding numerous document requests, interrogatories, and requests for

admission, and deposing the Plaintiffs and three of Plaintiffs' designated experts.   *See supra* §§ II.A-B.

Further, as the Court is aware, there has been significant motions practice in this case, including full briefing on:  Farmers' motion to dismiss, Farmers' motion to stay based on the primary jurisdiction doctrine, Farmers' motion to stay discovery, Farmers' objection to Magistrate Judge Austin's Report and Recommendation, four separate litigated motions to compel (as well as a motion for an order regarding one of those motions to compel), *Daubert* motions filed by each side regarding class certification experts, and Plaintiffs' motion for class certification, which involved voluminous filings by both sides and was fully briefed and scheduled for oral argument at the time the parties reached an agreement.  In negotiating the Settlement, the parties and their counsel were significantly informed by their work in briefing these motions and by the various Court rulings.

### 3.   The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Risks, Complexities, and Likely Duration of Ongoing Litigation (*Reed* Factors 2, 4 and 5; Fed. R. Civ. P. 23(e)(2)(C))

The Settlement provides substantial monetary relief to the Settlement Class that is well-tailored to the alleged harm.  Plaintiffs in this case allege that Farmers engaged in insurance discrimination, resulting in FA2 customers paying higher rates and premiums than equivalent FSPA customers for materially the same coverages.  The Settlement addresses the alleged harm by providing monetary payments for each FA2 policy in the Settlement Class, in amounts proportionate to their respective FA2 premiums.

The $40 million amount to be issued to Settlement Class Members—a figure that was reached pursuant to a mediator's proposal presented by Justice Hankinson following extensive mediation—represents a substantial portion of what realistically could have been achieved in this

case, even assuming Plaintiffs were able to overcome the various remaining hurdles, successfully try this case to judgment, and hold onto that judgment through appeals. Calculating the potential class damages in this case with precision is very difficult, as discussed at length in the parties' respective class certification filings and corresponding expert submissions. Farmers, for its part, has vehemently disputed that it can be done at all. Moreover, while there are multiple approaches (or "scenarios") that could theoretically be used for measuring class damages here, Farmers has consistently and steadfastly argued that only a "re-write" scenario is legitimately in play under the pertinent facts. Based on an analysis of the class data and other pertinent information, a reasonable estimate of potential class damages in this case is approximately $150 million.

The $40 million that will be issued to the Settlement Class Members represents approximately 26.7% of that amount, a strong result for the Settlement Class, particularly in light of the significant risks and challenges, and the substantial complexity, of ongoing litigation. If Farmers were to prevail on the issue of damages, alone, the practical result would quite possibly, if not likely, be no relief at all for the Settlement Class. Plaintiffs would face significant ongoing hurdles on the liability front as well. Among other arguments that Farmers has made and/or indicated it would make if the litigation proceeded are: (a) the FA2 and FSPA rates were filed with and vetted by the TDI; (b) the FA2 and FSPA policy forms were filed with and vetted by the TDI; (c) the coverages under FA2 and FSPA are not materially the same as alleged by Plaintiffs; (d) Farmers had a sound actuarial basis for its conduct, thus providing a defense to the claim here under Tex. Ins. Code § 544.053; and (e) Farmers did not conceal FSPA from FA2 customers, or preclude them from accessing FSPA. The Court will also recall that Farmers moved to dismiss the case, at the outset, based on the filed-rate doctrine and re-raised the

argument in its class certification papers.  While that argument was rejected by this Court, Farmers has made clear its intent to appeal that issue to the Fifth Circuit.  Farmers also submitted a robust opposition to certification of a litigation class, which was pending, with oral argument scheduled, when the parties reached an agreement.

While Plaintiffs absolutely believe that these obstacles are not insurmountable, they are indicative of the substantial risks that Plaintiffs and the proposed Settlement Class would face if the litigation were to continue.  The proposed Settlement provides considerable, appropriately-tailored relief while allowing Settlement Class Members to avoid the risks of unfavorable, and in some cases dispositive, rulings on these and other issues.

Moreover, the method for distributing the payments—direct payments via automatic account credits and mailed checks, without the need for Settlement Class Members to submit claims—further supports the reasonableness of the Settlement.  Payments will be issued for all FA2 policies in the Settlement Class, and the entire $40 million will be issued to Settlement Class Members.  Further, the money for the Settlement Class will not be reduced to pay Court-awarded attorneys' fees and expenses for Class Counsel; rather, such amounts will be paid by Farmers separate from (*i.e.*, on top of) the amount that will be paid to the Settlement Class.

The Settlement also provides another significant benefit that would not be available if the litigation were to continue—prompt relief.  Proceeding to trial could add years to the resolution of this litigation, given the legal and factual issues raised and likelihood of appeals.

### 4. <u>The Recommendation of Experienced Counsel, and the Positive Reaction from the Settlement Class, Favor Approval (*Reed* Factor 6)</u>

"[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically defer to the judgment of experienced trial counsel who has evaluated the strength of his case." *Schwartz*

*v. TXU Corp.*, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005) (citation and internal quotations omitted); *Colton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (in "evaluating the terms of the compromise in relation to the likely benefits of a successful trial…the trial court is entitled to rely upon the judgment of experienced counsel for the parties"); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007) (class counsel's opinion "is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims").

Class Counsel in this case have extensive experience litigating and settling class actions and other complex matters,[8] have conducted extensive fact and expert discovery in this case, and have conducted an extensive investigation into the factual and legal issues raised.  Based on their experience and knowledge about this case, Class Counsel have weighed the benefits of the Settlement against the inherent risks, complexities, and expense of continued litigation, and they believe that the proposed Settlement is fair, reasonable, and adequate.[9]  Likewise, Farmers is represented in this case by highly-qualified and experienced counsel, who likewise were well informed about the issues in this case.  That qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate further supports approving the Settlement.

The positive reaction to date from the Settlement Class also supports approval.  Notice of the Settlement was mailed directly to Settlement Class Members, with approximately 1.7 million notices (for the approximately 780,000 FA2 policies within the Settlement Class) mailed in total.  The deadline for Settlement Class Members to opt-out or object is March 30, 2020.  As of February 13, 2020, only 79 persons have requested to be excluded from the Settlement Class and

---

[8] (**Ex. 1** (Davis Decl., ¶¶ 2-6); **Ex. 2** (Decl. of Joe K. Longley ("Longley Decl."), at ¶¶ 2-8); **Ex. 3** (Decl. of Roger N. Heller ("Heller Decl."), at ¶¶ 3-5).
[9] (Davis Decl., ¶ 24; Longley Decl., ¶ 21; Heller Decl., ¶ 29.)

only 2 objections have been submitted.  Botzet Decl., ¶¶ 19-20; *Schwartz*, 2005 WL 3148350, *

22 (121 requests for exclusion and eight objections, in comparison to 289,000 notices sent,

supported reasonableness of settlement); *In re Oil Spill*, 910 F.Supp.2d 891, 938 (E.D. La. 2012)

("one indication of the fairness of a settlement is the lack of or a small number of objections"); *In*

*re Heartland*, 851 F.Supp.2d at 1068 (same).

In addition, pursuant to 28 U.S.C. § 1715, notice of the Settlement was also sent to the

United States Attorney General and the TDI (*see* Docket. No. 180), neither of which have

expressed any concerns to date about the Settlement.

### 5.   Plaintiffs and Class Counsel Have Zealously Represented the Class (Fed. R. Civ. P. 23(e)(2)(A)

Plaintiffs and Class Counsel have prosecuted this action on behalf of the Settlement Class

with vigor and dedication for in excess of three years.  As detailed above, Class Counsel have

thoroughly investigated the factual and legal issues involved, conducted extensive discovery, and

engaged in considerable motions and expert practice in furtherance of prosecuting the claim here.

Likewise, Plaintiffs themselves were actively engaged—each produced pertinent documents,

responded to written discovery requests, had their depositions taken by Farmers, and

communicated regularly with Class Counsel up to and including evaluating and approving the

proposed Settlement.[10]

### 6.   The Settlement Treats Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D))

The proposed Settlement does not grant preferential treatment to the Plaintiffs or to any

segment of the Settlement Class.  The Settlement benefits will be distributed equitably.

Specifically, the $40 million will be allocated proportionately among each of the FA2 policies in

---

[10] (Davis Decl., ¶¶ 10-20; Longley Decl., ¶¶ 9-15; Heller Decl., ¶¶ 6-17, 20-21, Ex. A-B; *see also* **Ex. 4** (Grigson Decl.), at ¶ 5; **Ex. 5** (Hoing Decl.), at ¶ 5; **Ex. 6** (Kelly Decl.), at ¶ 5.)

the Settlement Class, in amounts proportionate to their respective FA2 premiums paid from January 4, 2016 (the inception date of FSPA in Texas) through October 18, 2019.  Moreover, class representative service awards, such as those that will be requested for the three named Plaintiffs here, are commonly awarded in class actions, are well-justified under the circumstances, and are appropriate in amount given the Plaintiffs' commitment and significant effort in the litigation.

### C.    The Court Should Reaffirm Certification of the Settlement Class.

The Court previously provisionally certified the Settlement Class as part of the Preliminary Approval Order.  (Dkt. No. 178, ¶¶ 4-5.)  The Court should reaffirm certification of the Settlement Class, for settlement purposes, in conjunction with final approval of the Settlement, because the standards of Rule 23(a) and Rule 23(b)(3) are satisfied.

#### 1.    The Requirements of Rule 23(a) Are Satisfied

##### a.    Numerosity (Rule 23(a)(1))

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  There is no magic number for meeting this requirement. *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001); *Serna v. Transp. Workers Union of Am. AFL-CIO*, 2014 WL 7721824, at *2 (N.D. Tex. Dec. 3, 2014).  Numerosity is readily satisfied here.  The Settlement Class, as defined, includes approximately 780,000 Farmers Texas FA2 policies[11] (some of which include multiple insureds on the policy).

---

[11] This is slightly higher than the approximately 729,000 FA2 policies previously stated. Farmers identified the additional policies through further review of its records in conjunction with preparing the Settlement Class List, and has explained that one reason for the difference is that some Settlement Class Members subsequently added vehicles to their policies and thereby started what were technically additional (e.g., second or third) FA2 policies, after FA2 was closed to new business, because they had reached the maximum number of vehicles that could be insured under their existing FA2 policies per Farmers' normal system procedures.

### b.     Commonality (Rule 23(a)(2))

Rule 23(a)(2) requires at least one common issue of fact or law "capable of class-wide resolution." *Yates v. Collier*, 868 F.3d 354, 361 (5th Cir. 2017) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). A single common question of law or fact is sufficient. *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (citing *Wal-Mart*, 564 U.S. at 359).  This case raises multiple common questions, including whether the coverages under FA2 and FSPA are materially the same and whether Farmers' conduct at issue was based on sound actuarial principles.  Commonality is satisfied here.

### c.     Typicality (Rule 23(a)(3))

Typicality, under Rule 23(a)(3), is satisfied if the representative plaintiffs' claims and those of the class arise out of the same course of conduct and share the same legal theory.  *James*, 254 F.3d at 571; *Serna*, 2014 WL 7721824, at *4. Typicality does not require "complete identity of claims." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002).  Here, Plaintiffs, like the other Settlement Class Members, had FA2 policies in Texas during the relevant time period. Plaintiffs' and other Settlement Class Members' claims arise from the same alleged course of conduct, and are based on the same legal theory—that Farmers' alleged conduct constitutes unfair discrimination in violation of Tex. Ins. Code § 544.052.

### d.     Adequacy (Rule 23(a)(4))

Rule 23(a)(4) looks at: "(1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017); *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

Class Counsel here have extensive experience litigating and resolving class actions and other complex matters,[12] and are well qualified to represent the Class.  Since filing this case, Class Counsel have vigorously litigated this action on behalf of the Settlement Class, conducted extensive investigation and discovery, negotiated the proposed Settlement, and have and will continue to fairly and adequately protect the interests of the Settlement Class.[13]  Likewise, the Plaintiffs have demonstrated their commitment to the Settlement Class, including by sitting for deposition and otherwise participating in discovery, regularly communicating with Class Counsel about the case, and reviewing and approving the proposed Settlement.[14]  Finally, Plaintiffs' interests are aligned with and are not antagonistic to the interests of the Settlement Class. Plaintiffs and the Settlement Class Members share an interest in obtaining relief from Farmers for the alleged statutory violation.

### 2.    The Requirements of Rule 23(b)(3) are Satisfied.

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must be satisfied.  Here, certification is proper under Rule 23(b)(3), which requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted)).    At its core,

---

[12] (Davis Decl., ¶¶ 2-6, Ex. 1-3; Longley Decl., ¶¶ 2-8, Ex. 1; Heller Decl., ¶¶ 3-5.)
[13] *See supra* §§ II.A-C.
[14] Grigson Decl. (filed herewith), ¶¶ 3-5; Hoing Decl. (filed herewith), ¶¶ 3-5; Kelley Decl. (filed herewith), ¶¶ 3-5.

"[p]redominance is a question of efficiency."  *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012).

Common questions predominate here.  Not only do the Settlement Class Members' claims all arise under the same Texas statute and alleged conduct, but under the proposed Settlement, there will not need to be a class trial, meaning there are no potential concerns about any individual issues, if any, creating trial inefficiencies.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there will be no trial.").

Moreover, class treatment is superior to other methods for the resolution of this case. Plaintiffs are not aware of any other actions against Farmers regarding the issues raised in this case.  Given the size of each Settlement Class Member's damages—which would be dwarfed by the expense of prosecuting a separate individual case—they would be unlikely to pursue individual claims.  *Boos v. AT & T, Inc.*, 252 F.R.D. 319, 326 (W.D. Tex. 2008), *modified* (Sept. 17, 2008).  In all events, they are free to exclude themselves from the Settlement Class if they wish to do so.  Moreover, it would be far more efficient for the Court and the parties to have a single resolution (as with the proposed Settlement here), rather than multiple separate cases about the same issues.

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Dated: February 14, 2020                    Respectfully submitted,

/s/ *John R. Davis*
Michael L. Slack (TX Bar 18476800)
John R. Davis (TX Bar 24099518)
SLACK DAVIS SANGER, LLP
6001 Bold Ruler Way, Suite 100
Austin, TX 78746
Tel.: 512-795-8686
Fax: 512-795-8787
mslack@slackdavis.com
jdavis@slackdavis.com

Joe K. Longley (TX Bar 00000114)
LAW OFFICES OF JOE K. LONGLEY
3305 Northland Drive, Suite 500
Austin, TX 78731
Tel.: 512-477-4444
Fax: 512-477-4470
joe@joelongley.com

Roger N. Heller (CA Bar 215348) (*pro hac vice*)
Jonathan Selbin (NY Bar 3948684) (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel.: 415-956-1000
Fax: 415-956-1008
rheller@lchb.com
jselbin@lchb.com

*Attorneys for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *John R. Davis*                              

## CERTIFICATE OF CONFERENCE

The undersigned counsel certifies that he conferred in with opposing counsel and that Farmers does not oppose the relief sought in this Motion.

/s/ *John R. Davis*